Case 2:19-cv-00395-JRG   Document 35   Filed 04/21/20   Page 1 of 14 PageID #: 704

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **Luminati Networks Ltd.,**<br><br>Plaintiff,<br><br>v.<br><br>**Teso LT, UAB, Oxysales, UAB, and Metacluster LT, UAB,**<br><br>Defendants. | Civil Action No.<br>2:19-cv-00395-JRG<br><br>LEAD CASE |

## DEFENDANTS' REPLY IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS

SIEBMAN, FORREST,
BURG & SMITH LLP

MICHAEL C. SMITH

CHARHON CALLAHAN
ROBSON & GARZA, PLLC

STEVEN CALLAHAN
CRAIG TOLLIVER
GEORGE T. "JORDE" SCOTT

*Counsel for Defendants Teso LT, UAB,
Oxysales, UAB, and Metacluster LT, UAB*

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II. LUMINATI'S OPPOSITION FOCUSES ON IRRELEVANT ISSUES ............................... 1

    A. Luminati's Argument That It Claimed an "Entirely New Network" That Operates "On Top of the Internet" is Untethered to the Claims and Fails ....................................................... 1

        1. The Federal Circuit requires analysis of the claims, not unsupported attorney argument or unclaimed details from the patent specification ................................................................ 2

        2. Luminati's own arguments and references to Figure 3 of the '319 and '510 patents confirm that the claimed components are general purpose computing devices exchanging standard Internet information ................................................................................................ 3

        3. The '614 patent similarly concerns general purpose computer devices ........................... 5

        4. Teso does not misapply the law or fail to present "evidence" ......................................... 6

    B. Luminati's Argument That Cell Phones and Laptops are "Client Devices" is Unavailing and Confirms the Invalidity of the Claims .................................................................................. 8

III. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
 573 U.S. 208 (2014) .................................................................................................... passim

*Aatrix Software, Inc. v. Green Shades Software, Inc*,
 882 F.3d 1121 (2018) ............................................................................................................ 8

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
 841 F.3d 1288 (Fed. Cir. 2016) ............................................................................................ 8

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*,
 703 F. App'x 986 (Fed. Cir. 2017) ...................................................................................... 9

*Berkheimer v. HP Inc.*,
 881 F.3d 1360 (Fed. Cir. 2018) ............................................................................................ 8

*buySAFE, Inc. v. Google, Inc.*,
 765 F.3d 1350 (Fed. Cir. 2014) ............................................................................................ 3

*CyberFone Systems, LLC v. CNN Interactive Grp, Inc.*,
 558 F. App'x 988 (Fed. Cir. 2014) ...................................................................................... 3

*DDR Holdings, LLC v. Hotels.com, L.P.*,
 773 F.3d 1245 (Fed. Cir. 2014) ............................................................................................ 8

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
 No. 2018-2003, 2020 WL 1856498 (Fed. Cir. Apr. 14, 2020) ................................. 2, 3, 6, 10

*Freeny v. Fossil Group, Inc.*,
 18-CV-00049, 2019 WL 1089145 (E.D. Tex. Feb. 12, 2019) ............................................... 8

*In re TLI Commc'ns LLC Patent Litig.*,
 823 F.3d 607 (Fed. Cir. 2016) ......................................................................................... 9, 10

*Reese v. Sprint Nextel Corp.*,
 774 Fed. App'x 656 (Fed. Cir. 2019) ................................................................................... 2

I.      **INTRODUCTION**

Luminati argues repeatedly throughout its Opposition (ECF No. 28) ("Opp.") that it invented a "new network," or a new use for cell phones and laptops, but Luminati never once shows where this new, allegedly inventive network is recited in the claims. Instead, the patent claims plainly recite the sending and receiving of standard Internet information between computers and servers using an intermediary. *See* Teso's Motion to Dismiss (ECF No. 20) ("Motion" or "Mot.") at 4-21.

Luminati's admissions and arguments in its Opposition confirm this. By attempting to map its claim terms—such as "client device" and "first server"—onto certain figures from the patents (Opp. at 14-17), Luminati shows the irrationality of its "new network architecture" arguments. As explained below in Section II.A.2-3, the same portions of the specification relied upon by Luminati make clear that any standard computer, even a computer with a keyboard and mouse, may serve as either a client, peer, or agent. Further, Luminati's own arguments use the terms "clients" and "servers" interchangeably, a result that is confirmed by the patent specification. *See* Section II.A.2-3, below. It is quite clear that Luminati has not invented a new network, but instead has attempted to claim the use of standard computers and servers to send and receive information through an intermediary. Such patent claims fail *Alice* and are invalid under § 101.

