IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Luminati Networks Ltd., <br><br> Plaintiff, <br><br> v. <br><br> Teso LT, UAB, Oxysales, UAB, and Metacluster LT, UAB, <br><br> Defendants. | Civil Action No. <br> 2:19-cv-00395-JRG <br><br> Lead Case |
| Teso LT, UAB, Oxysales, UAB, and Metacluster LT, UAB, <br><br> Counterclaim And Third-Party Plaintiffs, <br><br> v. <br><br> Luminati Networks Ltd., EMK Capital LLP, EMK Capital Partners LP, EMK Capital Partners GP Co-Investment LP, Hola VPN Ltd., and Hola Networks Ltd., <br><br> Counterclaim And Third-Party Defendants. | |

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Pursuant to Federal Rules of Civil Procedure 13, 14 and 20, Defendants and Third-Party Plaintiffs Teso LT, UAB, Oxysales, UAB, and Metacluster LT, UAB (collectively, "Oxylabs") file these Counterclaims against Plaintiff Luminati Networks Ltd. ("Luminati") and this Complaint against Third-Party Defendants EMK Capital LLP, EMK Capital Partners LP, and EMK

1

Capital Partners GP Co-Investment LP (collectively, "EMK"); and Hola VPN Ltd. and Hola Networks Ltd. (collectively, "Hola") ("Luminati," "EMK," and "Hola," collectively, "Defendants").[1] Oxylabs alleges, based on personal knowledge with respect to its own actions and upon information and belief with respect to all others' actions, as follows:

## SUMMARY OF LAWSUIT

1. Luminati, its majority owner EMK, and Hola have violated—and engaged in a conspiracy to violate—the antitrust laws of the United States, including by their monopolization and attempted monopolization of the residential proxy marketplace. Luminati, at EMK's control and direction, has also filed sham patent-infringement lawsuits against Oxylabs and other competitors in violation of the antitrust laws. Oxylabs files this suit against Defendants to hold them liable for their antitrust violations and seek redress for the injuries Oxylabs has suffered.

## PARTIES

2. Teso LT, UAB is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

3. Oxysales, UAB is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

4. Metacluster LT, UAB is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

---

[1] Oxylabs has filed a motion to dismiss Luminati's Complaint (ECF No. 20) and, accordingly, need not answer the Complaint at this time.

5.      Luminati is an entity organized and existing under the laws of Israel with its principal place of business at 3 Hamahshev Street, Netanya 42507, Israel.

6.      EMK is an entity organized and existing under the laws of the United Kingdom with its principal place of business at Lex House, 17 Connaught Place, London, W2 2ES, United Kingdom. EMK announced its acquisition of Luminati in August 2017. EMK's representatives sit on and control Luminati's Board of Directors. One of EMK's representatives is Luminati's Chairman.

7.      Hola is an entity organized and existing under the laws of Israel with its principal place of business at 3 Hamahshev Street, Netanya 42507, Israel. Hola and Luminati share at least two common owners. These common owners founded both Hola and Luminati, and they hold leadership roles and maintain ownership interests in both companies. The first common owner is the Founder and President of Luminati, and the Founder and Executive Chairman of Hola. The second common owner is the Founder and Chief Technology Officer of Luminati, and the Founder and Chief Technology Officer of Hola. The common owners are the named inventors of the patents asserted by Luminati against Oxylabs.

## JURISDICTION AND VENUE

8.      The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 because one or more of Oxylabs' causes of action arise under the laws of the United States, including 15 U.S.C. § 15(a). The Court has supplemental jurisdiction over Oxylabs' state-law claim under 28 U.S.C. § 1367(a). The Court may grant declaratory and other relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

9.      The Court has personal jurisdiction over Defendants. Defendants, via themselves and/or their subsidiaries or affiliates, regularly conduct and transact business throughout the

United States, in the State of Texas, and within the Eastern District of Texas. Defendants also directed their conduct-at-issue with this lawsuit to Oxylabs, customers and potential customers within the State of Texas, including the Eastern District of Texas. Additionally, Luminati filed (and EMK caused Luminati to file) meritless patent-infringement claims against Oxylabs in the Eastern District of Texas. Luminati and Hola also maintain "exit nodes," which are used with the relevant proxy products, within the State of Texas, including the Eastern District of Texas.

10. Venue is proper in the Eastern District of Texas, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to this lawsuit occurred in the Eastern District of Texas and/or because Defendants are subject to personal jurisdiction in the Eastern District of Texas. Venue is also proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(c)(3), as Defendants are not residents of the United States and, accordingly, they may be sued in any judicial district. Venue is further proper in the Eastern District of Texas pursuant to 15 U.S.C. § 22, because Defendants may be found or transact business in the Eastern District of Texas.

