IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Luminati Networks Ltd., <br><br> Plaintiff, <br><br> v. <br><br> Teso LT, UAB, Oxysales, UAB, and Metacluster LT, UAB, <br><br> Defendants. <br><br> ──────────────── <br><br> Teso LT, UAB, Oxysales, UAB, and Metacluster LT, UAB, <br><br> Counterclaim And Third-Party Plaintiffs, <br><br> v. <br><br> Luminati Networks Ltd., EMK Capital LLP, EMK Capital Partners LP, EMK Capital Partners GP Co-Investment LP, Hola VPN Ltd., and Hola Networks Ltd., <br><br> Counterclaim And Third-Party Defendants. | Civil Action No. <br> **2:19-cv-00395-JRG** <br><br> **Lead Case** <br><br> **FILED UNDER SEAL** |

**OXYLABS' ANSWER, THIRD AMENDED COUNTERCLAIMS
AND THIRD AMENDED THIRD-PARTY COMPLAINT**

Teso LT, UAB ("Teso"), Oxysales, UAB ("Oxysales"), and Metacluster LT, UAB ("Metacluster") (collectively, "Oxylabs") file this Answer to Plaintiff Luminati Networks Ltd.'s ("Luminati") Complaint for Patent Infringement filed on December 6, 2019 (the "Complaint") (ECF No. 1) and Third Amended Counterclaims and Third Amended Third-Party Complaint. All

1

allegations of the Complaint not expressly admitted or not specifically responded to by Oxylabs are denied.

<u>**THE PARTIES**</u>

1.      Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and, therefore, denies the allegations.

2.      Responding to Paragraph 2, Oxylabs admits that Teso was previously known as UAB Tesonet ("Tesonet"), and is a Lithuanian entity with an office address of A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania. Oxylabs further admits that, in 2018, Tesonet underwent a corporate restructuring and, as a result of that restructuring, (i) Tesonet's name was changed to Teso LT, UAB and (ii) Metacluster, Oxysales, code200, UAB ("Code200"), and coretech lt, UAB ("Coretech") were created. Oxylabs admits that Teso, Metacluster, Oxysales, Code200 and Coretech share, directly or indirectly, common or overlapping owners. Oxylabs denies the remaining allegations of Paragraph 2.

3.      Responding to Paragraph 3, Oxylabs admits that Metacluster is a Lithuanian entity with an office address of A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania, and that Teso also has this office address. Oxylabs further admits that Teso and Metacluster share a common owner. Oxylabs admits that Metacluster sells the Real-Time Crawler product ("RTC") previously sold by Teso. Oxylabs denies the remaining allegations of Paragraph 3.

4.      Responding to Paragraph 4, Oxylabs admits that Oxysales is a Lithuanian entity with an office address of A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania, and that Teso and Metacluster also have this office address. Oxylabs further admits that Oxysales, Teso and Metacluster share a common owner. Oxylabs admits that Oxysales has provided sales agency, client support and marketing support to Teso and Metacluster. Oxylabs denies the remaining allega-

2

tions of Paragraph 4.

5.      Responding to Paragraph 5, Oxylabs admits that Teso has sold Oxylabs' residential proxy network service ("RPN") and that Metacluster has sold RTC. Oxylabs further admits that the RPN and RTC products are advertised on the website https://oxylabs.io. Oxylabs further admits that Teso, Metacluster, and Oxysales have the same owner. Oxylabs denies the remaining allegations of Paragraph 5.

## JURISDICTION AND VENUE

6.      Oxylabs admits that Luminati has brought a lawsuit alleging patent infringement under the laws of the United States, as alleged in Paragraph 6. Oxylabs denies that it infringes any patents.

7.      Oxylabs admits that this Court has subject-matter jurisdiction, as alleged in Paragraph 7. Oxylabs further admits that Teso did not contest subject-matter jurisdiction in the lawsuit styled *Luminati Networks Ltd. v. UAB Tesonet*, Case 2:18-cv-00299-JRG (the "First Lawsuit") and that Teso accepted service of process in the First Lawsuit.

8.      Responding to Paragraph 8, Teso states that it does not contest personal jurisdiction. Oxylabs otherwise denies the allegations of Paragraph 8.

9.      Responding to Paragraph 9, Metacluster states that it does not content personal jurisdiction. Oxylabs otherwise denies the allegations of Paragraph 9.

10.     Responding to Paragraph 10, Oxysales states that it does not content personal jurisdiction. Oxylabs otherwise denies the allegations of Paragraph 10.

11.     Responding to Paragraph 11, Oxylabs states that the Oxylabs website speaks for itself. Oxylabs otherwise denies the allegations of Paragraph 11.

12.     Oxylabs denies the allegations of Paragraph 12.

13.     Responding to Paragraph 13, Oxylabs states that it does not contest venue and that Oxysales, Teso, and Metacluster are not United States entities.

## FACTUAL ALLEGATIONS

14.     Responding to Paragraph 14, Oxylabs admits that U.S. Patent Nos. 10,469,614 (the "'614 patent") states, on its face, that it issued on April 9, 2019. Oxylabs admits that U.S. Patent No. 10,257,319 (the "'319 patent") states, on its face, that it issued on November 5, 2019. Oxylabs admits that U.S. Patent No. 10,484,510 (the "'510 patent") states, on its face, that it issued on November 19, 2019. (The '614 patent, '319 patent, and '510 patent, collectively, the "Patents-in-Suit.") Oxylabs further admits that Luminati filed its complaint in the First Lawsuit before April 9, 2019 and November 5, 2019. Oxylabs otherwise denies the allegations of Paragraph 14.

15.     Responding to Paragraph 15, Oxylabs states that the '319 patent and the '510 patent speak for themselves. Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the other allegations in Paragraph 15 and, therefore, denies the allegations.

16.     Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and, therefore, denies the allegations.

17.     Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and, therefore, denies the allegations.

18.     Responding to Paragraph 18, Oxylabs admits that Tesonet and Hola Networks Ltd. entered into a contract effective December 2015. Oxylabs also states that it understands that Hola Networks Ltd. offered a virtual provide network service called HolaVPN. Oxylabs otherwise denies the allegations of Paragraph 18.

