# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| LUMINATI NETWORKS LTD. | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:19-CV-00395-JRG |
| TESO LT, UAB; OXYSALES, UAB; | § | |
| METACLUSTER LT, UAB; | § | |
| | § | |
| Defendants. | § | |

## LUMINATI'S OPENING CLAIM CONSTRUCTION BRIEF
### (LOCAL PATENT RULE 4-5(a))

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................. 1

    A.  The Patents-in-Suit ........................................................................... 1

    B.  The Asserted Claims ......................................................................... 4

III.    LEGAL STANDARDS FOR CLAIM CONSTRUCTION ...................... 7

IV.     LEVEL OF ONE OR ORDINARY SKILL IN THE ART ...................... 9

V.      AGREED UPON TERMS FOR CONSTRUCTION .............................. 9

VI.     DISPUTED TERMS FOR CLAIM CONSTRUCTION ....................... 10

    A.  Client Device (First Family) ........................................................ 10

    B.  First Server (First Family) ............................................................ 13

    C.  Second Server (First Family) ....................................................... 13

    D.  Client Device (Second Family) .................................................... 15

    E.  First Server (Second Family) ....................................................... 18

VII.    THE "INDEFINITENESS" ARGUMENTS MADE BY DEFENDANTS DO NOT
        REALLY RELATE TO INDEFINITENESS AND ARE NOT CLAIM
        CONSTRUCTION DISPUTES .............................................................. 19

    A.  Not Indefinite: "The First IP Address" / "The First Client IP Address" .............. 20

    B.  Not Indefinite: "Determining, By The First Client Device, That The Received First
        Content, Is Valid" / "The Determining Is Based On The Received HTTP Header
        According To, Or Based On IETF RFC 2616" ...................................... 22

    C.  Not Indefinite: "Periodically Communicating" ...................................... 23

    D.  Not Indefinite: "In Response To The Receiving Of The First Content Identifier" 24

    E.  The Sending Of The Hypertext Transfer Protocol (HTTP) Request / Receiving
        And Storing Of The First Content / The Sending Of The Part Of, Or The Whole
        Of, The Stored First Content ..................................................................... 25

    F.  The Steps Are Sequentially Executed ...................................................... 27

VIII.   CONCLUSION ....................................................................................... 29

## **TABLE OF AUTHORITIES**

*Cases*

*Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367 (Fed. Cir. 2004) ...................... 20

*BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360 (Fed. Cir. 2017).......................... 23, 24, 27

*Danco, Inc. v. Fluidmaster, Inc.*, No. 5:16-cv-73-JRG-CMC, 2017 U.S. Dist. LEXIS 155936 (E.D. Tex. Sep. 22, 2017)...................................................................................................... 8

*Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) .............................. 19

*Energizer Holdings v. International Trade Com'n*, 435 F.3d 1366 (Fed. Cir. 2006)........... passim

*Gilead Scis. v. Mylan Inc.*, No. 1:14CV99, 2015 U.S. Dist. LEXIS 44558 (N.D.W. Va. Apr. 6, 2015).................................................................................................................................... 20

*Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00057-JRG-RSP, 2017 U.S. Dist. LEXIS 96097 (E.D. Tex. June 21, 2017) ............................................................... 8, 13, 14

*Markman v. Westview Instr., Inc.*, 517 U.S. 370 (1996)................................................................ 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014) ....................................... passim

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) ................ 7

*On-Line Tech. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133 (Fed. Cir. 2004) .............. 8

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .............................................................. 8

*Poly-America, L.P. v. API Indus., Inc.,* 839 F. 3d 1131 (Fed. Cir. 2016).................................... 17

*Rheox, Inc. v. Entact, Inc.,* 276 F.3d 1319 (Fed. Cir. 2002) ........................................................ 17

*SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331 (Fed. Cir. 2005)........................... 23

*Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448 (Fed. Cir. 1985)..................................... 17

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.* 279 F.3d 1357 (Fed. Cir. 2002) ... 20

*Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008) ................................... 19

*Teva Pharmaceuticals USA v. Sandoz, Inc.*, 135 S.Ct. 831 (2015) ............................................... 7

*Traxxas LP v. Hobby Prods. Int'l*, No. 2:14-CV-945-JRG-RSP, 2015 U.S. Dist. LEXIS 114148
(E.D. Tex. Aug. 27, 2015) ............................................................................... 20, 23

*VirnetX, Inc. v. Cisco Sys., Inc*., 767 F.3d 1308 (Fed Cir. 2014) ..................................... 8

*Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576 (Fed. Cir. 1996) ........................... 8

**Statutes**

35 U.S.C. § 282 ............................................................................................................ 19

## I.      INTRODUCTION

Derry Shribman and Ofer Vilenski, founders of Plaintiff Luminati Networks Ltd. ("Luminati"), invented new methods for fetching content from a target server over the Internet using intermediary third-party client devices, such as an individual's cell phone, in order to make the request from the third-party instead of the original requestor. These inventions are claimed U.S. Patent Nos. 10,257,319 (the "'319 Patent", Ex. A), 10,484,510 (the "'510 Patent," Ex. B) and 10,469,614 (the "'614 Patent," Ex. C) (collectively the "Patents-in-Suit" or "asserted patents"). Using this novel service permits a user to access content from a server that might otherwise block the request or return a fake response. For example, a retailer can use this service to request pricing data from a competitor by appearing to that competitor as a potential customer.

The parties in this case agree that many of the claim terms should be afforded their plain and ordinary meaning. In some cases, however, additional clarification is important because under the rubric of "plain meaning" Defendants in fact deviate from the plain meaning of the claim terms as used in the patents in light of the clear prosecution history by interpreting "servers" and "client devices" as interchangeable. As used in this patent claims, they are not. Defendants also assert indefiniteness as to a variety of claim terms, but such arguments are baseless as these claims were properly issued by the Patent Office and entitled to the presumption of validity.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Patents-in-Suit

The Patents-in-Suit are directed to architecture and methods for fetching content over the Internet. The '319 and '510 Patents, filed on April 20, 2018 and February 17, 2019 respectively, are in the same family ("First Family") with a shared specification claiming priority to the same provisional application filed on October 8, 2009. The patents in the First Family are titled: "System

Providing Faster and More Efficient Data Communication." The '614 Patent, filed on December 10, 2018, shares the same inventors, but is in a separate family ("Second Family") with a separate specification claiming priority to a provisional application filed on August 28, 2013. The '614 Patent is titled: "System and Method for Improving Internet Communication by Using Intermediate Nodes." The asserted patents in both families claim methods utilizing a novel **server** – **client device** – **web server** architecture, whereby a **client device** serves as a proxy between the **server** and **web server**.

