# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

LUMINATI NETWORKS LTD.

   Plaintiff,

  v.

TESO LT, UAB, Oxysales, UAB, and
Metacluster LT, UAB,

   Defendants.

Case No.  2:19-CV-00395-JRG

FILED UNDER SEAL

JURY TRIAL DEMANDED

## PLAINTIFF'S MOTION TO STRIKE EXPERT TESTIMONY OF KEITH UGONE, PH.D.

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.      LEGAL STANDARD ..................................................................................................... 1

II.     DR. UGONE'S REASONABLE ROYALTY, BASED ENTIRELY ON A NON-EXISTENT ALTERNATIVE DESIGN, IS IMPROPER AND SHOULD BE STRICKEN ........................................................................................................................ 2

      A.     Dr. Ugone's Reasonable Royalty Opines Improperly Depends Entirely On A Purported "Noninfringing Alternative" That Was Never Implemented ............ 2

      B.     Dr. Ugone's Reasonable Royalty Opinion Inappropriately Caps Damages On The Cost Of Deploying The Purported Alternative Design ............................ 4

III.    DR. UGONE'S OTHER OPINIONS ABOUT ALTERNATIVES TO INFRINGEMENT HAVE NO FACTUAL BASIS AND SHOULD BE DISALLOWED, AND, AS A RESULT, HIS LOST PROFITS OPINION SHOULD BE STRICKEN ...................................................................................................... 7

      A.     The Undisclosed Purported Alternative Design and an Internet Service Provider Procured IP Address Based Alternative Design Were Not Available During the Damages Period ................................................................. 8

      B.     Dr. Ugone Does Not Substantively Analyze the Acceptability of any of the Purported Alternatives Identified in His Report .................................................... 8

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)....................................... 4, 5

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-cv-134-JRG-RSP,

    2017 U.S. Dist. LEXIS 160561 (E.D. Tex. Apr. 19, 2017) ...................................................... 4

*Guile v. United States*, 422 F.3d 221 (5th Cir. 2005) ................................................................... 5

*Moore v. International Paint,  L.L.C.*, 547 F.App'x. 513 (5th Cir. 2013)..................................... 5

## INTRODUCTION

The rebuttal report of Defendant's damages expert Dr. Keith Ugone does not set forth a reasonable royalty analysis based on infringement in the absence of noninfringing alternatives.[1] Instead, his opinion as to damages caps the damage amount on a purported noninfringing alternative that ███████████████████. This opinion has flaws that run afoul of the Daubert standard. First, the purported noninfringing alternative is accused of infringement, and was not an actual design in use at the time of the hypothetical negotiation. Second, as a matter of law, reasonable royalty damages are not capped at the cost of a design around, and Dr. Ugone does no other analysis for reasonable royalty (for example, he does not attempt any separate valuation of the patented technology nor perform any apportionment). For these reasons, Luminati moves to strike Dr. Ugone's opinion as to reasonable royalty, specifically his opinion that the parties would agree to an amount of only ██████ in total due to the purported alternative.

Dr. Ugone provides other improper opinions about noninfringing alternatives that are inconsistent with the evidence and should be disallowed. As a result, Dr. Ugone's opinion that lost profits are not an allowable measure of damages should be excluded. Dr. Ugone's opinions about other alternatives such as data center proxies, residential proxies outside the U.S., other providers, and possible in-house solutions are also unfounded and should be excluded.

## ARGUMENT

### I.   LEGAL STANDARD

"Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) govern the admissibility of expert testimony. Experts may offer opinions at trial

---

[1] Dr. Ugone did not present a lost profits analysis of his own, but only provides certain criticisms to Dr. Becker's lost profits analysis.

1

if: '(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) **the expert has reliably applied the principles and methods to the facts of the case.**' Fed. R. Evid. 702." *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-cv-134-JRG-RSP, 2017 U.S. Dist. LEXIS 160561, at *2-3 (E.D. Tex. Apr. 19, 2017)(emphasis added). The court's gatekeeping function involves a two-part inquiry into both reliability and relevance.  Under the relevance inquiry, the Court must assess whether the reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier to understand the evidence.  *Daubert*, 509 U.S. at 589.