II.     **LUMINATI'S OPPOSITION FOCUSES ON IRRELEVANT ISSUES**

   A.   **Luminati's Argument That It Claimed an "Entirely New Network" That Operates "On Top of the Internet" is Untethered to the Claims and Fails**

Luminati asserts that Teso makes the claims "seem more abstract than they are" because Teso fails to recognize that the alleged inventions are "an innovative, improved networking architecture that operates on top of the Internet." Opp. at 12, 14. This is a straw-man argument. Luminati identifies nothing in the claims supporting this allegedly new architecture.

1

### 1. The Federal Circuit requires analysis of the claims, not unsupported attorney argument or unclaimed details from the patent specification

The case law is clear that the analysis under *Alice* (and related cases) must look to whether the **claimed invention** is abstract, not whether the specification contains additional relevant detail and not whether the patentee can characterize its claims in a certain way. *See, e.g.*, Mot. at 9-13 (citing cases). The Federal Circuit underscored this point again in its recent, April 14, 2020, decision in *Ericsson* which rejected the patentee's argument that an unclaimed, allegedly new network "architecture" rendered the claims patentable. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, No. 2018-2003, 2020 WL 1856498, at *8 (Fed. Cir. Apr. 14, 2020). The *Ericsson* patentee argued that "the 'layered architecture' of the invention," including "three specific layers of software," provided "the necessary inventive concept" for its patent claims directed to controlling access to resources. *Id.* The court rejected this argument because the alleged "architecture" was "wholly missing" from the claims, which did not recite "the specific three layered architecture" or "software stacks or units." *Id*. It was not enough to point out detail from the specification, because "any reliance on the specification in the § 101 analysis must always yield to the claim language." *Id*.

The Federal Circuit's insistence on looking to the claims for the § 101 inquiry stands in stark contrast with Luminati's Opposition. Luminati repeatedly characterizes its inventions in grandiose terms, such as an "innovative, improved networking architecture that operates on top of the Internet," as a "new, dedicated network," or with similar linguistic variations. But Luminati never shows where, **in the claims**, the new architecture is allegedly found.

Luminati's asserted claims are written in functional language, reciting the sending or receiving of information over the Internet between a client device, server, or web server. The Federal Circuit has repeatedly found that the sending and receiving of information between standard equipment does not constitute a patent eligible invention. *See* Mot. at 9-13, 16-21 (citing, among other

decisions, *Reese*, *CyberFone* and *buySAFE*). And like the claims in *Ericsson*, which were invalidated under § 101, Luminati's patents recite functionality "in general terms, without limiting them to technical means for performing the functions that are arguably an advance." 2020 WL 1856498 at *8 (also noting that the claims-at-issue "merely make generic functional recitations that requests are made and then granted"). Luminati's claims do not include any type of description of **how** the recited Internet information is exchanged between devices in any even arguably novel way.[1]

> 2. **Luminati's own arguments and references to Figure 3 of the '319 and '510 patents confirm that the claimed components are general purpose computing devices exchanging standard Internet information**

Luminati attempts to identify its allegedly new "architecture" in Figure 3 of the '319 and '510 patents. Opp. at 14-15; *see also id.* at 3-4. But Luminati's characterizations do not match up with the claims (or the specification) and Figure 3 supports Teso's argument, not Luminati's. Opp. at 14-15. Luminati fails to recognize that Figure 3 and the related text from the patents confirm that the various components—clients, peers, agents, communication devices—are all generic and used interchangeably. Indeed, the patent specification states as follows with respect to Figure 3:

> *The network 100 of FIG. 3 contains multiple communication devices*. Due to functionality provided by software stored within each communication device, which may be the same in each communication device, *each communication device may serve as a client, peer, or agent*, depending upon requirements of the network 100, as is described in detail herein. It should be noted that *a detailed description of a communication device is provided with regard to the description of FIG. 4*.[2]

---

[1] Teso further explained in its Motion that nothing in the claims converts the abstract idea to an inventive concept under *Alice* step two. Mot. at 16-21. Once again, Luminati contests this conclusion only by rehashing its argument about "building a new residential proxy network" or, for the '614 patent, having a device being "available" or "unavailable." Opp. at 23, 24. That is wrong for the reasons explained herein and in the Motion. Notably, Luminati claims that "[d]etails of the network are discussed extensively through the patents," but then cites to the specification and not the claims. Opp. at 24-25; *see also id.* at 2-7; *Ericsson*, 2020 WL 1856498 at *8 (reliance on the specification "must always yield to the claim language").