## FACTS

11. Oxylabs is a leading provider of proxy services. Oxylabs' products include, but are not limited to, residential proxies, data center proxies, and its Real-Time Crawler product. *See generally* https://oxylabs.io/.

12. Luminati is one of Oxylabs' competitors. Luminati also offers residential proxies and data center proxies, as well as an "Unblocker" product (which Luminati describes as "automated unblocking software to reach your target sites"). *See generally* https://luminati.io/.

13. Oxylabs entered the residential proxy market after Luminati and became Luminati's largest competitor.

14. After Oxylabs entered the residential proxy market, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See Luminati Networks Ltd. v. UAB Tesonet*, Case No. 2:18-cv-00299-JRG (E.D. Tex.) (the "First Lawsuit").[2] ████████████████████████████████████████████████████████████████████████████████████████████████████

15. According to EMK, its governance role is an essential component in its portfolio companies' value creation. EMK invests in companies over periods of three to seven years. ██████████████████████████████████████████████████████████████████████████████████████████████████

16. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

17. To date, Luminati has filed multiple lawsuits against Oxylabs, ████████████████████████████████████████████████

18. In the First Lawsuit, the parties ████████████████████████████████████████████████████████████████████████████████████████████████████████.

19. Luminati has also asserted non-patent claims in the instant lawsuit. Luminati previously asserted these non-patent claims in the First Lawsuit. ████████████████████████████████████████████████████████████████

---

[2] The First Lawsuit did not include Oxysales, UAB as a defendant.

20. ███████████████████████████████████████████

███████─███████████████████████████████

21. Throughout the last several years, ███████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████

22. ███████████████████████████████████████
███████████████████████████████████████████

23. ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████

24. ███████████████████████████████████████
███████████████████████████████████████████
████

25. At all times relevant hereto, a market has existed for residential proxies, at least in the United States (the "relevant market").

26. There are substantial barriers to entry with respect to the relevant market. For example, to successfully enter the residential proxy market, a company needs a critical mass of res-

idential proxies. To obtain such a critical mass of residential proxies, it would take a would-be entrant millions of dollars and likely several years of effort.

27. Luminati and Oxylabs compete head-to-head in the relevant market.

28. The commercial activities of Luminati and Oxylabs in the relevant market are carried out as part of trade or commerce among the several States and/or with foreign nations. Luminati has sold proxies in interstate commerce and has engaged in the conduct described herein through interstate channels. Any relevant foreign conduct of Defendants was meant to produce and did in fact produce direct, substantial, and reasonably foreseeable effects in the United States.

29. Luminati is generally thought to be the largest company in the proxy marketplace. For example, according to Luminati, it is "[t]he world's largest residential network offering 72+ million real-peer IPs in every location across the globe"—"[i]n every country" and "[i]n every city." *See* https://luminati.io/.

30. A Frost & Sullivan Report concludes that Luminati has a 53.1% market share in the highly concentrated proxy marketplace. According to Frost & Sullivan, Oxylabs had a 13.3% market share. On information and belief, Luminati has a substantially greater market share of the United States residential proxy market, as the Frost & Sullivan Report was neither confined to residential proxies nor the United States and most of the key players listed in the Frost & Sullivan Report have focused their sales activities overseas. Additionally, Luminati recently announced that, to resolve Luminati's lawsuits against it, the third largest player in the proxy market (BI Science a/k/a GeoSurf) will be exiting the business and transitioning its customers to Luminati. Such an exit and transition will give Luminati even more market power.

31. In the First Lawsuit, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

▮▮▮

32. Luminati has achieved its dominant position not through superior products, innovation, or business acumen, but as a result of having restrained trade, and monopolized (or attempted to monopolize) the relevant market in interstate and/or foreign commerce in violation of, at a minimum, 15 U.S.C. §§ 1 and/or 2.

33. Luminati has done so, in combination with EMK and Hola, by engaging in the conduct-at-issue with specific intent to monopolize. Luminati has thereby achieved monopoly power in the relevant market or at a minimum reached a dangerous probability of achieving such monopoly power.

34. ▮▮▮

███████████████████████████████████████████████████████████████

███████████████████████████████████████████

35. ████████████████████████████████████████████████████

████████████████████████████████.[3]

36. In an effort to maintain and strengthen its monopoly power, █████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████ ██████████████████████████████████████████████████████

██████████████████████████████. ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████.

37. Luminati has sought to use its patents to exclude lawful competition anywhere in the relevant market and worldwide, beyond the scope of any legal protection to which Luminati is legally entitled, and thereby to secure for itself a monopoly in at least the relevant market.

38. █████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██.