19.     Responding to Paragraph 19, Oxylabs admits that, in May 2017, Tomas Okmanas,

a Teso co-founder, met with Ofer Vilkenski. Oxylabs further states that any e-mail sent by Mr. Vilenski to Mr. Okmanas speaks for itself. Otherwise, Oxylabs denies the allegations of Paragraph 19.

20.     Responding to Paragraph 20, Oxylabs admits that, on or about June 1, 2017, the letter attached to the Complaint as ECF No. 1-4 was sent to Mr. Okmanas. Oxylabs further states that the letter and U.S. Patent Nos. 8,560,604 and 9,241,044 speak for themselves. Oxylabs otherwise denies the allegations of Paragraph 20.

21.     Responding to Paragraph 21, Oxylabs admits that, on or about February 14, 2018, the letter attached to the Complaint as ECF No. 1-5 was sent to Mr. Okmanas. Oxylabs further states that the letter speaks for itself. Oxylabs otherwise denies the allegations of Paragraph 21.

22.     Responding to Paragraph 22, Oxylabs admits that, on June 20, 2018, counsel for Tesonet sent a letter to David Cohen. Oxylabs further states that the letter speaks for itself. Oxylabs admits that "Oxylabs" is the brand name used in connection with certain products, including RPN and RTC. Oxylabs states that the Oxylabs website speaks for itself. Oxylabs otherwise denies the allegations of Paragraph 22.

23.     Responding to Paragraph 23, Oxylabs states that the complaint in the First Lawsuit speaks for itself. Oxylabs further admits that the Patents-in-Suit issued after July 19, 2018.

24.     Responding to Paragraph 24, Oxylabs states that the Oxylabs website speaks for itself. Oxylabs admits that contractual relationships exist between the Oxylabs entities. Oxylabs admits that residential proxies are located in Marshall, Texas. Oxylabs otherwise denies the allegations of Paragraph 24.

25.     Oxylabs denies the allegations of Paragraph 25.

26.     Oxylabs denies the allegations of Paragraph 26.

27.     Oxylabs denies the allegations of Paragraph 27.

28.     Oxylabs denies the allegations of Paragraph 28.

29.     Oxylabs denies the allegations of Paragraph 29.

30.     Responding to Paragraph 30, Oxylabs states that the End User License Agreement spoke for itself. Oxylabs otherwise denies the allegations of Paragraph 30.

31.     Oxylabs denies the allegations of Paragraph 31.

32.     Oxylabs denies the allegations of Paragraph 32.

33.     Oxylabs denies the allegations of Paragraph 33.

34.     Oxylabs denies the allegations of Paragraph 34.

35.     Responding to Paragraph 35, Oxylabs admits that the use of RPN allows for anonymity.

36.     Responding to Paragraph 36, Oxylabs states that the Oxylabs website speaks for itself.

37.     Responding to Paragraph 37, Oxylabs states that the Oxylabs website and hyperlink speak for themselves. Oxylabs otherwise denies the allegations of Paragraph 37.

38.     Oxylabs denies the allegations of Paragraph 38.

39.     Responding to Paragraph 39, Oxylabs states that the website www.darksideofluminati.com spoke for itself. Oxylabs otherwise denies the allegations of Paragraph 39.

40.     Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 and, therefore, denies the allegations.

41.     Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and, therefore, denies the allegations.

42.     Responding to Paragraph 42, Oxylabs admits that certain former Luminati employees were contacted by Oxylabs' legal counsel, and that Oxylabs sought information from the former employees. Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 concerning any Luminati agreement with its employees and employee knowledge and, therefore, denies the allegations.

43.     Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 and, therefore, denies the allegations.

44.     Oxylabs denies the allegations of Paragraph 44.

45.     Oxylabs denies the allegations of Paragraph 45.

46.     Oxylabs denies the allegations of Paragraph 46.

### COUNT I
### (ALLEGED INFRINGEMENT OF THE '614 PATENT)

47.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

48.     Responding to Paragraph 48, Oxylabs admits that what purports to be a true and correct copy of the '614 patent is attached as ECF No. 1-1. Oxylabs otherwise denies the allegations of Paragraph 48.

49.     Responding to Paragraph 49, Oxylabs states that 35 U.S.C. § 282 speaks for itself. Oxylabs otherwise denies the allegations of Paragraph 49.

50.     Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 and, therefore, denies the allegations.

51.     Responding to Paragraph 51, Oxylabs states that Claim 1 of the '614 patent speaks for itself.

52.     Oxylabs denies the allegations of Paragraph 52.

53.   Oxylabs denies the allegations of Paragraph 53.

54.   Responding to Paragraph 54, Oxylabs states that the '614 patent speaks for itself. Oxylabs otherwise denies the allegations of Paragraph 54.

55.   Responding to Paragraph 55, Oxylabs states that the pleadings in the First Lawsuit and the '614 patent speak for themselves. Oxylabs otherwise denies the allegations of Paragraph 55.

56.   Oxylabs denies the allegations of Paragraph 56.

57.   Oxylabs denies the allegations of Paragraph 57.

58.   Oxylabs denies the allegations of Paragraph 58.

59.   Oxylabs denies the allegations of Paragraph 59.

60.   Oxylabs denies the allegations of Paragraph 60.

## COUNT II
## (ALLEGED INFRINGEMENT OF THE '319 PATENT)

61.   Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

62.   Responding to Paragraph 62, Oxylabs admits that what purports to be a true and correct copy of the '319 patent is attached as ECF No. 1-2. Oxylabs otherwise denies the allegations of Paragraph 62.

63.   Responding to Paragraph 63, Oxylabs states that 35 U.S.C. § 282 speaks for itself. Oxylabs otherwise denies the allegations of Paragraph 63.

64.   Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 and, therefore, denies the allegations.

65.   Responding to Paragraph 65, Oxylabs states that Claim 1 of the '319 patent speaks for itself.

66.     Oxylabs denies the allegations of Paragraph 66.

67.     Responding to Paragraph 67, Oxylabs states that the '319 patent speaks for itself. Oxylabs otherwise denies the allegations of Paragraph 67.