The '319 and '510 Patents create a "system designed for increasing network communication speed for users…" Ex. A at Abstract.[1] The '319 and '510 Patents discuss that previous "proxy servers" fail to provide a "comprehensive solution for Internet surfing," in part because they "would need to be deployed at every point around the world where the Internet is being consumed." *Id*. at 2:24-27; *see also* 2:8-23. Instead, to create a new type of consumer-based network that never existed before, these patents employ "**client devices**" that operate as proxies. *Id*. at 3:13-55. The client devices are modified to function as a client, peer or agent and serve as a proxy in the system, permitting "any number of agents and peers." *Id*. at 4:43-64.

Similarly, the '614 Patent creates a client device network of "**tunnel devices**" that are **client devices** within a **server** – **client device** – **web server** architecture. Ex. C at 1:19-23.

> Each of devices herein may consist of, include, be part of, or be based on, a part of, or the whole of, the computer 11 or the system 100 shown in FIG. 1. Each of the servers herein may consist of, may include, or may be based on, a part or a whole of the functionalities or structure (such as software) of any server described in the '604 Patent, such as the web server, the proxy server, or the acceleration server. Each of the clients or devices herein may consist of, may include, or may be based on, a part or a whole of the functionalities or structure (such as software) of any client or device described in the '604 Patent, such as the peer, client, or agent

---

[1] For simplicity, all references to the shared specification of the '319 and '510 Patents will be made to the specification of the '319 Patent at Ex. A, but will be understood to include the corresponding citation from the '510 Patent at Ex. B.

devices.

In one example, an accessing to a data server is improved by using an intermediate device referred to as 'tunnel' device, that is executing a 'tunnel' flowchart. FIG. 5 shows a system 30 including two client devices, a client device #1 31a and a client device #2 31b, that may access the data 20 servers *22a* and *22b* using one or more of a tunnel device #1 33a, a tunnel device #2 33b, and a tunnel device #3 33c, under the management and control of an acceleration server 32. These network elements communicates with each other using the Internet 113.

Ex. C at 83:4-15.



FIG. 5                                                FIG. 11

The '614 Patent further improves on the above network by having the proxy client devices **dynamically shift between two states** based on a criteria. Specifically, the client (tunnel) device is available as a proxy in the first state (for example, when there is sufficiently available bandwidth) but unavailable in the second state (for example, when there is not sufficiently available bandwidth). Criteria-based dynamic switching improves the performance of the system by maintaining a new, dynamic network made exclusively of available client devices that can meet a given performance criteria. Ex. C at 124:3-13.

A problem in the art was the fact that certain websites with public information nevertheless create technological roadblocks to obtaining that information from certain requesting devices. For example, it is a routine practice of companies to obstruct their competitors from accessing the

company's otherwise publicly available pricing information. To overcome these artificial hinderances, the proxy service of the claims sends requests through one or more of a large group of proxy client devices, such as individual cell phone devices. As the proxy devices belong to real people who otherwise send such requests to target web servers as customers, the target will allow the queries and not artificially block them.

### B.   The Asserted Claims

In the present action, Luminati asserts infringement of independent claim 1 and dependent claims 2, 14, 15, 17, 18, 21, 22, 24, 25, 26, and 27 of the '319 Patent, independent claim 1 and dependent claims 2, 8, 9, 10, 11, 13, 15, 16, 18, 19, 20, 22, and 23 of the '510 Patent, and independent claim 1 and dependent claims 2, 4, 5, 6, 7, 9, 10, 11, 12, 15, 16, 17, 18, 19, 20, 22, 23, 25, 26, 28 and 29 of the '614 Patent.

Although each of the Asserted Claims involve methods performed within a **server** – **client device** – **web server** architecture, the claim terms differ int hat the "first" **server** in the '319 and '510 Patents is referred to as the "second" **server** in the '614 Patent. Fig. 3 is annotated below to illustrate the claimed steps [A], [B], [C], [D], and/or [E] performed by the **client device** in conjunction with the **server** and **web server**.

Regarding the First Family of patents, representative independent claim 1 of the '319 Patent claims as follows:



FIG. 3

1. A method for use with a first **client device**, for use with a **first server** that comprises a web server that is a Hypertext Transfer Protocol (HTTP) server that

responds to HTTP requests, the first server stores a first content identified by a first content identifier, and for use with a **second server**, the method by the first **client device** comprising:

    [B] receiving, from the **second server**, the first content identifier;

    [C] sending, to the **first server** over the Internet, a Hypertext Transfer Protocol (HTTP) request that comprises the first content identifier;

    [D] receiving, the first content from the **first server** over the Internet in response to the sending of the first content identifier; and

    [E] sending, the first content by the first client device to the **second server**, in response to the receiving of the first content identifier.

Representative independent claim 1 of the '510 Patent claims as follows:

1. A method for use with a **web server** that responds to Hypertext Transfer Protocol (HTTP) requests and stores a first content identified by a first identifier, the method by a first **client device** comprising:

    [A] establishing a Transmission Control Protocol (TCP) connection with a **second server**;

    [C] sending, to the **web server** over an Internet, the first content identifier;

    [D] receiving, the first content from the **web server** over the Internet in response to the sending of the first content identifier; and

    [E] sending the received first content, to the **second server** over the established TCP connection, [B] in response to the receiving of the first content identifier.

Dependent claim 2 of the '319 Patent adds to claim 1 the element of "wherein the first client device is identified by a Media Access Control (MAC) address or a hostname, and wherein the method further 35 comprising sending, by the first client device, during, as part of, or in response to, a start-up of the first client device, a first message to the second server, and wherein the first messages comprises the first IP address, the MAC address, or the hostname," while dependent claim 2 of the '510 Patent adds the identical element to claim 1, except that the underlined term is "the first client IP address." Dependent claims 14 and 10 of the '319 and '510 Patents respectively add to claim 1 "further comprising determining, by the first client device, that the received first content, is valid." Dependent claims 15 and 11 of the '319 and '510 Patents respectively add to claim 14 and 10 respectively "wherein the determining is based on the received HTTP header according to, or based on, IETF RFC 2616." Dependent claims 17 and 8 of the '319

and '510 Patents respectively add to claim 1 "further comprising <u>periodically communicating</u> between the second server and the first client device."