"[F]undamentally unsupported" opinions "offer[] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).  The Fifth Circuit has instructed: "To be sure, reliable expert testimony often involves estimation and reasonable inferences from a sometimes incomplete record. Further, a few scattered errors in an expert report are not necessarily grounds for exclusion. Here, however, the universe of facts assumed by the expert differs frequently and substantially from the undisputed record evidence." *Moore v. International Paint,  L.L.C.*, 547 F.App'x. 513, 516-17 (5th Cir. 2013).

## II.    DR. UGONE'S REASONABLE ROYALTY, BASED ENTIRELY ON A NON-EXISTENT ALTERNATIVE DESIGN, IS IMPROPER AND SHOULD BE STRICKEN

### A.  Dr. Ugone's Reasonable Royalty Opinion Improperly Depends Entirely On A Purported "Noninfringing Alternative" That Was Never Implemented

Dr. Ugone testified that despite ███████████ in lost profits, the parties to a hypothetical negotiation would agree to a license totaling approximately ██████ based on a purported noninfringing alternative whereby Teso would ████████████████████████

2

██████████████████████████████████.  However, there is no evidence that any such system existed or was being used at the time of the hypothetical negotiation, nor any such allegation by Dr. Ugone.

As a result, Dr. Ugone's reasonable royalty opinion lacks any appropriate basis under Daubert, he addresses only current, post-hoc arguments about an alternative system he fails to provide with any detail and has never existed in the marketplace.  Dr. Ugone fails to provide any evidence that anyone ever attempted to develop products based on the purported alternative design. As such, it is improper.  *See Grain Processing Corp. v. American Maize-Products Co.,* 185 F.3d 1341, 1353 (Fed. Cir. 1999) (which requires that the availability of any alternatives be based on "concrete fact[s]" and not "speculation or possibilities.").

Dr. Ugone states that it is his understanding that the alternatives "were available as a noninfringing alternative by no later than April 2019 (i.e., at the time of the first alleged infringement)" but cites no evidence to support that conclusion. Ugone Rpt., ¶ 125.  He cites only footnote 458, which contains no information showing that such a design existed or was used by anyone in April 2019.  Dr. Ugone's reasonable royalty opinion relies primarily on the purported alternative design that was never disclosed to Plaintiff. Dr. Ugone's reliance on the purported alternative design infects his analysis of *Georgia Pacific* factors 7, 9, 10, 13, and his ultimate opinion pursuant to factor 15 that the amount of the reasonable royalty would be limited to the cost of the design around to defendants ████████████████████████████████████.  Dr. Ugone's reasonable royalty analysis should be struck in its entirety for improperly relying on the undisclosed purported alternative design.

*Georgia-Pacific* factor 7 focuses on the duration of the patent and the term of the license. Dr. Ugone inappropriately relies on the "existence of an economically and technologically

acceptable noninfringing alternative" to opine that this factor would be neutral in his analysis. (Ugone Report Appendix A at 7). *Georgia-Pacific* factors 9 and 10 are treated together in Dr. Ugone's report. (Ugone Report Appendix A at p. 9). Once again, Dr. Ugone relies on the existence of noninfringing alternatives, including Defendants' ability to design-around the Asserted Patents to opined that Defendants "as a prudent business, would choose to implement an alternative. As such, the cost of the noninfringing alternative (i.e., ▮▮▮▮▮▮▮▮) would serve as a constraint on the royalty payment Tesonet would be willing to pay (and Luminati could expect to receive) for a license...." (*Id.* at p. 9). Finally, Dr. Ugone also improperly relies on the undisclosed purported alternative design in his discussion of *Georgia-Pacific* factors 13 and his ultimate conclusion regarding the outcome of the hypothetical negotiation pursuant to *Georgia-Pacific* factor 15 which he opines would equal the amount of money that it would cost Defendants to implement the undisclosed purported alternative design.

Dr. Ugone's reliance on the purported noninfringing alternative has one additional fatal flaw, which is that Dr. Ugone himself testified that the alternative is "functionally equivalent" to the patent claims. Ugone Dep., 101:1–16. Indeed, Dr. Rhyne agreed, finding the purported alternative infringing under the doctrine of equivalents. Rhyne Rpt., ¶¶ 153, 157. Since Dr. Ugone's testimony is based only on a design he agreed is equivalent, it cannot serve as the basis for a damages opinion.