[2] Unless otherwise noted, this brief has added all emphases in quotations. Further, quotations from the patent omit the bold font used in the patent for numbered citations to patent figures.

3

'319 Pat. at 4:44-53.[3] As noted in the above passage, the '319 and '510 patents then provide a more detailed description of the "communication device" that "may serve as a client, agent, or peer":

> FIG. 4 is a schematic diagram further illustrating a communication device 200 of the communication network 100, *which contains general components of a computer. As previously mentioned, it should be noted that the communication device 200 of FIG. 4 may serve as a client, agent, or peer*.

*Id*. at 5:52-57. The patent specification goes on to state that "[t]he communication device 200 includes a processor 202, memory 210, at least one storage device 208, and one or more input and/or output (I/O) devices 240 (or peripherals) that are communicatively coupled via a local interface 250." *Id.* at 5:59-63. The specification also confirms other standard, off-the-shelf features of the "communication device," including that its memory may include "ROM, hard drive, tape, CDROM, etc." and that its input/output devices may include "a keyboard, mouse, scanner, microphone, etc." or a printer. *Id*. at 6:14-24, 6:61-7:3.

As the Court can see from the above descriptions related to Luminati's Figure 3, the patents do not describe—much less claim—a specialized "architecture" based on a particular kind of laptop, mobile phone, or a new network. Instead, the patents make crystal clear that "communication devices" may serve as the **client, peer, or agent**, and that communication devices are **typical computers** that contain "general components of a computer" and may include a keyboard, mouse, scanner, or printer. In other words, the patents concern general-purpose computers.

Luminati's own annotations on pages 15-16 of the Response confirm this. It is striking that Luminati maps the "first client device" (in red font) to the "agent" (circled in red) on Figure 3 and maps the "second server" (in green font) to the "client" (with the green box). Not only does this show that Luminati views a "server" and "client" to be broad enough to encompass one another,

---

[3] The '510 patent is a continuation of the application resulting in the '319 patent. Teso cites herein to the specification of the '319 patent, but the citations are applicable to both patents.

but it also confirms that Luminati equates the "client device" with the "agent," which, as shown above, is described in the patents as a standard computer.

Luminati's unsupported attorney arguments about the allegedly new "architecture" of the '319 and '510 patents are thus not only incorrect, but also flatly contradicted by the specification. Further, the asserted claims of the '319 and '510 patents recite that the general purpose "client device," "web server," and "second server" simply exchange information over the Internet using standard HTTP requests and/or TCP connections. There is no other way to read the claims. Claims directed to the exchange of information among general purpose computers fail Section 101 under controlling Federal Circuit case law. Mot. at 9-14, 16-21 (citing cases).

### 3. The '614 patent similarly concerns general purpose computer devices

As with the '319 and '510 patents, the '614 patent uses terms such as "device" and "server" broadly and in general terms. Indeed, Luminati's Opposition (at 16) labels both the "client device" (red font) and "first server" (green font) as a "client" computer on Figure 12a. This is not surprising given that—as Teso explained in its Motion—the '614 patent states that a device or network element can be any device with computing power, *literally including a kitchen stove, refrigerator, or trash compactor*. Mot. at 18. Further, the '614 patent uses "device" and "server" interchangeably, so that a "device" may be a "server" and vice versa. *Id.* at 18-19. The '614 patent does not recite, and does not claim, a novel computer network architecture.

Teso also explained in its Motion that the "status determination" step of the '614 patent does not add anything to the *Alice* inquiry. Determining whether a computer device is available or unavailable based on its usage or battery power is not novel and does not alter the abstract nature of the claims. Mot. at 13-14. Luminati does not attempt to argue that determining resource availability—based on CPU usage, battery power, and the like—is novel. Instead, Luminati again mischaracterizes its claims to suggest that its alleged invention "optimizes the claimed network by

limiting the network to those client devices meeting certain criteria" and that "[t]he requirements change the entire network because devices are included in or excluded from the network dynamically on an ongoing basis as a result of state shifts." Opp. at 17.

Luminati's argument is not reflected in the claims. The '614 patent claims instead look to whether a computing device has available resources (CPU or battery availability, etc.) and, if it does (i.e., if it is in the "first state"), then it may receive an Internet request. *See* '614 Pat., claim 1. There is no inventive change to an "entire network" as Luminati alleges. At best, the "status determination" claim limitation is akin to "controlling access to resources," or controlling access to the computing device depending on its availability. That type of claim, where "a request is made for access to a resource, that request is received and evaluated, and then the request is either granted or not," has been "repeatedly found unpatentable." *Ericsson*, 2020 WL 1856498 at *7. As Teso noted in its Motion, it is well known that a person—such as a human intermediary—can be available or unavailable based on how busy he or she is. Mot. at 15. There is nothing novel about this.