---

[3] *See, e.g.*, *Illuminating Hola VPN and the Dangers It Poses*, available at https://documents.trendmicro.com/assets/white_papers/wp-illuminating-holaVPN-and-the-danger-it-poses.pdf; *Popular Chrome VPN Extension Hola At Center Of Massive Botnet Attack*, available at https://www.extremetech.com/computing/206858-popular-chrome-vpn-extension-hola-at-center-of-massive-botnet-attack; *Your Tool to Access Netflix Content Abroad Is Hijacking Your Internet Connection*, available at https://www.vice.com/en_us/article/pga9yk/your-tool-to-access-netflix-content-abroad-is-hijacking-your-internet-connection; *Adios, Hola! Or: Why You Should Immediately Uninstall Hola*, available at http://adios-hola.org/.

39. Luminati has also asserted ███████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████

40. In the First Lawsuit, Luminati made several arguments, including with respect to the Supreme Court's *Alice* decision, the doctrine of equivalents, and 35 U.S.C. § 271(g), that were foreclosed by law, including binding Supreme Court and/or Federal Circuit precedent. █
████████████████████████████████████████

41. Oxylabs has placed Luminati on notice, at least with letters dated September 10, 2019 and March 23, 2020, that Luminati's lawsuits against Oxylabs are meritless. In the First Lawsuit, Oxylabs also served detailed expert reports showing that the Luminati patents-at-issue were not infringed and invalid. Oxylabs also filed a detailed motion for summary judgment of non-infringement, explaining the bases why Oxylabs did not infringe Luminati's patents-in-suit.

42. ████████████████████████████████████████████████████
████████

43. ████████████████████████████████████████ but nevertheless persists with filing lawsuits against Oxylabs and other competitors.

44. ████████████████████████████████████████████████████
██████████████████

45. Luminati has publicized its legal actions in the press and public-relations communications with ████████████████████████████████, including Oxylabs.

46. ████████████████████████████████████████████████████
████████████████████

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

47. The motivation for the conduct-at-issue is the desire to harm Oxylabs and to create a greater monopoly which will allow Luminati to increase prices beyond Luminati's already high prices. For example, Luminati has told marketplace participants that Luminati will "take Oxylabs out of business." ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

48. Another purpose for Luminati's litigations against Oxylabs is so that Luminati can advise customers or potential customers of the pending litigation.

49. Luminati, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ has previously brought patent-infringement lawsuits ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. For example, Luminati has previously sued IP Ninja and BI Science and, to date, it appears as if both entities have (or will shortly) go out of the business on account of the lawsuits. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

50. Oxylabs has suffered substantial damages as a result of Defendants' monopolization and attempted monopolization. Such damages include, without limitation, damages directly incurred as a result of defending against litigation; lost profits resulting from having to compete lawfully against Defendants' unlawful methods of building their network as herein alleged; and damages to Oxylabs' goodwill and commercial reputation as a result of Luminati's other practices including statements to the marketplace.

51. Oxylabs has suffered additional harm as a result of Defendants' conduct that can-

not be fully compensated by monetary damages and Oxylabs is accordingly entitled to injunctive relief.

52. Oxylabs is entitled to treble damages, costs, and attorney's fees pursuant to 15 U.S.C. § 15(a).

53. 

54. 

55. All of Luminati's conduct complained of herein was either directed or controlled by EMK.

56. All conditions precedent have been performed or have occurred.

57. Oxylabs specifically pleads the applicability of the discovery rule.

### COUNT I
### (MONOPOLIZATION—15 U.S.C. § 2)

58. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

59. Luminati has monopoly power in the relevant market.

60. Luminati has the power to control price or exclude competition.

61.

<a><!-- --></a>
<a><!-- --></a>
<a><!-- --></a>
<a><!-- --></a>
<a><!-- --></a>
<a><!-- --></a>
<a><!-- --></a>
<a><!-- --></a>

62. .

63. The effects of Luminati's unlawful, anti-competitive conduct are extreme, and have directly and proximately caused injury to competition in the relevant market and to Oxylabs. Based on the individual and combined effects of the acts described above and similar conduct and practices, Luminati has willfully and wrongfully maintained and extended its monopoly power in the relevant market by raising barriers to entry and foreclosing competition. Luminati's actions were taken for the purpose and effect of maintaining its monopoly and unreasonably restraining competition in the relevant market.

64. Oxylabs and customers in the relevant market have been injured in their business and property by reason of Luminati's antitrust violations. Oxylabs' injury is the type of injury the antitrust laws were intended to prevent and flows from that which makes Luminati's acts unlawful.

65. There are no legitimate business justifications for Luminati's anticompetitive practices and any purported legitimate business justifications are mere pretexts and could have been achieved in a less restrictive manner.

66. Luminati's violations of law and the effects thereof are continuing and will con-

13

tinue unless appropriate injunctive relief is granted. Oxylabs has no adequate remedy at law.

67. Luminati's practices (i) decreased the quality of products in the relevant market, (ii) increased Luminati's market power, (iii) unreasonably restrained entry into the relevant market, (iv) increased costs to consumers by preventing competitive entrants from reaching economies of scale, and/or (v) unreasonably restrained competition by channeling consumer choices to Luminati's products, thereby effectively excluding other competitors' access to the relevant market.