68.     Oxylabs denies the allegations of Paragraph 68.

69.     Oxylabs denies the allegations of Paragraph 69.

70.     Oxylabs denies the allegations of Paragraph 70.

71.     Oxylabs denies the allegations of Paragraph 71.

72.     Oxylabs denies the allegations of Paragraph 72.

73.     Oxylabs denies the allegations of Paragraph 73.

## COUNT III
### (ALLEGED INFRINGEMENT OF THE '510 PATENT)

74.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

75.     Responding to Paragraph 75, Oxylabs admits that what purports to be a true and correct copy of the '510 patent is attached as ECF No. 1-3. Oxylabs otherwise denies the allegations of Paragraph 75.

76.     Responding to Paragraph 76, Oxylabs states that 35 U.S.C. § 282 speaks for itself. Oxylabs otherwise denies the allegations of Paragraph 76.

77.     Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 and, therefore, denies the allegations.

78.     Responding to Paragraph 78, Oxylabs states that Claim 1 of the '510 patent speaks for itself.

79.     Oxylabs denies the allegations of Paragraph 79.

80.     Responding to Paragraph 80, Oxylabs states that the '510 patent speaks for itself.

Oxylabs otherwise denies the allegations of Paragraph 80.

81.     Oxylabs denies the allegations of Paragraph 81.

82.     Oxylabs denies the allegations of Paragraph 82.

83.     Oxylabs denies the allegations of Paragraph 83.

84.     Oxylabs denies the allegations of Paragraph 84.

85.     Oxylabs denies the allegations of Paragraph 85.

86.     Oxylabs denies the allegations of Paragraph 86.

## COUNT IV
### (ALLEGED MISAPPROPRIATION OF TRADE SECRETS)

87.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

88.     Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 and, therefore, denies the allegations.

89.     Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 and, therefore, denies the allegations.

90.     Oxylabs denies the allegations of Paragraph 90.

91.     Oxylabs denies the allegations of Paragraph 91.

92.     Oxylabs denies the allegations of Paragraph 92.

93.     Oxylabs denies the allegations of Paragraph 93.

## COUNT V
### (ALLEGED INTENTIONAL UNAUTHORIZED ACCESS OF PROTECTED COMPUTER)

94.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

95.     Oxylabs denies the allegations of Paragraph 95.

96.     Oxylabs denies the allegations of Paragraph 96.

97.     Oxylabs denies the allegations of Paragraph 97.

### COUNT VI
### (ALLEGED FALSE ADVERTISING UNDER 15 U.S.C. § 1125(A) *ET SEQ.*)

98.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

99.     Oxylabs denies the allegations of Paragraph 99.

100.    Oxylabs denies the allegations of Paragraph 100.

101.    Oxylabs denies the allegations of Paragraph 101.

102.    Oxylabs denies the allegations of Paragraph 102.

103.    Oxylabs denies the allegations of Paragraph 103.

104.    Oxylabs denies the allegations of Paragraph 104.

### COUNT VII
### (ALLEGED TORTIOUS INTERFERENCE WITH LUMINATI'S BUSINESS RELATIONSHIPS)

105.    Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

106.    Oxylabs is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106 and, therefore, denies the allegations.

107.    Oxylabs denies the allegations of Paragraph 107.

108.    Oxylabs denies the allegations of Paragraph 108.

### LUMINATI'S PRAYER FOR RELIEF

109.    Oxylabs admits that Luminati requests certain relief from the Court. Oxylabs denies that Luminati is entitled to any relief.

### LUMINATI'S DEMAND FOR JURY TRIAL

110.    Oxylabs admits that Luminati has demanded a trial by jury of all issues so triable. Oxylabs demands, pursuant to Federal Rule of Civil Procedure 38, a trial by jury on all issues so

triable.

### DEFENSES

111.    Without altering the burden of proof, Oxylabs asserts the following defenses, which are based upon an investigation that is not complete. Oxylabs' investigation of its defenses is continuing, and Oxylabs reserves the right to assert all defenses under Federal Rule of Civil Procedure 8, the patent laws of the United States, and any other defense, at law or in equity, that may now exist or in the future be available based upon, among other things, discovery and further investigation in this case.

### FIRST DEFENSE
### (NON-INFRINGEMENT)

112.    Oxylabs has not directly or indirectly, literally or under the doctrine of equivalents, infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the Patents-in-Suit, and is not liable for infringement thereof.

### SECOND DEFENSE
### (INVALIDITY)

113.    The claims of the Patents-in-Suit are invalid and/or void for failure to meet the conditions for patentability specified by 35 U.S.C. §§ 101 *et seq.*, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112 and/or 282 and/or the Rules and Regulations of the United States Patent & Trademark Office.

### THIRD DEFENSE
### (LIMITATION ON DAMAGES)

114.    Luminati's claims for relief are limited by 35 U.S.C. §§ 286-287 and/or 28 U.S.C. § 1498.

### FOURTH DEFENSE
### (PROSECUTION HISTORY ESTOPPEL)

115.    By reason of proceedings in the United States Patent & Trademark Office, and by

12

reasons of amendments, statements, admissions, omissions and/or representations made by the applicants or on their behalf, Luminati is estopped from asserting infringement of the Patents-in-Suit against Oxylabs.

## FIFTH DEFENSE
### (DISCLOSURE-DEDICATION)

116.     Luminati's claims are barred to the extent Luminati has dedicated to the public systems, methods, and/or products disclosed in the Patents-in-Suit but not literally claimed therein.