Dependent claim 13 of the'510 Patent adds to claim 1, the element of "for use with a software application that includes computer instructions that, when executed by a computer processor, cause the processor to perform <u>the sending of the Hypertext Transfer Protocol (HTTP) request</u>, the <u>receiving and storing of the first content</u>, the receiving of the first content identifier, and <u>the sending of the part of, or the whole of, the stored first content</u>, the method is further preceded by: downloading, by the first client device from the Internet, the software application; and installing, by the first client device, the downloaded software application."

Regarding the Second Family, representative independent claim 1 of the '614 Patent claims as follows:

> 1. A method for use with a resource associated with a criterion in a **client device** that communicates with a **first server** over the Internet, the **client device** is identified in the Internet using a first identifier and is associated with first and second state according to a utilization of the resource, the method comprising:
>
> [A] initiating, by the **client device**, communication with the **first server** over the Internet in response to connecting to the Internet, the communication comprises sending, by the **client device**, the first identifier to the **first server** over the Internet;
>
> when connected to the Internet, periodically or continuously determining whether the resource utilization satisfies the criterion;
>
> responsive to the determining that the utilization of the resource satisfies the criterion, shifting to the first state or staying in the first state;
>
> responsive to the determining that the utilization of the resource does not satisfy the criterion, shifting to the second state or staying in the second state;
>
> responsive to being in the first state, receiving, by the **client device**, a request from the **first server**; and
>
> performing a task, by the **client device**, in response to the receiving of the request from the **first server**,
>
> wherein the method is further configured for fetching over the Internet a first content identified by a first content identifier from a **web server** that is distinct from the **first server**, and the task comprising:
>
> [B] receiving, by the **client device**, the first content identifier from the **first server**;
>
> [C] sending, by the **client device**, the first content identifier to the **web**

**server**;

[D] receiving, by the <u>**client device**</u>, the first content from the **web server** in response to the sending of the first content identifier; and

[E] sending, by the <u>**client device**</u>, the received first content to the <u>**first server**</u>.

Dependent claim 7 adds to claim 1 the element of "wherein <u>the steps are sequentially executed</u>." The below Fig. 13 of the '614 Patent has been modified to illustrate the above steps identified as [A] through [E], each of which is performed by the "**client device**":



**FIG. 13**

Ex. C at Fig. 13.

## III.   LEGAL STANDARDS FOR CLAIM CONSTRUCTION

The proper construction of any disputed terms within a patent claim is exclusively within the province of the court. *Markman v. Westview Instr., Inc*., 517 U.S. 370, 372 (1996). Although the ultimate issue of claim construction is a question of law, claim construction may contain evidentiary underpinnings; thereby involving questions of fact. *Teva Pharmaceuticals USA v. Sandoz, Inc.*, 135 S.Ct. 831, 838 (2015).

Claim terms that form key disputes between the parties require construction. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1360 (Fed. Cir. 2008). Also, courts should provide clarifying constructions when they will help the jury understand the terms as used

in the claims (and may decline to adopt constructions that would instead cause juror confusion). *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00057-JRG-RSP, 2017 U.S. Dist. LEXIS 96097, at *33 (E.D. Tex. June 21, 2017). For claim construction courts will look to intrinsic evidence (claim language, specification, and prosecution history), and, if helpful and needed, extrinsic evidence (dictionaries, treatises, experts, and the like). *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[E]xtrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (*en banc*).

With respect to the written description, i.e., the patent specification, it is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Phillips*, 415 F.3d at 1317. "[W]e cannot look at the ordinary meaning of [a] term … in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history." *Id.* at 1313.

Extrinsic evidence "may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319. It "cannot be used to alter a claim construction dictated by a proper analysis of the intrinsic evidence." *On-Line Tech. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1139 (Fed. Cir. 2004); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1317 (Fed Cir. 2014). "Claim constructions that read out a preferred embodiment are rarely, if ever, correct." *Danco, Inc. v. Fluidmaster, Inc.*, No. 5:16-cv-73-JRG-CMC, 2017 U.S. Dist. LEXIS 155936, at *17 (E.D. Tex. Sep. 22, 2017) (citing *Vitronics*, 90 F.3d at 1583-84).

## IV.   LEVEL OF ONE OR ORDINARY SKILL IN THE ART

Consistent with Plaintiff's P.R. 4-3 disclosures, with regard to the Patents-in-Suit, "a person of ordinary skill in the art ("POSA") would be an individual who, as of October 8, 2009, the filing date of the provisional application, had a Master's Degree or higher in the field of Electrical Engineering, Computer Engineering, or Computer Science or as of that time had a Bachelor's Degree in the same fields and two or more years of experience in Internet communications." Rhyne Declaration at ¶ 4.

## V.   AGREED UPON TERMS FOR CONSTRUCTION

The parties jointly ask the Court to include these constructions in its order:

| Claim Term / Phrase | Agreed Proposed Construction |
|---|---|
| **Preamble**<br>'319 Pat. Claim 1; '510 Pat. Claim 1; '614 Pat. Claim 1 | Limiting |
| **"web server"**<br>'510 Pat. Claims 1 and 16; '614 Pat. Claims 1 and 29 | Plain and ordinary meaning |
| **"receiving, from the second server, the first content identifier"**<br>'319 Pat. Claim 1 | Plain and ordinary meaning |
| **"during, as part of, or in response to, a start up"**<br>'319 Pat. Claim 2 | Plain and ordinary meaning |
| **"during, as part of, or in response to, a start up or power-up"**<br>'510 Pat. Claim 2 | Plain and ordinary meaning |
| **"in response to connecting to the Internet"**<br>'614 Pat. Claim 1 | Plain and ordinary meaning |
| **"connected to the Internet"** | Plain and ordinary meaning |

| | |
|---|---|
| '614 Pat. Claim 1 | |
| **"performing a task, by the client device, in response to the receiving of the request from the first server"**<br><br>'614 Pat. Claim 1 | Plain and ordinary meaning |
| **"above or below the threshold"**<br><br>'614 Pat. Claim 17 | Plain and ordinary meaning |
| **"hardware component"**<br><br>'614 Pat. Claims 18, 19 and 20 | Plain and ordinary meaning |
| **"message that comprises a status"**<br><br>'614 Pat. Claim 25 and 26 | Plain and ordinary meaning |

## VI.    DISPUTED TERMS FOR CLAIM CONSTRUCTION

### A.    Client Device (First Family)

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "Client device"<br><br>('319 Pat., cl. 1, 2, 14, 17, 22, 24, and 25; '510 Pat., cl. 1, 2, 8, 10, 13, 15, 18, and 19) | "Consumer computer" | Plain and ordinary meaning |

The term "client device" is defined in the patent specification of the '319 and '510 Patents: "In the network 50, files are stored on computers of consumers, referred to herein as client devices 60." Ex. A at 2:44-46.[2] Dr. Rhyne has provided his opinion that as to the claims of the patents-in-suit "a POSA would understand the term 'client device' to refer to a consumer computer." Rhyne Declaration, Ex. D at ¶ 6.