### B.   Dr. Ugone's Reasonable Royalty Opinion Inappropriately Caps Damages On The Cost Of Deploying The Purported Alternative Design

Dr. Ugone sets out an argument based on an alternative design that ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ As summarized in Table 20 of his report, he opines that the implementation of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

████████████████████████████████████████████████████████████████.

Ugone Rpt., ¶¶ 8(c), 10(d), 11, 12, 103(b) (n.419), 111 (and Table 18), 124 (and Table 20), 149(a), 150, 151, and 152.   Dr. Ugone testified that he capped the damages at the cost of a particular design-around.   Ugone Dep., 86:6–16.   He agreed that he performed no apportionment or other analysis, and felt that he did not need to do so because his cost of implementation cap overrode all other considerations. *Id.*, at 144:18–145:6.   As a result, his ultimate opinion ignored all other *Georgia-Pacific* factors.   *Id.*

However, as a matter of law, reasonable royalty damages are ***not*** capped on proposed noninfringing alternatives.   "The Federal Circuit rejected the infringer's argument that 'reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative.'" *Looksmart Grp., Inc. v. Microsoft Corp.*, No. 17-cv-04709-JST, 2019 U.S. Dist. LEXIS 146851, at *12-13 (N.D. Cal. July 12, 2019), *citing Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008), mandate recalled and modified on other grounds by 557 F.3d 1377 (Fed. Cir. 2009).   As the Mars Court stated,

> [E]ven if Coinco had shown that it had an acceptable noninfringing alternative at the time of the hypothetical negotiation, Coinco is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative. We have previously considered and rejected such an argument. *See Monsanto Co. v. Ralph*, 382 F.3d 1374, 1383 (Fed. Cir. 2004) (rejecting infringer's argument that "a reasonable royalty deduced through a hypothetical negotiation process can never be set so high that no rational self-interested wealth-maximizing infringer acting ex ante would ever have agreed to it"). To the contrary, an infringer may be liable for damages, including reasonable royalty damages, that exceed the amount that the infringer could have paid to avoid infringement.

*Mars*, at 1373.

The problems created by Dr. Ugone's method are clear from the ultimate opinion he presents.   Dr. Ugone himself estimated that ████████████████████████████████████

5



Dr. Ugone further ignored that Lumianti was already suing Teso at the time of the hypothetical negotiation on the same patent family as the '614 patent that he includes in the hypothetical negotiation.[2] He does not dispute that any license provided would be to the patent families, yet ignores that ███████████████████████████████████████████████ ███████████████████████████████████. Dr. Ugone's opinion is entirely divorced from any realistic negotiation. Dr. Ugone provided no other reasonably royalty analysis and should not be permitted to testify at trial as to any opinion of his own regarding an appropriate reasonable royalty.

---

[2] Dr. Ugone opined that Web Spark would negotiate and Luminati would be considered a separate company, but his negotiation includes the '614 patent that was pending and was always owned by Lumianti, so there is no way Web Spark could have provided the license Dr. Ugone sets forth without Lumianti's involvement and consent.  He failed to account for this in his hypothetical negotiation analysis. Ugone Dep., 67:21–68:5.

### III.  DR. UGONE'S OTHER OPINIONS ABOUT ALTERNATIVES TO INFRINGEMENT SHOULD BE DISALLOWED, AND, AS A RESULT, HIS LOST PROFITS OPINION SHOULD BE STRICKEN

Under *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978) a patent owner must show the following factors to be entitled to lost profits: 1) demand for the patented product; 2) absence of acceptable noninfringing substitutes; 3) manufacturing and marketing capability to exploit the demand; and 4) the amount of profit the patent holder would have made but for the defendant's infringement.

Dr. Ugone's opinion that lost profits should not be available to Luminati was based entirely on purported noninfringing alternatives: 1) purported alternative designs; and 2) alternative services that Dr. Ugone did not analyze for commercial acceptability.