### 4. Teso does not misapply the law or fail to present "evidence"

Luminati's overgeneralizations and mischaracterizations (Opp. at 17-19) reinforce the conclusion that Luminati's claims are unpatentable. For example, Luminati argues that "**[s]oftware can make non-abstract improvements to computer technology just as hardware improvements can**" and that its "**network components are not interchangeable**, and the claimed methods involve steps that are not limited to the ordinary use of such components." Opp. at 18. Luminati further alleges that "the claimed inventions modify client devices to allow them to function as peer proxies in the improved network architecture of the Asserted Patents." *Id.* at 18.

It is surprising that Luminati makes this argument. As explained above, the claimed network components are entirely interchangeable—the patents *depend* on such interchangeability. The patents require that the clients, peers, and agents be standard computers (which may even

6

include keyboards and mouse input devices) and refer to "clients" and "servers" as being interchangeable. *See* Section II.A.2-3, above. And Luminati itself refers to servers as clients, and clients as agents in interchangeable terms. *See id.* Luminati has not claimed any new "software" or components, and Luminati's claims do not have anything to do with modifications of devices, technical alterations to devices, or any other similar alleged advances.[4]

Luminati's argument that, under Teso's reasoning, "the Internet itself would have been considered not inventive" is unpersuasive. Opp. at 18. The *Alice* analysis applies to patent claims, not an object or system itself. One could undoubtedly claim aspects of the Internet in both abstract and non-abstract ways. But Luminati chose to claim the exchange of Internet information with computer intermediaries, and to do so in the most abstract, high level, and result-oriented way, rather than claiming any particular technical advancement. Luminati must now live with this choice.

Luminati has not made any meaningful attempt to rebut Teso's showing that Luminati's patents describe typical human "intermediary" interactions as exemplified by the "middle school dance" illustration. Mot. at 14-16. As shown there, Luminati has simply replaced this basic human interaction with computers in attempt to patent the idea of using an intermediary. Luminati argues only that Teso ignores the allegedly claimed "component modifications" (Opp. at 18), but there are plainly no such "modifications" recited in the claims and Luminati identifies none.

Luminati asserts that Teso's cited case law is distinguishable, but its argument rests upon the false premise that the asserted patents "build[] a new residential proxy network" (Opp. at 20), which is not correct. *See* Section II.A, above. Luminati's patents, in fact, never even use the word

---

[4] Luminati's references to devices registering and registry information (Opp. at 19) are also irrelevant. Not only is registration a well-known and abstract feature, but registration *is not even claimed*.

7

"residential," whether in the claims or the specification. In short, the cases cited by Teso are directly on point and Luminati has not persuasively distinguished them. And Luminati's cited cases concern different and distinguishable facts.[5]

Luminati's reference to an alleged lack of "evidence" is also unavailing. *See, e.g.*, Opp. at 17, 25. This is a Rule 12(b)(6) Motion, which is resolved without reference to evidence outside of the pleadings. The evidence of record—the patents and Luminati's admissions in briefing—make clear that the patent claims are abstract and invalid under *Alice*. Notably, Luminati does not assert that the Court cannot resolve § 101 at the Rule 12(b)(6) stage. Neither *Berkheimer* nor any other case stands for such a proposition. Where patent claims—such as the claims-in-suit—are abstract and unpatentable, the Court may properly invalidate them at the pleading stage. Mot. at 3.

### B. Luminati's Argument That Cell Phones and Laptops are "Client Devices" is Unavailing and Confirms the Invalidity of the Claims

Luminati argues several times in its Opposition that its inventions involve "a client device such as **a cell phone or laptop**" that serves as the tunnel device. Opp. at 12. Luminati attempts to restrict its own claims' recitation of a "client device"—i.e., a device that serves in the role of a client—to a "consumer computer" or a consumer's "cell phone or laptop." *Id.* at 12-13. Notably,

---

[5] *Amdocs* concerned a "completing" limitation (in database claims) which meant "enhance a record until all required fields have been populated," and "entail[ed] an unconventional technological solution (enhancing data in a distributed fashion)." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300, 1303 (Fed. Cir. 2016). This stands in contrast to the usage of standard computers and servers to exchange information in Luminati's claims. *DDR Holdings* concerned a system involving an "'outsource provider' having a web server which directs the visitor to an automatically-generated hybrid web page" with particular attributes, not the mere exchange of information among computers. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). *Aatrix* concerned a data processing system, including certain form files and data files, and a form viewer program, not the sending or receiving of standard information among standard computers. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1123-24 (Fed. Cir. 2018). In *Freeny*, the claims were drawn to a physical device that "improves the prior art by incorporating multiple low power type signaling capability into a single unit," among other things, and were therefore different in nature from Luminati's claims. *Freeny v. Fossil Group, Inc.*, 18-CV-00049, 2019 WL 1089145, at *5 (E.D. Tex. Feb. 12, 2019).