## COUNT II
### (ATTEMPTED MONOPOLIZATION—15 U.S.C. § 2)

68. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

69. Luminati has engaged in predatory or anticompetitive conduct.

70. Luminati engaged in such conduct with the specific intent to monopolize.

71. A dangerous probability of achieving monopoly power exists.

72. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

73. ████████████████████████████████████████████████



74. Oxylabs and customers in the relevant market have been injured in their business and property by reason of Luminati's antitrust violations. Oxylabs' injury is the type of injury the antitrust laws were designed to prevent and flows from that which makes Luminati's acts unlawful.

75. ███████████████████████████████████████████████████████████████████████████████████████████

76. Luminati's violations of law and the effects thereof are continuing and will continue unless appropriate injunctive relief is granted. Oxylabs has no adequate remedy at law.

77. Luminati's practices (i) decreased quality of products in the relevant market, (ii) increased Luminati's market power, (iii) unreasonably restrained entry into the relevant market, (iv) increased costs to consumers by preventing competitive entrants from reaching economies of scale, and/or (v) unreasonably restrained competition by channeling consumer choices to Luminati's products, thereby effectively excluding other competitors' access to the relevant market.

## COUNT III
### (COMBINATION OR CONSPIRACY IN RESTRAINT OF TRADE—15 U.S.C. § 1)

78. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

79. Defendants entered into one or more contracts in restraint of trade or commerce

among the several States, or with foreign nations.

80. Defendants combined or conspired with one another.

81. Defendants have unreasonably restrained trade.

82. Defendants' unreasonable restraint of trade has had an effect on interstate commerce.

## COUNT IV
### (CONSPIRACY TO MONOPOLIZE AND/OR ATTEMPT TO MONOPOLIZE—15 U.S.C. § 2)

83. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

84. Defendants were members of a combination of two or more persons.

85. Defendants conspired to monopolize.

86. Defendants had the specific intent to monopolize.

87. One of the members of the conspiracy committed an overt act in furtherance of the conspiracy.

88. The conspiracy had an effect upon a substantial amount of interstate commerce.

89. Oxylabs suffered injury as a proximate result of the wrongful act.

## COUNT V
### (BREACH OF CONTRACT)

90. Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

91. One or more valid and enforceable contracts exists between Oxylabs and Luminati.

92. Oxylabs is a proper party to bring suit for breach of contract.

93. Oxylabs performed, tendered performance of, or was excused from performing its contractual obligations.

94. Luminati breached the contract(s).

95. Luminati's breach caused Oxylabs injury.

## JURY DEMAND

96. Oxylabs demands, pursuant to Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

97. Oxylabs requests that the Court:

    A. Hold Defendants liable on one or more of Oxylabs' causes of action;

    B. Declare that Defendants have violated the antitrust laws;

    C. Declare that Luminati breached the parties' contract and may not, consistent with the contract, disclose details concerning the parties' settlement discussions or communications relating to settlement;

    D. Grant an injunction preventing Defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from continuing to violate Oxylabs' rights and continuing their antitrust violations;

    E. Award Oxylabs actual, compensatory, general, special, lost profits, lost revenues, exemplary, treble, and/or punitive damages;

    F. Order Defendants to disgorge any monies, gains, profits, and/or advantages that are attributable to the acts complained of herein;

    G. Award Oxylabs its costs, attorney's fees, and expenses;

    H. Award pre-judgment and post-judgment interest on the damages awarded at the highest rate allowed by law; and

  I.  Grant Oxylabs such other and further relief, general and special, at law or in equity, as the Court deems just and equitable.

| | |
|---|---|
| Dated: May 26, 2020 | Respectfully submitted, |

/s/ Michael C. Smith

MICHAEL C. SMITH
  Texas State Bar No. 18650410
  michaelsmith@siebman.com
**SIEBMAN, FORREST,**
**BURG & SMITH LLP**
113 East Austin Street
Marshall, Texas 75671
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CRAIG TOLLIVER
  Texas State Bar No. 24028049
  ctolliver@ccrglaw.com
GEORGE T. "JORDE" SCOTT
  Texas State Bar No. 24061276
  jscott@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Teso LT, UAB, Oxysales, UAB, and Metacluster LT, UAB*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on May 26, 2020. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). The foregoing document has also been served on Luminati's counsel, Sunny Cherian, Esq., by e-mail on May 26, 2020.

*/s/ Steven Callahan*
STEVEN CALLAHAN

**CERTIFICATE OF AUTHORIZATION TO SEAL**

The undersigned certifies that the foregoing motion is filed under seal pursuant to Local Patent Rule 2-2.

*/s/ Steven Callahan*
STEVEN CALLAHAN