## SIXTH DEFENSE
### (INEQUITABLE CONDUCT)

117.     The '614 patent is unenforceable as a result of the inequitable conduct of Luminati due to its omission of information material to patentability during prosecution with the specific intent to mislead or deceive the United States Patent & Trademark Office. Such intentionally omitted information includes the applications that issued as the '319 and '510 patents, which were examined by Examiner Nguyen, in the prosecution of the application that issued as the '614 patent, U.S. Pat. App. 16/214,433 (the "'433 Application"), which Examiner Scott examined. The applications that issued as the '319 and '510 patents were unquestionably known to at least Derry Shribman and Ofer Vilenski, who are the coinventors of all three Patents-in-Suit, as well as Yehuda Binder, the prosecutor that signed all papers submitted by the patentee in the prosecution of all three Patents-in-Suit. Manual of Patent Examining Procedure ("MPEP") § 2001.06(b) makes clear that each of these individuals owed

> a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other copending United States applications which are "material to patentability" of the application in question. This may include providing the identification of pending or abandoned applications filed by at least one of the inventors or assigned to the same assignee as the current applica-

tion that disclose similar subject matter that are not otherwise iden-
tified in the current application.

118.    The intentionally withheld applications were material to the patentability of the
claims of the '614 patent. Specifically, on June 27, 2019, Examiner Scott rejected all pending
claims of the '433 Application except claim 28, which was objected to as allowable if rewritten
in independent form as claim 1.

119.    On July 15, 2019, Examiner Scott and Prosecutor Binder agreed on a phone call
that Examiner Scott had intended to allow claim 29 and not claim 28 (despite Examiner Scott
providing a full basis for rejecting claim 29 under 35 U.S.C. § 103 in his June 27, 2019 final of-
fice action). On July 27, 2019, without traversing any of the rejections to claim 1 of the '433 Ap-
plication, Luminati amended claim 1 to add the subject matter of claim 29, which Examiner
Scott allowed on August 23, 2019. Accordingly, Examiner Scott allowed amended claim 1 solely
based upon Luminati's additional limitations of claim 29.

120.    The '319 patent issued over three months earlier on April 9, 2018, purporting to
have a priority date of October 9, 2009, making the '319 patent prior art to the '433 Application.
Significantly, the additional limitations of claim 29 of the '433 Application are coextensive in
scope with claim 1 of the '319 patent. Due to Luminati's intentional failure to disclose the appli-
cations that issued as the '319 and '510 patents (or the fact that the '319 patent in fact issued),
Examiner Scott was not aware of that Luminati claimed, in claim 1 of the prior art '319 patent,
the exact same subject matter on which Examiner Scott based his allowance of the claims of the
'614 patent. But for Luminati's omission of these applications, Examiner Scott would not have
allowed the claims of the '614 patent because the purportedly allowable subject matter of claim
29 of the '614 patent is disclosed by claim 1 of the prior art '319 patent.

121.    Luminati intentionally withheld these applications from Examiner Scott with the

specific intent to mislead or deceive the United States Patent & Trademark Office. The intentionally withheld patent applications were unquestionably known to Luminati, as the '433 Application and the withheld applications share the same inventors and prosecuting attorney. MPEP § 2001.06(b) expressly states that the inventors and the prosecuting attorney had a duty to disclose the withheld applications in the prosecution of the '433 Application. The only reasonable inference is that the failure to submit a known reference that is expressly required to be disclosed was a result of a specific intent to mislead or deceive the United States Patent & Trademark Office, especially considering that the applications are material to patentability. Luminati's specific intent to deceive is also evidenced by the conduct giving rise to Teso's counterclaims, as more fully described below, as Luminati was motivated to mislead Examiner Scott in order to obtain the '614 patent to assert against Oxylabs in furtherance of this conduct.

### SEVENTH DEFENSE
### (FIRST AMENDMENT / LITIGATION PRIVILEGE)

122.    Oxylabs asserts that certain of Luminati's non-patent claims are barred, in whole or in part, by the First Amendment to the United States Constitution, the litigation privilege, legal justification, fair use, and/or Oxylabs' free-speech rights. For example, Luminati appears to premise its false advertising and tortious-interference claims based on Oxylabs' "Bust the Bully" prior-art program and the website http://www.darksideofluminati.com/. But that program and website are protected by First Amendment to the United States Constitution, the litigation privilege, legal justification, fair use, and/or free-speech rights.

### EIGHTH DEFENSE
### (EXTRATERRITORIALITY)

123.    Oxylabs asserts that Luminati's claims are barred, in whole or in part, by extraterritoriality principles. For example, the Patents-in-Suit do not apply outside of the United States and, further, all steps of the methods of the asserted claims must be performed entirely in the

United States. *See, e.g., NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005). Luminati has not shown that all steps of the methods of the asserted claims are performed in the United States. Additionally, with respect to Luminati's non-patent claims, Luminati has not shown that these claims have the requisite nexus to the United States and/or the State of Texas as, for example, the activities that Luminati appears to complain of occurred overseas. *See, e.g., WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018); *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016); *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 443 (Tex. 2007).

### JURY DEMAND (ANSWER)

124. Oxylabs demands, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury on all issues so triable.

### OXYLABS' PRAYER FOR RELIEF (ANSWER)

125. Oxylabs requests that the Court enter a judgment in Oxylabs' favor as follows:

A. Dismissing Luminati's Complaint in its entirety, with prejudice;

B. Declaring that Luminati is not entitled to any relief, whether in law or equity or otherwise, from its suit against Oxylabs;

C. Declaring that Oxylabs does not infringe and has not infringed the Patents-in-Suit;

D. Declaring that the claims of the Patents-in-Suit are invalid;

E. Declaring that the claims of the '614 patent are unenforceable;

F. Permanently enjoining Luminati, its successors and assigns, and anyone acting in concert therewith or on its behalf, from attempting to enforce the Patents-in-Suit against Oxylabs or any parents, affiliates, or subsidiaries of

        Oxylabs or any of their respective officers, agents, employees, successors, and assigns;

G.      Declaring that this is an exceptional case in Oxylabs' favor pursuant to 35 U.S.C. § 285;

H.      Awarding Oxylabs its costs, expenses, and reasonable attorney's fees, whether pursuant to 35 U.S.C. § 285, 15 U.S.C. § 1117(a), or otherwise; and

I.      Entering an Order that Oxylabs shall have and recover from Luminati any and all such other and further relief, general and special, at law or in equity, to which Oxylabs may be justly entitled.