---

[2] For simplicity, all references to the shared specification of the First Family will be made to the specification of the '319 Patent, but will be understood to include the corresponding citation from the '510 Patent.

Consistent with this definition, figure 3 illustrates a communication network 100 showing "client" 100, "peers" 112, 114, and 116, "agent" 122, "web server" 152, and "acceleration server" 162, which has a "storage device" 164. Ex. A at Fig. 3. The specification clearly distinguishes between (a) "communication devices" of the client/peer/agent, (b) a web server, and (c) an acceleration server. The specification further describes the communication devices as serving as a "client," "peer" or "agent" depending upon the requirements of the network.

> The present system and method provides for faster and more efficient data communication within a communication network. An example of such a communication network **100** is provided by the schematic diagram of FIG. **3**. <u>The network **100** of FIG. **3** contains multiple communication devices. Due to functionality provided by software stored within each communication device, which may be the same in each communication device, each communication device may serve as a client, peer, or agent, depending upon requirements of the network **100,** as is described in detail herein.</u> It should be noted that a detailed description of a communication device is provided with regard to the description of FIG. **4….**

> <u>The communication network **100** also contains a Web server **152.**</u> The Web server **152** is the server from which the client **102** is requesting information and may be for example, a typical HTTP server, such as those being used to deliver content on any of the many such servers on the Internet. It should be noted that the server **152** is not limited to being an HTTP server. In fact, if a different communication protocol is used within the communication network, the server may be a server capable of handling a different protocol….

> <u>The communication network **100** further contains an acceleration server **162**</u> having an acceleration server storage device **164.**

> *Id*. at 4:43-64 (emphasis added); *see also e.g. Id*. at 12:33-56.

Dr. Rhyne uses figure 3 to explain that "a POSA would also understand client 102 and agent 122 to both be client devices operating as a 'client' and an 'agent' respectively." Ex. D at ¶ 6. This is further supported by Figure 6[3], which shows the "communication device" as comprising a 'client module,' 'peer module' and 'agent module.' Ex. A at Fig. 6

---

[3] Figure 6 is a schematic diagram illustrating elements of the acceleration application of Figure 5, which is a schematic diagram illustrating the memory of Figure 4, which is a schematic diagram illustrating a communication device of the communication network of Figure 3. Ex. A at 4:6-13.



FIG. 3

FIG. 6

FIG. **6** is a schematic diagram further illustrating elements of the acceleration application **220,** as well as communication paths of the acceleration application **220.** The acceleration application **220** contains an acceleration system initializer module **222,** which is called when the acceleration application **220** is started. The acceleration system initializer module **222** is capable of initializing all elements of the communication device **200** The acceleration application **220** also contains three separate modules that run in parallel, namely, a client module **224,** a peer module **226,** and an agent module **228,** each of which comes into play according to the specific role that the communication device **200** is partaking in the communication network **100** at a given time. The role of each module is further described herein.

The client module **224** provides functionality required when the communication device **200** is requesting information from the Web server **152,** such as, for example, but not limited to, Web pages, data, video, or audio. The client module **224** causes the communication device **200** having the client module **224** therein to intercept the information request and pass the information request on to other elements of the communication network **100,** such as, servers, agents or peers. This process is further described in detail herein.

Ex. A at 9:13-36.

Defense expert Dr. Freedman provided a declaration with Defendants' P.R. 4-3 disclosures

that confirm a "client device" can be a client, peer or agent. However, Defendants then improperly

interpret this term broadly to be a "general purpose computer," which Defendants improperly

12

assert includes servers. *Id*. at ¶ 23. Such a construction is contrary to the clear language of the claims as further clarified in the specifications and prosecution histories, which distinguish the "client device" from servers, namely the "first server," "second server," and/or "web server" of the claims. This interpretation is also contrary to the specification as shown above, which distinguishes between communication devices with the functionality of a client/peer/agent and the servers of the network in these patents. *See also e.g.* Ex. A at Fig. 1.

Consistent with the claim language, the definition provided by the specification and the detailed discussion therein, a "client device" should be construed to mean "consumer computer."

**B.**    **First Server (First Family)**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "First server"<br><br>('319 Pat., cl. 1, 21) | "Web server" | Plain and ordinary meaning |

Based on the plain language of the preamble, which both sides agree is limiting, the first server must be a web server. Ex. A at 19:17 ("… a <u>first server</u> that comprises a web server…."). Furthermore, a POSA would understand the first server to be a web server. Ex. D at ¶ 7. Consistent with the claim language, the "first server" of the '319 Patent is the "**web server**" in the **server** – **client device** – **web server** architecture of the claims. (In contrast, the '614 Patent uses "first server" as the "**server**.") Construing the "**first server**" of the '319 Patent as a "**web server**," consistent with the other Asserted Patents, would be helpful to the jury by minimizing jury confusion. *Huawei*, 2017 U.S. Dist. LEXIS at *33.

**C.**    **Second Server (First Family)**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "Second server"<br><br>('391 Pat., cl. 1, 2, 17, 21, 24, and 25) | "A server that is not the client device or first server" | Plain and ordinary meaning |

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "Second server"<br><br>('510 Pat., cl. 1, 2, 8, 15, and 18) | "A server that is not the client device or web server" | Plain and ordinary meaning |

The '391 and '510 Patent claims clearly distinguish between "servers" and "client devices."

1. A method for use with a first **client device**, for use with a **first server** that comprises a web server that is a Hypertext Transfer Protocol (HTTP) server that responds to HTTP requests, the first server stores a first content identified by a first content identifier, and for use with a **second server**, the method by the first **client device** comprising….

Ex. A at 19:16-21.

1. A method for use with a **web server** that responds to Hypertext Transfer Protocol (HTTP) requests and stores a first content identified by a first content identifier, the method by a first **client device** comprising:
        establishing a Transmission Control Protocol (TCP) connection with a **second server**;

Ex. B at 19:18-23.