The correct inquiry under *Panduit* factor 2 is whether a noninfringing alternative would be commercially acceptable compared to the patent owner's product, not whether it is a substitute for the infringing product. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1396, 1381 (Fed. Cir. 2017). "The 'but for' inquiry therefore requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what [sales] the patentee 'would . . . have made.'" *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). Further, the "[m]ere existence of a competing device does not make that device an acceptable substitute." *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986). If an "infringer had to design or invent around the patented technology to develop an alleged substitute" that weighs against a finding of availability. *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003). Instead of performing the requisite analysis, Dr. Ugone's report simply lists off number of purported acceptable alternatives, but he did not attempt to reconstruct the market or perform an analysis of the commercial acceptability of any of the purported

7

alternatives that he addressed in his report.  Thus, Dr. Ugone's analysis is contrary to the legally required analysis for *Panduit* factor 2 and should be stricken under Fed. R. Evid. 702 and *Daubert*.

### A.   The Undisclosed Purported Alternative Designs Were Not Available During the Damages Period

As discussed above under the reasonable royalty analysis, the modifications to Teso's system relied upon by Dr. Ugone were not implemented at the time of the hypothetical negotiation, and as such cannot be used to undermine the availability of lost profits.  *See Grain Processing Corp.,* at 1353 (availability of any alternatives be based on "concrete fact[s]" and not "speculation or possibilities.") .

Dr. Ugone's opinion is based solely on a hypothetical design around that Defendants assert could have been available as of December 2017 when the infringement began. This theory fails under *Grain Processing* because it is not based on any "concrete facts" but rather speculation. Defendants have not in fact implemented this undisclosed purported design around or studied its feasibility, nor have they performed any analysis to determine if it could perform to the level that its customers desire.  For the same reasons such opinions should be disallowed under the reasonable royalty analysis, they should also preclude Dr. Ugone from opining that *Panduit* Factor 2 is absent for lost profits.

### B.   Dr. Ugone Does Not Substantively Analyze the Acceptability of Any of the Purported Alternatives Identified in His Report

The Ugone Report offers the purported Teso ▮▮▮▮▮▮▮▮▮▮▮▮▮, data center proxy networks, and the use of non-U.S. exit nodes as purported acceptable alternatives that render lost profit damages unavailable in this case. Critically, Dr. Ugone does not provide any analysis to support his conclusory opinions that these purported alternatives are acceptable. In this regard, Dr. Ugone's opinion is based solely on discussions with Defendants' CTO and technical expert and

8

assumptions and conclusions that do not in any way address this issue. (See, e.g., Ugone Rpt., ¶¶ 19, n. 30, 41, 123, n. 169, ).

In addition to failing to show the availability of ███████████, Dr. Ugone did no analysis as to commercial acceptability, but instead recites Dr. Almeroth as providing that information.  However, Dr. Almeroth is a technical expert who also did no analysis and rendered no opinions as to commercial acceptability.  Dr. Almeroth did not speak with any customers and is not qualified to opine about commercial acceptability, and Dr. Ugone did not independent analysis.

Defendants and Luminati advertise the size and geographical scope of their IP proxy networks. Luminati advertises that its network includes 70 million+ residential IP addresses available in worldwide and that its network is "fastest and largest real-peer IP network in the world." (Ugone Report at ¶ 32). Luminati's network also allows its customers to specify the location of the residential nodes that they use down to specific states and cities. (Ugone Report at ¶¶ 28, 33).  Defendants' advertising mimics Luminati's and makes many similar claims regarding the size and scope of Defendants' network. Defendants' advertise that their residential IP network includes 100 million+ "real IPs from all around the world" and that Defendants offer their customers "an extensive list of locations, and city-level targeting to meet even the most diverse business requirements." Ugone Dep. Ex. P306.

Critically, Dr. Ugone did not perform any analysis of any of the purported alternative designs or purported alternative service providers to determine how their pricing structures and network scale and scope compare to those of the infringing network or Luminati's network. On this basis, the entirety of his lost profits opinion should be excluded. Dr. Ugone also did not offer this information for the other residential IP service providers who he identified in his report.

9

(Ugone Rpt., ¶ 74).  As such, the testimony should be excluded. *See Ill. Tool Works, Inc. v. MOC Prods. Co.*, 2012 U.S. Dist. LEXIS 116471, at \*24, \*25 (S.D. Cal. Aug. 17, 2012) (finding "[expert's] testimony does not appear to be grounded in sound economic and factual predicates and is therefore excluded.").