the Court construed "client device" in the context of substantially similar claims in the first case between Luminati and Teso by reference to the device's "role": "a device that is operating in the **role** of a client by requesting services, functionalities, or resources from other devices." Case No. 1 (No. 18-CV-00299-JRG), ECF No. 121 at 51. Luminati's new proposed construction is different from the Court's prior construction and is based on Luminati's improper attempt to read in a limitation from the specification.

Luminati's arguments also stand in stark contrast to the patent specifications which, as explained above in Section II.A.2-3, make clear that clients, peers, and agents are standard computers, not a new or innovative use of a cell phone or consumer laptop. And Luminati's own arguments rely upon an interchangeable use of "clients" and "servers," as do the patent specifications. *See* Section II.A.2-3, above.

But the Court need not engage in claim construction as to "client device" for purposes of resolving this motion because there is little question that calling a device a "consumer" computer (or laptop or phone) is immaterial for *Alice* purposes. A "consumer" phone or laptop is precisely the type of off-the-shelf computer equipment that is unable to transform a plainly abstract idea into a patentable invention. *See, e.g.*, Mot. at 16-21 (citing, e.g., *Audatex* and *In re TLI Commc'ns*).

For example, Luminati cites 2:44-46 as intrinsic support in the '319 patent for redefining "client device" to mean a "[c]onsumer computer." Opp. at 13. But that citation refers to consumer computers in **the prior art**, specifically BitTorrent and peer-to-peer file systems:

> To create large distribution systems without the large hardware costs involved with a proxy solution, "peer-to-peer file sharing" solutions have been introduced, such as, for example, BitTorrent. FIG. 2 is a schematic diagram providing an example of a peer-to-peer file transfer network 50. *In the network 50, files are stored on computers of consumers, referred to herein as client devices 60.*

'319 Pat., at 2:40-46. Luminati's own citation thus confirms that "consumer computers" were well known in the prior art, including serving as intermediaries to provide data between other computers

9

or servers.

A patentee cannot render an invention patent eligible by restricting it to mobile phones or "consumer" computers, as *Ericsson* and the cases cited therein demonstrate. In *Ericsson*, the patent-at-issue concerned controlling access to resources. The patentee argued that this abstract concept was patent eligible because the claims "are specific to mobile phones." *Id.* at *7. The Federal Circuit cited its own prior authority that "'limit[ing] the abstract idea to a particular environment—a mobile telephone system—[] does not make the claims any less abstract for the step 1 analysis.'" *Id.* (citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016)). As such, Luminati's attempt to limit its claims to "consumer" computers is unavailing.

## III. CONCLUSION

Teso's Motion demonstrated how, under controlling Federal Circuit case law, Luminati's patents fall squarely on the abstract and ineligible side of the *Alice* fence. There is no legitimate dispute that the patents claim nothing more than general purpose computers and servers that send standard Internet information or content between one another. Mot. at 4-14. The devices recited in the claims are well-known computers and servers and are not in any way novel. *See id.* As explained above, Luminati's Opposition seizes upon grandiose characterizations of its alleged inventions that are untethered to the claim language and contradicted by the specification, and incapable of meeting the *Alice* test.

For these reasons, and those explained in Teso's Motion, the Court should dismiss Luminati's Complaint with prejudice.[6]

---

[6] Because Luminati's patent claims are the core of its case, Teso directs this Reply to those claims. The Court should also dismiss Luminati's recycled non-patent claims for the reasons explained in the Motion.

10

Dated: April 21, 2020

Respectfully submitted,

/s/ Steven Callahan

MICHAEL C. SMITH
  Texas State Bar No. 18650410
  michaelsmith@siebman.com
**SIEBMAN, FORREST,
BURG & SMITH LLP**
113 East Austin Street
Marshall, Texas 75671
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CRAIG TOLLIVER
  Texas State Bar No. 24028049
  ctolliver@ccrglaw.com
GEORGE T. "JORDE" SCOTT
  Texas State Bar No. 24061276
  jscott@ccrglaw.com
**CHARHON CALLAHAN
ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Defendants Teso LT, UAB,
Oxysales, UAB, and Metacluster LT, UAB*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on April 21, 2020. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

/s/ Steven Callahan
STEVEN CALLAHAN