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

126.    Pursuant to Federal Rules of Civil Procedure 13, 14 and 20, Oxylabs files these Third Amended Counterclaims against Luminati and this Third Amended Complaint against Third-Party Defendants EMK Capital LLP, EMK Capital Partners LP, and EMK Capital Partners GP Co-Investment LP (collectively, "EMK"); and Hola VPN Ltd. and Hola Networks Ltd. (collectively, "Hola") (Luminati, EMK, and Hola, collectively, "Defendants"). Oxylabs alleges, based on personal knowledge with respect to its own actions and upon information and belief with respect to all others' actions, as follows:

### SUMMARY OF COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

127.    Luminati, its majority owner EMK, and Hola have violated—and engaged in a conspiracy to violate—the antitrust laws of the United States, including by their monopolization and attempted monopolization of the residential proxy marketplace. Luminati, at EMK's control and direction, has also filed sham patent-infringement lawsuits against Oxylabs and other com-

petitors in violation of the antitrust laws. Oxylabs files this suit against Defendants to hold them liable for their antitrust violations and seek redress for the injuries Oxylabs has suffered.

<div align="center">

**PARTIES**

</div>

128.    Teso LT, UAB is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

129.    Oxysales, UAB is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

130.    Metacluster LT, UAB is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

131.    Luminati is an entity organized and existing under the laws of Israel with its principal place of business at 3 Hamahshev Street, Netanya 42507, Israel.

132.    EMK is an entity organized and existing under the laws of the United Kingdom with its principal place of business at Lex House, 17 Connaught Place, London, W2 2ES, United Kingdom. EMK announced its acquisition of Luminati in August 2017. EMK's representatives sit on and control Luminati's Board of Directors. One of EMK's representatives is Luminati's Chairman.

133.    Hola is an entity organized and existing under the laws of Israel with its principal place of business at 3 Hamahshev Street, Netanya 42507, Israel. Hola and Luminati ███████

████████████████████████████████████████

████████████████████████████████████████

<div align="center">

18

</div>

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████. Messrs. Vilenski and Shrib-

man are the named inventors of the patents asserted by Luminati against Oxylabs.

<u>**JURISDICTION AND VENUE**</u>

134.    The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1337 because one or more of Oxylabs' causes of action arise under the laws of the

United States, including 15 U.S.C. § 15(a). The Court has supplemental jurisdiction over Ox-

ylabs' state-law claim under 28 U.S.C. § 1367(a). The Court may grant declaratory and other re-

lief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

135.    The Court has personal jurisdiction over Defendants. Defendants, via themselves

and/or their subsidiaries or affiliates, regularly conduct and transact business throughout the

United States, in the State of Texas, and within the Eastern District of Texas. Defendants also

directed their conduct-at-issue with this lawsuit to Oxylabs, customers and potential customers

within the State of Texas, including the Eastern District of Texas. Additionally, Luminati filed

(and EMK caused Luminati to file) meritless patent-infringement claims against Oxylabs in the

Eastern District of Texas. Luminati and Hola also maintain "exit nodes," which are used with the

relevant proxy products, within the State of Texas, including the Eastern District of Texas.

136.    Venue is proper in the Eastern District of Texas, pursuant to 28 U.S.C. § 1391(b),

because a substantial part of the events or omissions giving rise to this lawsuit occurred in the

Eastern District of Texas and/or because Defendants are subject to personal jurisdiction in the

Eastern District of Texas. Venue is also proper in the Eastern District of Texas pursuant to 28

U.S.C. § 1391(c)(3), as Defendants are not residents of the United States and, accordingly, they

may be sued in any judicial district. Venue is further proper in the Eastern District of Texas pursuant to 15 U.S.C. § 22, because Defendants may be found or transact business in the Eastern District of Texas.

<u>FACTS</u>

137.    Oxylabs is a leading provider of proxy services. Oxylabs' products include, but are not limited to, residential proxies, data center proxies, and its Real-Time Crawler product. *See generally* https://oxylabs.io/.

138.    Luminati is one of Oxylabs' competitors. Luminati also offers residential proxies and data center proxies, as well as an "Unblocker" product (which Luminati describes as "automated unblocking software to reach your target sites"). *See generally* https://luminati.io/.

139.    Oxylabs entered the residential proxy market after Luminati and became Luminati's largest competitor.

140.    After Oxylabs entered the residential proxy market,  *See Luminati Networks Ltd. v. UAB Tesonet*, Case No. 2:18-cv-00299-JRG (E.D. Tex.) (previously defined as the "First Lawsuit").[1]

141.    According to EMK, its governance role is an essential component in its portfolio companies' value creation. EMK invests in companies over periods of three to seven years

---

[1]    The First Lawsuit did not include Oxysales, UAB as a defendant.



[redacted]

142. [redacted]

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

[2] Luminati has now filed three separate lawsuits asserting seven patents against Oxylabs entities. *See Luminati Networks Ltd. v. UAB Tesonet*, Case 2:18-cv-00299-JRG (E.D. Tex.); *Luminati Networks Ltd v. Teso LT, UAB et al.*, Case 2:19-cv-00395-JRG (E.D. Tex.); *Luminati Networks Ltd. v. Code 200, UAB et al.*, Case 2:19-cv-00396-JRG (E.D. Tex.).

143.   To date, Luminati has filed multiple lawsuits against Oxylabs. ███████████

144.   In the First Lawsuit, the parties ████████████████████

145.   Luminati has also asserted non-patent claims in the instant lawsuit. Luminati pre-viously asserted these non-patent claims in the First Lawsuit. ████████████████████

146.   ████████████████████████████



147.    Throughout the last several years, ███████████████████

148.    ███████████████████████

149.    ███████████████████████

150.    ███████████████████████

151.    At all times relevant hereto, a market has existed for residential proxies, at least in the United States (the "relevant market").

152.    There are substantial barriers to entry with respect to the relevant market. For example, to successfully enter the residential proxy market, a company needs a critical mass of res-

idential proxies. To obtain such a critical mass of residential proxies, it would cost a would-be entrant millions of dollars and likely take several years of effort.