It would assist the jury to clarify that each server and the client device is its own device. *Huawei*, 2017 U.S. Dist. LEXIS at *33. As discussed above, a "client device" of the First Family is defined in the specification as a "consumer computer" distinct and separate from the servers of the Asserted Patents. Ex. A at 2:44-46. The claims clearly distinguish the "client device" from the servers. In addition, the specification also consistently distinguishes between the client devices and servers of the communication network. *See e.g. Id.* at 4:43-64. ("The network **100** of FIG. **3** contains multiple communication devices. Due to functionality provided by software stored within each communication device, which may be the same in each communication device, each communication device may serve as a client, peer, or agent, depending upon requirements of the network **100,** as is described in detail herein….The communication network **100** also contains a Web server **152….** The communication network **100** further contains an acceleration server **162** having an acceleration server storage device **164**."). In Dr. Rhyne's opinion, "a POSA would

understand the "**second server**" to be a server that is not the client device or the first server in the context of the '319 Patent, and a server that is not the client device or web server in the context of the '510 Patent." Ex. D at ¶ 7 (emphasis in original).

As discussed above with regard to "client device," Defendants request a construction of "plain and ordinary meaning" but assert that "client device" and "server" are interchangeable general use computers. For the same reasons provided above, this interpretation is contrary to the clear language of the patent claims and disclosure in the specification. "Second Server" should be construed as "[a] server that is not the client device or first server" or "[a] server that is not the client device or web server" for the '319 and '510 Patents respectively.

### D.    Client Device (Second Family)

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "Client device"<br><br>('614 Pat., cl. 1, 2, 4, 5, 6, 9, 15, 18, 19, 25, and 28) | "A device using a client dedicated operating system and operating in the role of a client by requesting services, functionalities, or resources from servers" | Plain and ordinary meaning |

As with the '319 and '510 Patents, the '614 Patent recites a method that employs the same **server** – **client device** – **web server** architecture with steps performed by the client device. Independent claim 1 claims:

> 1. A method for use with a resource associated with a criterion in a **<u>client device</u>** that communicates with a **<u>first server</u>** over the Internet, the **<u>client device</u>** is identified in the Internet using a first identifier and is associated with first and second state according to a utilization of the resource, the method comprising…
>
> wherein the method is further configured for fetching over the Internet a first content identified by a first content identifier from a **web server** that is distinct from the **<u>first server</u>**, and the task comprising….

In the case of *Luminati Networks Ltd. v UAB Tesonet et al.*, case no. 2:18-cv- 299 ("Tesonet Case"), the Court issued a claim construction order regarding another patent in the same family and sharing the same specification, finding "client device" to mean "a device that is operating in the role of a client by requesting services, functionalities, or resources from other devices." Ex. F, Tesonet Case at ECF 121 at 51. Here, Defendants request the Court to simply enter a construction of plain and ordinary meaning to leave them free to assert that client devices and servers are interchangeable general use computers. This position is clearly inconsistent with the claim language, specification and '614 patent prosecution history. Consequently, Luminati asks for a claim construction clarifying that client devices use a client dedicated operating system.

During prosecution of the '614 Patent, the inventor took clear positions overcoming prior art by distinguishing client devices from server devices. For example in the inventor's May 15, 2019 response to an office action ("Action"), the inventor asserted the following argument:

"<u>Client vs. server actions</u>.

The Action is based on the Sigurdsson reference to teach the limitations of "A method for use with a resource associated with a criterion **in a client device** that communicates with a server over the Internet, **the client device** is identified in the Internet using a first identifier and is associated with first and second state according to a utilization of the resource, the method comprising ... sending, **by the client device,** the first identifier to the server over the Internet; periodically or continuously determining, **by the client device,** whether the resource utilization satisfies the criterion; responsive to the determining that the utilization of the resource satisfies the criterion, shifting, **by the client device** to the first state or staying in the first state; responsive to the determining that the utilization of the resource does not satisfy the criterion, shifting, **by the client device** to the second state or staying in the second state; ...". (Emphasis added).

However, the Action equates the various recited steps to action performed by the server device 106, which <u>is clearly a server device and NOT a client device</u>. The Sigurdsson reference is silent regarding any client device associated with a resource or with a criterion as recited in the claim, the Sigurdsson reference is silent regarding any client device periodically or continuously determining a state based on the resource and any criterion, and is further silent regarding any shifting between states of any client device, as recited in the claim."

16

*See. e.g.* Ex. E at LUM-00148121-22. (emphasis in original).

The patentee distinguished between "client devices" and "servers" consistent with the language of the '614 patent claims, and the prosecution history disavows the broader claim scope that Defendants would apply under their version of "plain and ordinary meaning." *See Rheox, Inc. v. Entact, Inc.,* 276 F.3d 1319, 1325 (Fed. Cir. 2002) ("The prosecution history limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.") (quoting *Standard Oil Co. v. Am. Cyanamid Co*., 774 F.2d 448, 452 (Fed. Cir. 1985); *Poly-America, L.P. v. API Indus., Inc.,* 839 F. 3d 1131, 1136-37 (Fed. Cir. 2016) (arguments in prosecution history may disavow broader claim scope).

Luminati's proposed claim construction is also consistent with the '614 Patent specification, which discloses that "[a] client device (in server/client architecture) typically receives information resources, services, and applications from servers, and is using a client dedicated or oriented operating system." Ex. C at 7:6-9; *see also Id*. at 75:35-59 ("Each of the network elements herein, such as the first, second, and third servers, may store, operate, or use, a server operating system … Each of the network elements herein, such as the first, second, and third devices, may store, operate, or use, a client operating system…"); *see also, e.g.* Ex. C at Abstract; 4:40-8:59; 7:6-26; 52:48-51; 62:33-40; 75:35-59; 83:4-15; 95:4-61. Consistent with the patent prosecution history and this disclosure, in Dr. Rhyne's opinion, "a POSA would understand the term "client device" to refer to "a device using a client dedicated operating system and operating in the role of the client by requesting services, functionalities, or resources from servers." Ex. D at ¶ 31.