The same is true for his analysis of the size of the networks for the purported alternatives that he identifies. Dr. Ugone admitted at deposition that he did not analyze information related to the size of other residential proxy network providers' networks that he identified in his report. (Ugone Dep. Tr. at 91:15-93:13). His report does not reflect any analysis whatsoever regarding the size of any of the purported alternative networks or service providers that he identifies. In addition to his overall failure to analyze any of the critical features of the purported alternative networks in comparison to the critical features of Luminati and the infringers' residential proxy networks, Dr. Ugone's lost profits opinions should also struck for the following reasons.

1.     **Dr. Ugone agreed that** ██████████████████████████████████████
████████████████████████████████████

Dr. Ugone speculates that Defendants' customers could have used Defendants' data center network as opposed to the infringing residential proxy network (Ugone Report at ¶¶ 83, 108-10), but this argument is flatly contradicted by evidence that Dr. Ugone cites in his own report. If, as Dr. Ugone opines, customers may have preferred a data center proxy network, he should have explained why Defendants (and their customers) ████████████████████████████████████
████████████████████████████  Ugone Rpt. ¶ 62 (discussing cost difference).

Additionally, during deposition, Dr. Ugone agreed that █████████████████████
████████████████████████████████████████████████.  Ugone Dep., 109:10–21.  Thus, ████████████████████████████████, and Dr.

10

Ugone provides no analysis suggesting any portion of customers who ███████████████

███████████████████████████████████████.

In sum, Dr. Ugone has provided no substantive analysis that data center proxies would be a commercially acceptable noninfringing alternative to customers. *See General Elec. Co., et al. v. Joiner*, 522 U.S. 136, 146 (1997). ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" and "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *see also Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) (holding that it "expert's opinion is based on insufficient information, the analysis is unreliable."). Thus, this portion of Dr. Ugone's report is also unreliable and Dr. Ugone should not be allowed to testify regarding this entirely speculative alternative and related portions of his report should be struck.

This also applies to Dr. Ugone's opinion that ████████████████████████

███████████████████. To the extent that is true, it is already accounted for in the market, and Dr. Ugone fails to provide any analysis as to why customers who ████████████████████

████████████████ would be willing to switch.

2.      **Dr. Ugone agreed that** ███████████████████████████

███████████████████████████████████████████

Dr. Ugone speculates that Defendants' customers could have used more residential proxies

███████████████████████████████████. Ugone Report at ¶¶ 68–69.  But again, Dr. Ugone admitted in deposition that ████████████████████████████

███████████████████████████████████████████

████████████████. Ugone Dep., 105:21–106:18.  He also admitted that Metacluster

███████████████████████████████████████████████████████████

███████████████████. *Id.*  There is no evidence or analysis by Dr. Ugone that would support

███████████████████████████████████████████████, and this opinion should

be stricken.

### 3.    Dr. Ugone "other provider" opinions are baseless and fail to show that they do not infringe

Dr. Ugone speculates that due to the existence of other residential proxy providers, customers using Defendants' infringing products may have chosen a provider other than Luminati had Defendants not been in the marketplace without any evidence of such a result. (*See* Ugone Report, ¶ 73).  However, Dr. Ugone provides no evidence or analysis that in the absence of Defendants' infringement, the customers at issue in this case would have avoided Luminati. Instead, Dr. Ugone theorizes and speculates.  Such an opinion is not sufficiently reliable to be admissible under *Daubert*.

The Ugone Report also wrongly assumes these other proxy providers are not infringing when the other providers have been accused of infringement.  (*See* Ugone Report at ¶ 153).  For example, Geosurf and NetNut, listed in bold as potential alternatives, were sued by Luminati. (*See* Case No. 2-19-cv-00352, Dkt. No. 1 (BI Science/Geosurf), Case No. 2:20-cv-188-JRG-RSP, Dkt. No. 1 (NetNut).).

Moreover, Dr. Ugone again relied on fundamentally unreliable evidence and merely repeated what Defendants told him instead of conducting his own analysis.  (*See* Ugone Report, (See e.g., Ugone Rpt., ¶¶ 19, n. 30, 41, 123, n. 169).  Nothing cited by Dr. Ugone discusses with any specificity the alternatives which are actually used by the customers at issue herein.  Dr. Ugone did not perform an independent analysis to determine if any of the other proxy providers could be

commercially acceptable alternatives. *Id.* Thus, this portion of Dr. Ugone's report is also unreliable and Dr. Ugone should not be allowed to testify regarding this entirely speculative alternative and related portions of his report should be struck.