153.   Luminati and Oxylabs compete head-to-head in the relevant market.

154.   The commercial activities of Luminati and Oxylabs in the relevant market are carried out as part of trade or commerce among the several States and/or with foreign nations. Luminati has sold proxies in interstate commerce and has engaged in the conduct described herein through interstate channels. Any relevant foreign conduct of Defendants was meant to produce and did in fact produce direct, substantial, and reasonably foreseeable effects in the United States.

155.   Luminati is generally thought to be the largest company in the proxy marketplace. For example, according to Luminati, it is "[t]he world's largest residential network offering 72+ million real-peer IPs in every location across the globe"—"[i]n every country" and "[i]n every city." *See* https://luminati.io/.

156.   A Frost & Sullivan Report concludes that Luminati has a 53.1% worldwide market share in the highly concentrated proxy marketplace. *See* Ex. A at 48. According to Frost & Sullivan, Oxylabs has a 13.3% market share. *Id.* On information and belief, Luminati has a substantially greater market share of the United States residential proxy market, as the Frost & Sullivan Report was neither confined to residential proxies nor the United States and most of the key players listed in the Frost & Sullivan Report have focused their sales activities overseas. Additionally, Luminati recently announced that, to resolve Luminati's lawsuits against it, the third largest player in the proxy market (BI Science a/k/a GeoSurf) is exiting the business and will

transition its customers to Luminati.[3] Such an exit and transition will give Luminati even more market power.

157.    In the First Lawsuit, 

158.    Luminati has achieved its dominant position not through superior products, innovation, or business acumen, but as a result of having restrained trade, and monopolized (or attempted to monopolize) the relevant market in interstate and/or foreign commerce in violation of, at a minimum, 15 U.S.C. §§ 1 and/or 2.

159.    Luminati has done so, in combination with EMK and Hola, by engaging in the conduct-at-issue with specific intent to monopolize. Luminati has thereby achieved monopoly power in the relevant market or, at a minimum, reached a dangerous probability of achieving such monopoly power.

160.    

---

[3] *See* https://www.businesswire.com/news/home/20200513005387/en/BI-Science-GeoSurf-Luminati-Announce-Resolution-Patent.



161.

162.    In an effort to maintain and strengthen its monopoly power,

---

⁴    *See, e.g.*, *Illuminating Hola VPN and the Dangers It Poses*, available at https://docu-ments.trendmicro.com/assets/white_papers/wp-illuminating-holaVPN-and-the-danger-it-poses.p df; *Popular Chrome VPN Extension Hola At Center Of Massive Botnet Attack*, available at https://www.extremetech.com/computing/206858-popular-chrome-vpn-extension-hola-at-center-of-massive-botnet-attack; *Your Tool to Access Netflix Content Abroad Is Hijacking Your Internet Connection*, available at https://www.vice.com/en_us/article/pga9yk/your-tool-to-access-netflix-content-abroad-is-hijacking-your-internet-connection; *Adios, Hola! Or: Why You Should Imme-diately Uninstall Hola*, available at http://adios-hola.org/. Oxylabs incorporates these articles by reference as if fully set forth herein.



163.    Luminati has sought to use its patents to exclude lawful competition anywhere in the relevant market and worldwide, beyond the scope of any legal protection to which Luminati is legally entitled, and thereby to secure for itself a monopoly in at least the relevant market.

164.

Luminati has further asserted at least one patent (the '614 patent) against Oxylabs that Luminati procured by inequitable conduct.

165.    Luminati has also asserted

166.    In the First Lawsuit, Luminati made several arguments, including with respect to the Supreme Court's *Alice* decision, the doctrine of equivalents, and 35 U.S.C. § 271(g), that

---

[5]    In the First Lawsuit, the Court ultimately vacated the indefiniteness finding pursuant to an unopposed motion (*see* 299 Case, ECF No. 331), but Oxylabs understands that the indefiniteness finding remains in force in the *BI Science* litigation. *See Luminati Networks Ltd. v. BI Science, Inc.*, Case No. 2:18-cv-00483-JRG (E.D. Tex.), ECF No. 130 at 20.

were foreclosed by law, including binding Supreme Court and/or Federal Circuit precedent. ███

███████████████████████████████████████████████

167.     Oxylabs has placed Luminati on notice, at least with letters dated September 10, 2019 and March 23, 2020, that Luminati's lawsuits against Oxylabs are meritless. In the First Lawsuit, Oxylabs also served detailed expert reports showing that the Luminati patents-at-issue were not infringed and invalid. *See* Ex. B (Oxylabs' non-infringement expert report); Ex. C (Oxylabs' invalidity expert report). Oxylabs also filed a detailed motion for summary judgment of non-infringement, explaining the bases why Oxylabs did not infringe Luminati's patents-at-issue. *See* First Lawsuit, ECF No. 215 (incorporated by reference as if fully set forth herein). Oxylabs further filed an *Alice* motion demonstrating how the Patents-in-Suit were unpatentable for claiming ineligible subject matter. *See* First Lawsuit, ECF No. 151 (incorporated by reference as if fully set forth herein). And Oxylabs has filed an *Alice* motion in the instant lawsuit demonstrating how the Patents-in-Suit are also unpatentable for claiming ineligible subject matter. *See* ECF No. 20 (incorporated by reference as if fully set forth herein). Oxylabs has also served on Luminati in the instant lawsuit hundreds of pages of detailed invalidity contentions and eligibility contentions demonstrating how the Patents-in-Suit in this lawsuit are invalid. *See* Ex. D (invalidity contentions); Ex. E (eligibility contentions). Oxylabs has further notified Luminati that Oxylabs does not infringe the Patents-in-Suit. *See* Ex. F (non-infringement contentions).

168.     ████████████████████████████████████████████████

████████

169.     ████████████████████████████████████████████, but nevertheless persists with filing lawsuits against Oxylabs and other competitors.