In contrast, Defendants assert that client devices are general purpose computers and improperly construe "client device" as including "servers."  This argument is inconsistent with the '614 Patent prosecution history and the express claim language involving a **server** – **client device** – **web server** architecture. Similar to the '319 and '510 Patents, the client device of the '614 Patent can serve as a client or tunnel depending upon the needs of the network. Ex. C at 52:48-51, 125:38-51. However, the patents distinguish between client devices and servers. *See e.g.* Ex. C at 83:4-14 ("Each of devices herein may consist of, include, be part of, or be based on, a part of, or the whole of, the computer 11 or the system 100 shown in FIG. 1. Each of the servers herein may consist of, may include, or may be based on, a part or a whole of the functionalities or structure (such as software) of any server described in the '604 Patent, such as the web server, the proxy server, or the acceleration server. Each of the clients or devices herein may consist of, may include, or may be based on, a part or a whole of the functionalities or structure (such as software) of any client or device described in the '614 Patent, such as the peer, client, or agent devices"); see also 75:35-59.

For the reasons addressed above, a POSA would understand that a client device is not interchangeable with a server. Ex. D at ¶ 31.

### E.      First Server (Second Family)

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "First server"<br><br>('614 Pat., cl. 15) | "A server that is not the client device or web server" | Plain and ordinary meaning |

For the same reasons discussed above with regard to "client device," the claims, specification and patent prosecution history of the '614 Patent distinguishes between "client devices" and "servers" in the claimed method utilizing the **server** – **client device** – **web server** architecture. In Dr. Rhyne's opinion, as used in this patent "a POSA would understand the "**first**

**server**" to be a server that is not the client device or the web server" in the context of the '614 Patent." Ex. D at ¶ 32 (emphasis in original).

As discussed above with regard to "client device," Defendants request a construction of "plain and ordinary meaning," while asserting that "client device" and "server" are interchangeable general use computers. For the same reasons provided above, this interpretation is contrary to the clear language of the patent claims and disclosure in the specification. "First Server" in the context of the '614 Patent should be construed as "[a] server that is not the client device or web server."

## VII.  THE "INDEFINITENESS" ARGUMENTS MADE BY DEFENDANTS DO NOT REALLY RELATE TO INDEFINITENESS AND ARE NOT CLAIM CONSTRUCTION DISPUTES

In addition to the above claim construction issues, Defendants have raised a number of additional issues they assert are related to indefiniteness. Plaintiff disagrees. Following *Nautilus*, 35 U.S.C. § 112 requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014).  "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120.

All issued patents are presumed valid. 35 U.S.C. § 282. Thus, the party challenging validity based on indefiniteness "has the burden of persuasion to show by clear and convincing evidence." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008). If the claim language "inform[s], with reasonable certainty, those skilled in the art about the scope of the invention[,]" it is not indefinite. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). Additionally, a patent claim is *not* indefinite if "someone working in the relevant technical

19

field *could understand the bounds of a claim*." *Traxxas LP v. Hobby Prods. Int'l*, No. 2:14-CV-945-JRG-RSP, 2015 U.S. Dist. LEXIS 114148, at *8 (E.D. Tex. Aug. 27, 2015) (emphasis added). Many of Defendant's indefiniteness challenges rely on antecedent basis arguments, but "[a] claim that is amenable to construction is not invalid on the ground of indefiniteness." *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006) (finding a claim not indefinite despite the absence of explicit antecedent basis). "[C]lose questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." *Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004).

Furthermore, a finding of indefiniteness during claim construction is disfavored. *Gilead Scis. v. Mylan Inc.*, No. 1:14CV99, 2015 U.S. Dist. LEXIS 44558, at *5-8 (N.D.W. Va. Apr. 6, 2015) ("Generally, 'the weight of the jurisprudence disfavors indefiniteness determinations at the *Markman* stage of patent litigation.'"). Instead, courts construe terms to have definite meaning if at all possible. This is in part due to the claim construction principle that claims will be construed in a manner to maintain their validity if possible. *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.* 279 F.3d 1357, 1367 (Fed. Cir. 2002).

Defendants raise their issues as *Markman* disputes over claim construction.  However, **Defendants have not asserted that any of the following claims lack meaning, so there is no basis for the Court to find indefiniteness, so for each, the Court should simply find the claim "not indefinite."** Alternatively, based on the law in this area, the Court should find that the claims do not violate the statutory provisions as argued by Defendants.

### A.   Not Indefinite: "The First IP Address" / "The First Client IP Address"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "First IP address"<br><br>('319 Pat., cl. 2) | Not Indefinite / Plain and ordinary meaning | Indefinite |

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "First client IP address"<br><br>('510 Pat., cl. 2) | Not Indefinite / Plain and ordinary meaning | Indefinite |

Dependent claim 2 of the '319 and '510 Patents claim:

2. The method according to claim 1,  wherein the first client device is identified by a Media Access Control (MAC) address or a hostname, and wherein the method further 35 comprising sending, by the first client device, during, as part of, or in response to, a start-up of the first client device, a first message to the second server, and wherein the first messages comprises the <u>first [client] IP address</u>, the MAC address, or the hostname."

The terms "first IP address" and "first client IP address" in the '319 and '510 Patent claim respectively are not indefinite. While Dr. Freedman opines that a POSA would not understand what the first IP address refers to due to lack of antecedent basis, it is clear from the claim language itself that it refers to the first client device. From the context of the claim, the first [client] IP address identifies the "first client device," which is consistent with the list of terms "the <u>first [client] IP address</u>, the MAC address, or the hostname."

In prior litigation between the parties, Defendants similarly attempted to assert indefiniteness for a variety of terms. See e.g. Ex. F at 55. Following *Nautilus*, the Court held that was not appropriate when "the patent claims, viewed in light of the specification and prosecution history, informed a [POSA] about the scope of the claim with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.  The claim scope is thus "reasonabl[y] certain[]" as to the "first [client] IP address" being the IP address of the client device. *Id*. "A claim that is amenable to construction is not invalid on the ground of indefiniteness." *Energizer Holdings,* 435 F.3d at 1371 (finding a claim not indefinite despite the absence of explicit antecedent basis). As Dr. Rhyne stated in his declaration, "a POSA would understand from the context of the claim that the plain and ordinary meaning of the "first IP address" is the IP address for the first client device and, hence, in my opinion would not find this term indefinite." Ex. D at ¶ 15. The same applies equally to "first client IP address."