### 4. Dr. Ugone speculates that some customers might create In-House Proxy Network Solutions

In yet another example of pure speculation, Dr. Ugone suggests that some customers, absent Defendants' infringing product would develop in-house proxy network solutions rather than switch to Luminati's proxy network. (*See* Ugone Report, ¶¶ 84–85). Dr. Ugone does not provide any analysis of studies or data to opine that the customers using Defendants' infringing products would have incurred the resources necessary to develop an in-house proxy network solution rather than using Luminati's residential proxy network for the traffic at issue in this case. Other than a single episodic email from Luminati, Dr. Ugone did not provide any information at all regarding the costs, scalability, technical ability, or specific customers' willingness to undertake this process and the potential roadblocks those developers would encounter while developing and managing a residential proxy network.[3] Mere speculation is not reliable in a way that can survive *Daubert*. As with other sections of Dr. Ugone's report, this portion of Dr. Ugone's report is also unreliable and Dr. Ugone should not be allowed to testify regarding this entirely speculative alternative and related portions of his report should be struck.

---

[3] █████████████████████████████████████████████████████████████

█████████████████████ (*See* Ugone Report at ¶ 84(a)).

**5.      Dr. Ugone failed to provide any real analysis as to whether any of the alternatives identified in his report would be commercially acceptable**

Throughout Dr. Ugone's report, the opinions provided concerning noninfringing alternatives have been nothing more than speculative and conclusory, based on limited to no evidence, no independent investigation, and no real analysis concerning the location, size, pricing, sophistication, or particularities of each alleged alternative. Dr. Ugone repeatedly relied upon conversations with Defendants rather than performing any independent study from which he could have based his opinion. Dr. Ugone simply spent most of his report speculating as to why Defendants might not be responsible for 100% of the lost profits from the customers using their infringing products rather that Luminati's.

Under Rule 702, the Court must consider whether (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *See, e.g.*, *Prism Techs., LLC v. T-Mobile USA, Inc.*, No. 8:12CV124, 2015 U.S. Dist. LEXIS 137677, at *6 (D. Neb. Oct. 8, 2015). Here, the Court cannot possible consider Dr. Ugone's testimony because there is simply no disclosure of his principles and methods, nor of how he applied those principles and methods.

As such, Dr. Ugone's opinion concerning noninfringing alternatives and lost profits generally is substantially unreliable such that it cannot survive *Daubert*. Dr. Ugone should not be permitted to testify concerning noninfringing alternatives or lost profits generally, and his report should be struck accordingly.

In sum, Dr. Ugone's opinions related to *Panduit* should be stricken because they are precisely the types of shoddy, unscientific, and unsupported opinions that *Daubert* was intended to eliminate from the jury's c nsideration.

14

## **CONCLUSION**

For all the reasons stated above, Luminati respectfully requests the Court strike and exclude Dr. Ugone's opinion as to the correct amount of a reasonable royalty from a hypothetical negotiation. His opinion that damages would be ████████████████████████ is based exclusively on an improper analysis of a hypothesized alternative that was not in the market or implemented by anyone in April 2019, and he improperly capped the royalty based on this analysis, ignoring all other *Georgia-Pacific* factors. In addition, Dr. Ugone's other opinions about use of extraterritorial proxies, data centers, other providers, and in-house solutions are without basis and should not be permitted.

Dated: January 25, 2021

Respectfully submitted,

By: *Korula T. Cherian*__

Amadou Kilkenny Diaw
Colby Davis
Craig Hoovler
Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94702

J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
blake@themannfirm.com
MANN | TINDEL | THOMPSON

300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Attorneys for Plaintiff
Luminati Networks Ltd.

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 25th day of January, 2021, with a copy of this document via electronic mail.


*/s/ Korula T. Cherian*


**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for the parties have complied with Local Rule CV-7(h).  A telephonic meet and confer was held on January 25, 2021 involving Bob Harkins, on behalf of Luminati and Steven Callahan on behalf of Defendants.  The parties have been unable to come to an agreement and are at an impasse.  Defendants oppose this motion.


*/s/ Korula T. Cherian*


**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**


I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.


*/s/ Ronald Wielkopolski*

17