170.     ████████████████████████████████████████████████

███████████████

171.    Luminati has publicized its legal actions in the press and public-relations communications with █████████████████████████████████████, including Oxylabs. ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

172.    █████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████

173.    The motivation for the conduct-at-issue is the desire to harm Oxylabs and to create a greater monopoly which will allow Luminati to increase prices beyond Luminati's already high prices. For example, Luminati has told marketplace participants that Luminati will "take Oxylabs out of business." █████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

174.    Another purpose for Luminati's litigations against Oxylabs is so that Luminati can advise customers or potential customers of the pending litigation, ████████████████

████████████████████████████████████████████████████

████████████████████████████████

175.   Luminati  has previously brought patent-infringement lawsuits ███████████████████████. For example, Luminati previously sued IP Ninja and BI Science and, to date, it appears as if both entities have (or will shortly) go out of the business as a result of the lawsuits. ███████████████ ████████████████████.

176.   Oxylabs has suffered substantial damages as a result of Defendants' monopolization and attempted monopolization. Such damages include, without limitation, damages directly incurred as a result of defending against litigation; lost profits resulting from having to compete lawfully against Defendants' unlawful methods of building their network as herein alleged; and damages to Oxylabs' goodwill and commercial reputation as a result of Luminati's other practices including ████████████ statements to the marketplace.

177.   Oxylabs has suffered additional harm as a result of Defendants' conduct that cannot be fully compensated by monetary damages and Oxylabs is accordingly entitled to injunctive relief.

178.   Oxylabs is entitled to treble damages, costs, and attorney's fees pursuant to 15 U.S.C. § 15(a).

179.   

*See* Ex. G. Thereafter, ███████████████

*See, e.g.*, Ex. H.

180.   ████████████████████████

███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ Oxylabs provided access to its service to Luminati.

181.    All of Luminati's conduct complained of herein was either directed or controlled by EMK.

182.    All conditions precedent have been performed or have occurred.

183.    Oxylabs specifically pleads the applicability of the discovery rule.

**COUNT I**
**(MONOPOLIZATION—15 U.S.C. § 2)**

184.    Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

185.    Luminati has monopoly power in the relevant market.

186.    Luminati has the power to control price or exclude competition.

187.    █████████████████████████████████████████████
█████████████████████████████████████████████

188.    █████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
███████████████████████████████

189.    The effects of Luminati's unlawful, anti-competitive conduct are extreme, and

have directly and proximately caused injury to competition in the relevant market and to Oxylabs. Based on the individual and combined effects of the acts described above and similar conduct and practices, Luminati has willfully and wrongfully maintained and extended its monopoly power in the relevant market by raising barriers to entry and foreclosing competition. Luminati's actions were taken for the purpose and effect of maintaining its monopoly and unreasonably restraining competition in the relevant market.

190.    Oxylabs and customers in the relevant market have been injured in their business and property by reason of Luminati's antitrust violations. Oxylabs' injury is the type of injury the antitrust laws were intended to prevent and flows from that which makes Luminati's acts unlawful.

191.    There are no legitimate business justifications for Luminati's anticompetitive practices and any purported legitimate business justifications are mere pretexts and could have been achieved in a less restrictive manner.

192.    Luminati's violations of law and the effects thereof are continuing and will continue unless appropriate injunctive relief is granted. Oxylabs has no adequate remedy at law.

193.    Luminati's practices (i) decreased the quality of products in the relevant market, (ii) increased Luminati's market power, (iii) unreasonably restrained entry into the relevant market, (iv) increased costs to consumers by preventing competitive entrants from reaching economies of scale, and/or (v) unreasonably restrained competition by channeling consumer choices to Luminati's products, thereby effectively excluding other competitors' access to the relevant market.

## COUNT II
### (ATTEMPTED MONOPOLIZATION—15 U.S.C. § 2)

194.    Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth

herein.

195.    Luminati has engaged in predatory or anticompetitive conduct.

196.    Luminati engaged in such conduct with the specific intent to monopolize.

197.    A dangerous probability of achieving monopoly power exists.

198.    ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████

199.    ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████

200.    Oxylabs and customers in the relevant market have been injured in their business and property by reason of Luminati's antitrust violations. Oxylabs' injury is the type of injury the antitrust laws were designed to prevent and flows from that which makes Luminati's acts unlawful.

201. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████

202.    Luminati's violations of law and the effects thereof are continuing and will con-

tinue unless appropriate injunctive relief is granted. Oxylabs has no adequate remedy at law.

203.    Luminati's practices (i) decreased quality of products in the relevant market, (ii)

increased Luminati's market power, (iii) unreasonably restrained entry into the relevant market,

(iv) increased costs to consumers by preventing competitive entrants from reaching economies of

scale, and/or (v) unreasonably restrained competition by channeling consumer choices to Lumi-

nati's products, thereby effectively excluding other competitors' access to the relevant market.

## COUNT III
## (COMBINATION OR CONSPIRACY IN RESTRAINT OF TRADE—15 U.S.C. § 1)

204.    Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth

herein.

205.    Defendants entered into one or more contracts in restraint of trade or commerce

among the several States, or with foreign nations.

206.    Defendants combined or conspired with one another.

207.    Defendants have unreasonably restrained trade.

208.    Defendants' unreasonable restraint of trade has had an effect on interstate com-

merce.

## COUNT IV
## (CONSPIRACY TO MONOPOLIZE AND/OR ATTEMPT TO MONOPOLIZE—15 U.S.C. § 2)

209.    Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth

herein.

210.    Defendants were members of a combination of two or more persons.

211.    Defendants conspired to monopolize.

212.    Defendants had the specific intent to monopolize.

213.    One of the members of the conspiracy committed an overt act in furtherance of the conspiracy.

214.    The conspiracy had an effect upon a substantial amount of interstate commerce.

215.    Oxylabs suffered injury as a proximate result of the wrongful act.

## COUNT V
### (BREACH OF CONTRACT)

216.    Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

217.    One or more valid and enforceable contracts exists between Oxylabs and Luminati.

218.    Oxylabs is a proper party to bring suit for breach of contract and this Court is a proper venue to resolve Oxylabs' breach-of-contract claim.