**B.      Not Indefinite: "Determining, By The First Client Device, That The Received First Content, Is Valid" / "The Determining Is Based On The Received HTTP Header According To, Or Based On IETF RFC 2616"**

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "Determining, by the first client device, that the received first content, is valid"<br><br>('319 Pat., cl. 14; '510 Pat., cl. 10) | Not Indefinite / Plain and ordinary meaning | Indefinite |
| "The determining is based on the received HTTP header according to, or based on, IETF RFC 2616"<br><br>('319 Pat., cl. 15; '510 Pat., cl. 11) | Not Indefinite / Plain and ordinary meaning | Indefinite |

These terms are briefed together because they both refer to validation, with the second term being dependent on the first.

Dependent claim 14 of the '319 and claim 10 of the '510 Patents claim:

The method according to claim **1,** further comprising <u>determining, by the first client device, that the received first content, is valid</u>.

Dependent claim 15 of the '319 and claim 11 of the '510 Patents claim:

The method according to claim **14,** wherein <u>the determining is based on the received HTTP header according to, or based on, IETF RFC 2616</u>.

The above terms are not indefinite. The first term specifies that the "first client device" determines that the received first content is valid. In the opinion of Dr. Rhyne, based on the plain and ordinary meaning of the term "valid," "a POSA would understand the scope of this term to be definite." Ex. D at ¶ 17; *see e.g.* Ex. A at 14:32-38 ("[i]n addition to determining if the selected agent contains an entry for this request in its database, the selected agent may also determine if this information is still valid. Specifically, the selected agent determines whether the data that is stored within the memory of the selected agent or the memory of the peers, still mirrors the information that would have been received from the server itself for this request."), *see also* Ex. A

22

at Fig 12, 14:24-51, 14:62-15:11, and 16:12-46. In addition, a POSA would understand this claim to incorporate the second term from the dependent claim that further narrows the scope of the first term by specifying that the determining is based on the received HTTP header according to, or based on, IETF RFC 2616. Consequently, these terms are not indefinite as "someone working in the relevant technical field *could understand the bounds of a claim*." *Traxxas LP*, 2015 U.S. Dist. LEXIS at *8. "[B]readth is not indefiniteness." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017) (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005)).

Defendants assert that the term "the determining is based on the received HTTP header according to, or based on, IETF RFC 2616" is indefinite for lack of antecedent basis for "the received HTTP header." However, claims 15 and 11 depend on claims 14 and 10, which claim "the first received content." Further, the preamble of claim 1, specifically identifies the "web server" that responds to HTTP requests and stores "first content identified by a first content identifier." In Dr. Rhyne's opinion, "a POSA would understand that the term "received HTTP header" refers to a HTTP header associated with the "first content," which is consistent with the disclosure in the shared specification. *See e.g.* '319 Patent at 14:32-38, 14:24-51, 14:62-15:11, and 16:12-46." Ex. D at ¶ 19. "A claim that is amenable to construction is not invalid on the ground of indefiniteness." *Energizer Holdings,* 435 F.3d at 1371 (finding a claim not indefinite despite the absence of explicit antecedent basis). Consequently, neither term is indefinite.

### C.    Not Indefinite: "Periodically Communicating"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "Periodically communicating"<br><br>('319 Pat., cl. 17; '510 Pat., cl. 8) | Not Indefinite / Plain and ordinary meaning | Indefinite |

Dependent claim 17 of the '319 Patent claims:

The method according to claim **1,** further comprising <u>periodically communicating</u> between the second server and the first client device.

Dependent claim 8 of the '510 Patent claims:

The method according to claim **1,** further comprising <u>periodically communicating</u> over the TCP connection between the second server and the first client device.

The above terms are not indefinite. Defendants assert that "periodically communicating" must limit the number of communications or the interval in time between communications to be definite. That is not true. Defendants are confusing breadth with definiteness, but "breadth is not indefiniteness." *BASF Corp.* 875 F.3d at 1367. For example, a POSA would understand the scope of the above terms to be broader than the scope of dependent claim 18 of the '319 Patent and claim 8 of the '510 Patent. See e.g. Ex. A at claim 18 ("The method according to claim 17, wherein the periodically communicating comprises exchanging 'keep alive' messages."). However, the narrower scope of these dependent claims do not render the broader claims indefinite. If the claim language "inform[s], with reasonable certainty, those skilled in the art about the scope of the invention[,]" it is not indefinite. *Nautilus*, 134 S. Ct. at 2124. A POSA would understand "periodically communicate" to be consistent with the plain and ordinary meaning of the term. Ex. D at ¶ 21. Based on dependent claims 18 of the '319 Patent and claim 8 of the '510 Patent, a POSA would further understand "periodically communicating" as including "exchanging 'keep alive' messages." In Dr. Rhyne's opinion, "a POSA would not find this term indefinite." Ex. D at ¶ 21.

### D.      Not Indefinite: "In Response To The Receiving Of The First Content Identifier"

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "In response to the receiving of the first content identifier"<br><br>('510 pat., cl. 1) | Not Indefinite / Plain and ordinary meaning | Indefinite |

Claim 1 of the '510 Patent includes the following:

sending the received first content, to the second server over the established TCP connection, <u>in response to the receiving of the first content identifier</u>.

Defendants argue that this term is indefinite for lacking an antecedent basis for the term "in response to the receiving of the first content identifier." However, the preamble of claim 1 clearly identifies "a web server that … stores a first content identified by a first content identifier." There is no lack of antecedent basis for the first content identifier. The claim also clearly states that the received first content is sent "in response to the receiving of the first content identifier." "[A] POSA would understand that the claims including use of this phrase are definite." Ex. D at ¶ 23. Defendants assert that the claim must include a separate antecedent receiving step, the patent claims, viewed in light of the specification and prosecution history, inform a POSA about the "scope of the claim with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129; *see also Energizer Holdings,* 435 F.3d at 1371 (finding a claim not indefinite despite the absence of explicit antecedent basis). In Dr. Rhyne's opinion, "[w]hile a POSA would certainly understand that additional steps could occur involving the receiving of the first content identifier, and dependent claim 15 adds such a step of 'receiving, by the first client device from the second server over the established TCP connection, the first content identifier,' in my opinion this claim only requires that the sending of the received first content occur 'in response to the receiving of the first content identifier.' Thus, a POSA would not understand this claim as indefinite." Ex. D at ¶ 23.