219.    Oxylabs performed, tendered performance of, or was excused from performing its contractual obligations.

220.    Luminati breached the contract(s).

221.    Luminati's breach caused Oxylabs injury.

## COUNT VI
### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF PATENTS-IN-SUIT)

222.    Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

223.    This is an action for declaratory judgment of non-infringement of any and all valid and enforceable claims of the Patents-in-Suit.

224.    Luminati has alleged in its Complaint that Oxylabs has infringed one or more

claims of the Patents-in-Suit.

225.    Oxylabs has not in any manner infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the Patents-in-Suit, either directly or indirectly, or literally or under the doctrine of equivalents, and is not liable for infringement thereof. Oxylabs incorporates by reference as if fully set forth herein Oxylabs' response to Luminati's Interrogatory No. 13 served on July 24, 2020, which provides details concerning why Oxylabs does not infringe the Patents-in-Suit. *See* Ex. F.

226.    Oxylabs requests a judicial determination and declaration of the respective rights and duties of the parties. Such a determination and declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties in this regard.

227.    This is an exceptional case entitling Oxylabs to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNT VII
### (DECLARATORY JUDGMENT OF INVALIDITY OF PATENTS-IN-SUIT)

228.    Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

229.    This is an action for declaratory judgment of invalidity of any and all claims of the Patents-in-Suit.

230.    The Patents-in-Suit are invalid and/or void for failure to meet the conditions for patentability specified by 35 U.S.C. § 101 *et seq.*, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112 and/or 282 and/or the Rules and Regulations of the United States Patent & Trademark Office. Oxylabs incorporates by reference as if fully set forth herein the invalidity contentions and eligibility contentions served on Luminati in this lawsuit, which provide details as to why the Patents-in-Suit are invalid. *See* Ex. D; Ex. E.

231.    Oxylabs requests a judicial determination and declaration of the respective rights and duties of the parties. Such a determination and declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties in this regard.

232.    This is an exceptional case entitling Oxylabs to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### COUNT VIII
### (DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '614 PATENT)

233.    Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

234.    This is an action for declaratory judgment of unenforceability of any and all claims of the '614 patent.

235.    As shown above, the '614 patent is unenforceable as a result of the inequitable conduct of Luminati due to its omission of information material to patentability during prosecution with the specific intent to mislead or deceive the United States Patent & Trademark Office.

236.    Oxylabs requests a judicial determination and declaration of the respective rights and duties of the parties. Such a determination and declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties in this regard.

237.    This is an exceptional case entitling Oxylabs to an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### JURY DEMAND (COUNTERCLAIMS AND THIRD-PARTY COMPLAINT)

238.    Oxylabs demands, pursuant to Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

### PRAYER FOR RELIEF (COUNTERCLAIMS AND THIRD-PARTY COMPLAINT)

239.    Oxylabs requests that the Court:

A.    Dismiss Luminati's Complaint in its entirety, with prejudice;

B.    Declare that Luminati is not entitled to any relief, whether in law or equity or otherwise, from its suit against Oxylabs;

C.    Declare that Oxylabs does not infringe and has not infringed the Patents-in-Suit;

D.    Declare that the claims of the Patents-in-Suit are invalid;

E.    Declare that the claims of the '614 patent are unenforceable;

F.    Permanently enjoin Luminati, its successors and assigns, and anyone acting in concert therewith or on its behalf, from attempting to enforce the Patents-in-Suit against Oxylabs or any parents, affiliates, or subsidiaries of Oxylabs or any of their respective officers, agents, employees, successors, and assigns;

G.    Declare that this is an exceptional case in Oxylabs' favor pursuant to 35 U.S.C. § 285;

H.    Award Oxylabs its costs, expenses, and reasonable attorney's fees, whether pursuant to 35 U.S.C. § 285 or otherwise;

I.    Hold Defendants liable on one or more of Oxylabs' causes of action;

J.    Declare that Defendants have violated the antitrust laws;

K.    Declare that Luminati breached the parties' contract and may not, consistent with the contract, disclose details concerning the parties' settlement discussions or communications relating to settlement;

L.    Grant an injunction preventing Defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns,

and those in active concert or participation with any of them, from continuing to violate Oxylabs' rights and continuing their antitrust violations;

M.    Award Oxylabs actual, compensatory, general, special, lost profits, lost revenues, exemplary, treble, and/or punitive damages;

N.    Order Defendants to disgorge any monies, gains, profits, and/or advantages that are attributable to the acts complained of herein;

O.    Award Oxylabs its costs, attorney's fees, and expenses;

P.    Award pre-judgment and post-judgment interest on the damages awarded at the highest rate allowed by law; and

Q.    Grant Oxylabs such other and further relief, general and special, at law or in equity, as the Court deems just and equitable.

Dated: July 29, 2020                              Respectfully submitted,

MICHAEL C. SMITH
  Texas State Bar No. 18650410
  michaelsmith@siebman.com
**SIEBMAN, FORREST,**
**BURG & SMITH LLP**
113 East Austin Street
Marshall, Texas 75671
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CRAIG TOLLIVER
  Texas State Bar No. 24028049
  ctolliver@ccrglaw.com
GEORGE T. "JORDE" SCOTT
  Texas State Bar No. 24061276
  jscott@ccrglaw.com
MITCHELL SIBLEY
  Texas State Bar No. 24073097
  msibley@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

JUSTINAS JARUSEVIČIUS
  New York State Bar No. 5673736
  justinas.jarusevicius@motieka.com
**MOTIEKA & AUDZEVIČIUS**
Gynėjų street 4
Vilnius, Lithuania
Telephone: +37052000777

*Counsel for Teso LT, UAB, Oxysales, UAB,*
*and Metacluster LT, UAB*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on July 29, 2020. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). The foregoing document has also been served on Luminati's counsel, Sunny Cherian, Esq., by e-mail on July 29, 2020.

STEVEN CALLAHAN

## CERTIFICATE OF AUTHORIZATION TO SEAL

The undersigned certifies that the foregoing document is filed under seal pursuant to the Court's Protective Order.

STEVEN CALLAHAN

41