### E.    The Sending Of The Hypertext Transfer Protocol (HTTP) Request / Receiving And Storing Of The First Content / The Sending Of The Part Of, Or The Whole Of, The Stored First Content

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "The sending of the hypertext transfer protocol (HTTP) Request"  ('510 pat., cl. 13) | Not Indefinite / Plain and ordinary meaning | Indefinite |

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "Receiving and storing of the first content"<br><br>('510 pat., cl. 13) | Not Indefinite / Plain and ordinary meaning | Indefinite |
| "The sending of the part of, or the whole of, the stored first content"<br><br>('510 pat., cl. 13) | Not Indefinite / Plain and ordinary meaning | Indefinite |

Claim 13 of the '510 Patent claims:

**13.** The method according to claim **1,** for use with a software application that includes computer instructions that, when executed by a computer processor, cause the processor to perform <u>the sending of the Hypertext Transfer Protocol (HTTP) request</u>, <u>the receiving and storing of the first content</u>, the receiving of the first content identifier, and <u>the sending of the part of, or the whole of, the stored first content</u>, the method is further preceded by:

downloading, by the first client device from the Internet, the software application; and

installing, by the first client device, the downloaded software application.

Defendants assert that the above terms are indefinite for lacking an antecedent basis. However, "[a] claim that is amenable to construction is not invalid on the ground of indefiniteness." *Energizer Holdings,* 435 F.3d at 1371 (finding a claim not indefinite despite the absence of explicit antecedent basis).

With regard to "the sending of the hypertext Transfer Protocol (HTTP) request", in Dr. Rhyne's opinion "[a] POSA would understand this dependent claim to claim a software application that includes computer instructions for performing its steps." Ex. D at ¶ 25. The preamble of claim 1 includes "a **web server** that responds to Hypertext Transfer Protocol (HTTP) requests and stores a first content identified by a first content identifier" followed subsequently by the step of "sending, to the **web server** over an Internet, the first content identifier." A POSA would therefore "accordingly understand that 'the sending of the Hypertext Transfer Protocol (HTTP) request'

26

refers to the step of "sending, to the **web server** over an Internet, the first content identifier." Ex. D at ¶ 25. A POSA would not understand this claim as indefinite. *Id.*

Similarly, with regard to "the receiving and storing of the first content," claim 1 recites the first client device "receiving the first content from the web server…." The specification also discloses the storing of content by the client device, including in the client device's cache. *See e.g.* Ex. C at 4:48-52; 8:7-22. "A POSA would understand from the common specification that software may be stored on the client device providing functionality which may include the content being stored by the client device, including for example in its cache. '510 Patent at 4:48-52; 8:7-22. Thus, a POSA would not understand this claim as indefinite." *Energizer Holdings,* 435 F.3d at 1371.

Similarly, with regard to "the sending of the part of, or the whole of, the stored first content," claim 1 recites the first client device "sending the received first content." The specification discloses the sending may be of part of or the whole of the first content. *See e.g.* Ex. C at 4:48-52; 14:62-15:6. In Dr. Rhyne's opinion, "a POSA would understand from the common specification that the content can be sent in parts, such as chunks, and thus further would not understand this claim as indefinite. *See e.g.* '510 Patent at 8:23-39." Ex. D at ¶ 29.

While claim 13 narrows the scope of the independent claim 1 through the above terms, that does not render these terms indefinite. If the claim language "inform[s], with reasonable certainty, those skilled in the art about the scope of the invention[,]" it is not indefinite. *Nautilus, Inc.*, 134 S. Ct. at 2124.  "[B]readth is not indefiniteness." *BASF Corp.* 875 F.3d at 1367.

### F.    The Steps Are Sequentially Executed

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "The steps are sequentially executed" | Not Indefinite / Plain and ordinary meaning | Indefinite |

| Claim Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| ('614 Pat., cl. 7) | | |

Claim 7 claims "the method according to claim 1, wherein the steps are sequentially executed. Claim 1 claims the following:

1. A method for use with a resource associated with a criterion in a **client device** that communicates with a **first server** over the Internet, the **client device** is identified in the Internet using a first identifier and is associated with first and second state according to a utilization of the resource, the method comprising:

[A] initiating, by the **client device**, communication with the **first server** over the Internet in response to connecting to the Internet, the communication comprises sending, by the **client device**, the first identifier to the **first server** over the Internet;

when connected to the Internet, periodically or continuously determining whether the resource utilization satisfies the criterion;

responsive to the determining that the utilization of the resource satisfies the criterion, shifting to the first state or staying in the first state;

responsive to the determining that the utilization of the resource does not satisfy the criterion, shifting to the second state or staying in the second state;

responsive to being in the first state, receiving, by the **client device**, a request from the **first server**; and

performing a task, by the **client device**, in response to the receiving of the request from the **first server**,

wherein the method is further configured for fetching over the Internet a first content identified by a first content identifier from a **web server** that is distinct from the **first server**, and the task comprising:

[B] receiving, by the **client device**, the first content identifier from the **first server**;

[C] sending, by the **client device**, the first content identifier to the **web server**;

[D] receiving, by the **client device**, the first content from the **web server** in response to the sending of the first content identifier; and

[E] sending, by the **client device**, the received first content to the **first server**.

Defendants assert that "sequentially executed" is indefinite, because claim 1 comprises two parts. There is an initial part in which the client device performs steps including an initiating step, followed by the determining and shifting steps, before the performance of a task should the first server be in the "first state." The second part of the claim provides the four steps that comprise the performance of the task. The above steps are identified by [A], comprising the initiating and determining steps, followed by the "performing of a task," which comprises



FIG. 13

steps [B] – [D]. If the claim language "inform[s], with reasonable certainty, those skilled in the art about the scope of the invention[,]" it is not indefinite. *Nautilus, Inc.*, 134 S. Ct. at 2124. In Dr. Rhyne's opinion, "a POSA would clearly understand from the context of the claim that each of the steps would be performed in the order presented therein. In other words, a POSA would understand the client device as performing the above bracketed steps with the additional determining and shifting steps performed between [A] and [B]. Therefore, a POSA would not find this term indefinite." Ex. D at ¶ 36. The claim scope is thus "reasonabl[y] certain[]" as to how "the steps are sequentially executed." *Nautilus*, 134 S. Ct. at 2129.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter its proposed constructions as set forth about, and find that none of the claims is indefinite.

Dated: September 29, 2020                    Respectfully submitted,

By: */s/ Korula T. Cherian* __
J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
blake@themannfirm.com
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

Robert Ruyak
Corrine Saylor Davis
Ronald Wielkopolski
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
robertr@ruyakcherian.com
ronw@ruyakcherian.com
corrinesd@ruyakcherian.com

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94702
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Attorneys for Plaintiff
Luminati Networks Ltd.