IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LUMINATI NETWORKS LTD., § § *Plaintiff*, § § v. § § TESO LT, UAB, METACLUSTER LT, § UAB, OXYSALES, UAB, § § *Defendants*. § § | CIVIL ACTION NO. 2:19-CV-00395-JRG |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Teso LT, UAB, Metacluster LT, UAB, and Oxysales, UAB's (collectively, "Teso") Motion for Judgment on the Pleadings Under Fed. R. Civ. P. 12(c) and 35 U.S.C. § 101 (the "Motion"). (Dkt. No. 210). On February 4, 2021, the Court held a hearing on the Motion. Having considered the Motion, the parties' arguments, related briefing, and relevant authority, the Court finds that the Motion should be **DENIED**.

### I.   BACKGROUND

Plaintiff Luminati Networks Ltd. ("Luminati") alleges infringement of U.S. Patent Nos. 10,257,319 (the "'319 Patent"), 10,484,510 (the "'510 Patent"), and 10,469,614 (the "'614 Patent") (collectively, the "Patents-in-Suit"). (Dkt. No. 1). Luminati accuses Teso of infringing: Claims 1, 2, 14, 15, 17, 18, 21, 22, 24-27 of the '319 Patent; Claims 1, 2, 8-11, 13, 15, 16, 18-20, 22, and 23 of the '510 Patent; and Claims 1, 2, 4-6, 9-12, 15-20, 22, 23, 25, 26, and 29 of the '614 Patent (collectively, the "Asserted Claims"). (Dkt. No. 224 at 2).

Previously, Teso filed a Rule 12(b)(6) Motion to Dismiss (the "Motion to Dismiss") contending that the Asserted Claims were unpatentable under 35 U.S.C. § 101. (Dkt. No. 20 at 2–

21). Noting that "claim construction could be of benefit in addressing this issue as it is presented in this case," the Court denied Teso's Motion to Dismiss. (Dkt. No. 85 at 5). On December 7, 2020, Magistrate Judge Payne entered a Claim Construction Opinion and Order in this case. (Dkt. No. 191). On December 30, 2020, Teso filed the instant Motion, re-raising the issue of patent-eligibility of the Patents-in-Suit under 35 U.S.C. § 101. (Dkt. No. 210).

## II.   LEGAL STANDARD

### A.  Rule 12(c)

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss . . . [t]he plaintiff must plead 'enough facts to state a claim for relief that is plausible on its face.'" *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In a patent case, the Federal Circuit reviews procedural aspects of motions for judgment on the pleadings using regional circuit law. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1325–26 (Fed. Cir. 2017).

### B.  Patent Eligibility

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The Supreme Court instructs courts to distinguish between claims that set forth patent-ineligible subject matter and those that "integrate the building blocks into something more." *Id*.

First, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id*. at 2355.  In doing so, the court must be wary not to over generalize the invention, as "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354 (omission in original).  In other words, the court must distinguish between "ineligible 'abstract-idea-based solution[s] implemented with generic technical components in a conventional way' from the eligible 'technology-based solution' and 'software-based invention[] that improve[s] the performance of the computer system itself.'" *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016)) (alteration in original).

If the challenged claims recite a patent-ineligible concept, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)).  This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359).  The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).  As such, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the

relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Something is not necessarily well-understood, routine, and conventional simply because it is disclosed in a prior art reference. *Exergen Corp. v. KAZ USA, Inc.*, 725 Fed. App'x. 959, 965 (Fed. Cir. 2018). There are many obscure references that may qualify as prior art but are insufficient to establish something is a "well-understood, routine, and conventional activity previously engaged in by scientists who work in the field." *Mayo*, 566 U.S. at 79. Additionally, specific improvements described in a patent specification, "to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Berkheimer*, 881 F.3d at 1369. However, "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, [patent eligibility] can be decided on summary judgment as a matter of law." *Berkheimer*, 881 F.3d at 1368.

### III. DISCUSSION

#### A. Representativeness

The Court first notes that Teso bears the burden of either addressing the eligibility of each Asserted Claim or making a showing of the representativeness of any claims asserted to be representative. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021 (E.D. Tex. 2019). Teso addresses each Asserted Claim in its Motion. (*See* Dkt. No. 210). The parties focused their argument at the hearing on the independent claims asserted from the Patents-in-Suit. (*See* Dkt. No. 293 at 6:6–23). Accordingly, the Court's analysis is likewise focused on Claim 1 of each Patent-in-Suit.

4

### B. The Patents-in-Suit

**Claim 1 of the '319 Patent**, the only independent claim asserted from the '319 Patent, recites:

> A method for use with a first client device, for use with a first server that comprises a web server that is a Hypertext Transfer Protocol (HTTP) server that responds to HTTP requests, the first server stores a first content identified by a first content identifier, and for use with a second server, the method by the first client device comprising:
> receiving, from the second server, the first content identifier;
> sending, to the first server over the Internet, a Hypertext Transfer Protocol (HTTP) request that comprises the first content identifier;
> receiving, the first content from the first server over the Internet in response to the sending of the first content identifier; and
> sending, the first content by the first client device to the second server, in response to the receiving of the first content identifier.

(Dkt. No. 1-2 at 19:16–32). **Claim 1 of the '510 Patent**, the only independent claim asserted from the '510 Patent, recites:

> A method for use with a web server that responds to Hypertext Transfer Protocol (HTTP) requests and stores a first content identified by a first content identifier, the method by a first client device comprising:
> establishing a Transmission Control Protocol (TCP) connection with a second server;
> sending, to the web server over an Internet, the first content identifier;
> receiving, the first content from the web server over the Internet in response to the sending of the first content identifier; and
> sending the received first content, to the second server over the established TCP connection, in response to the receiving of the first content identifier.

(Dkt. No. 1-3 at 19:18–31). In the Claim Construction Order, the term "client device" in the '319 and '510 Patents is construed as "communication device that is operating in the role of a client." (Dkt. No. 191 at 10–12). The term "second server" is construed as "server that is not the client device." (*Id*. at 13–14). **Claim 1 of the '614 Patent**, the only independent claim asserted from the '614 Patent, recites:

> A method for use with a resource associated with a criterion in a client device that communicates with a first server over the Internet, the client device is

5

> identified in the Internet using a first identifier and is associated with first and second state according to a utilization of the resource, the method comprising:
>> initiating, by the client device, communication with the first server over the Internet in response to connecting to the Internet, the communication comprises sending, by the client device, the first identifier to the first server over the Internet;
>> when connected to the Internet, periodically or continuously determining whether the resource utilization satisfies the criterion;
>> responsive to the determining that the utilization of the resource satisfies the criterion, shifting to the first state or staying in the first state;
>> responsive to the determining that the utilization of the resource does not satisfy the criterion, shifting to the second state or staying in the second state;
>> responsive to being in the first state, receiving, by the client device, a request from the first server; and
>> performing a task, by the client device, in response to the receiving of the request from the first server,
>> wherein the method is further configured for fetching over the Internet a first content identified by a first content identifier from a web server that is distinct from the first server, and the task comprising:
>>> receiving, by the client device, the first content identifier from the first server;
>>> sending, by the client device, the first content identifier to the web server;
>>> receiving, by the client device, the first content from the web server in response to the sending of the first content identifier; and
>>> sending, by the client device, the received first content to the first server.

(Dkt. No. 1-1 at 173:44–174:13). In the '614 Patent, "client device" is construed as "device operating in the role of a client by requesting services, functionalities, or resources from the server." (Dkt. No. 191 at 14–15). The term "first server" is construed as "server that is not the client device." (*Id*. at 16).

### C. The Parties' Contentions

Teso argues that the Court's claim construction and Luminati's arguments at the claim construction hearing support Teso's argument that the client and server terms merely refer to general purpose computers running software. (Dkt. No. 210 at 3–5). Since the Patents-in-Suit refer to software roles running on general purpose computers, Teso argues that they claim no more than

general purpose computers sending or receiving information over the Internet using an intermediary device. (*Id*. at 5).

Teso argues that Claim 1 of the '319 Patent and Claim 1 of the '510 Patent merely claim the sending and receiving of information over the Internet between client devices and servers, and are therefore abstract. (*Id*. at 15). The addition of the status determination step in Claim 1 of the '614 Patent adds "nothing beyond the routine and conventional step of indicating a device's availability based upon standard criteria such as its connectivity, battery power, or CPU usage." (*Id*. at 16). Further, Teso argues, the dependent claims asserted in this case do not add anything more than conventional steps recited at a high level, and thus fail for the same reasons. (*Id*. at 15, 16) (citing *Mayo*, 566 U.S. at 82). In essence, Teso's argument is that the Asserted Claims are abstract because they describe the typical human interaction of communicating through an intermediary being performed by general purpose computers. (*Id*. at 17–18). Teso also argues that nothing in the Asserted Claims converts the abstract idea into an inventive concept under Step Two of *Alice*. (*Id*. at 19).

Luminati argues that the claimed invention goes beyond mere communications between devices over the Internet, but that the Patents-in-Suit are directed to a new and improved network architecture that operates over the Internet. (Dkt. No. 224 at 12). The invention solves a technical problem with fetching Internet content, Luminati argues, and is therefore not abstract. (*Id*.) The traditional client-server architecture limited client devices to making requests and receiving content, but not acting as peer-proxies. (*Id*. at 13). Luminati argues that the situation is different from human interactions, in part because the Patents-in-Suit recite modifications to client devices, such as software installation, to allow client devices to perform in the recited roles. (*Id*. at 14). Should the Court reach *Alice* Step Two, Luminati argues that Step Two is satisfied because the

7

claims recite inventive concepts. (*Id*. at 20). Further, Luminati argues that judgment on the pleadings is an inappropriate disposition of the factual inquiry involved in *Alice* Step Two. (*Id*. at 23).

### D. *Alice* Step One

Teso cites *Specialized Monitoring Solutions, LLC v. ADT LLC*, in which the asserted patents claimed a database which stored coded messages and provided access to such messages over the Internet. 367 F. Supp. 3d 575, 585 (E.D. Tex. Feb. 7, 2019) (Bryson, Circuit Judge). In that case, "[t]he claims [did] not recite improvements in technology that help[ed] perform those steps or describe[d] any means of accomplishing those steps other than through the use of a generic computer and commonplace communication networks . . ." *Id*. In contrast, the methods claimed in this case, while including generic computers and common Internet communication protocols, recite a broader network that is *itself* the claimed improvement. Rather than a mere categorization of data, the pairing of servers and peer-proxies describes a network structure that improves the ability of those actors to communicate.

Teso analogizes this case to *Reese v. Sprint Nextel Corp.*, in which the Federal Circuit held that claims reciting methods for the sending and receiving of information were abstract. (*Id*. at 13) (citing 774 Fed. App'x. 656 (Fed. Cir. 2019)). In *Reese*, the patent claims were directed to receiving information—a calling phone number—and sending information—a tone. 774 Fed. App'x. at 660. However, unlike in this case, the patents in *Reese* were "akin to concepts of receiving and displaying (indicating) information . . . that fall into a familiar class of claims directed to abstract ideas." *Id*. If the claimed methods in this case were simply the receipt and forwarding of information over the Internet, Teso might have a compelling argument. However, it

8

is the use of non-traditional client devices that transforms the Asserted Claims into non-abstract subject matter.

Teso also compares this case to *Elec. Pwr. Grp., LLC v. Alstom S.A.*, another case in which the Federal Circuit held that the act of collecting and receiving information, without more, is abstract. (*Id.* at 14) (citing 830 F.3d 1350, 1353 (Fed. Cir. 2016)). In *Electric Power*, the Federal Circuit categorized the collection of information, the mere analysis of information akin to mental steps or by algorithms, and the resulting presentation of that collection and analysis, as abstract. 830 F.3d at 1353–54. As noted above, it is not the individual steps of the method that render the Asserted Claims non-abstract, it is the network architecture as a whole.

Teso argues that *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020) is "right on point." (Dkt. No. 293 at 29:19). In *Ericsson*, the claimed process of controlling access to resources was "exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper . . . .'" 955 F.3d at 1327 (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). However, this case differs from *Ericsson* in that an improvement in network design that addresses the problem of congested networks goes beyond the mere control of access to resources. This is not something a human being can perform using a pen and pad.

The Court finds the instant situation more comparable to *SRI Int'l, Inc. v. Cisco Sys., Inc.*, in which the Federal Circuit concluded that the claimed invention was "directed to an improvement in computer network technology." 930 F.3d 1295, 1303 (Fed. Cir. 2019). Although the purpose of the invention in *SRI* was to improve security by monitoring network traffic, and the Asserted Claims in this case are not designed to improve network security, the Court concludes that the Asserted Claims here are similarly "directed to a technological solution to a technological

9

problem." *Id*. The specifications of the Patents-in-Suit state that the inventions were designed to solve a technological problem: the increased use of bandwidth on the Internet, which slows down networks and increases costs for content providers and Internet Service Providers. (*See, e.g.*, Dkt. No. 1-1 at 1:42–57; Dkt. No. 1-3 at 1:32–60). The use of a non-traditional network structure with a client device acting as a proxy is designed to produce "faster and more efficient data communication within a communication network." (Dkt. No. 1-2 at 4:41–43).

Even more analogous to this case is *Packet Intelligence LLC v. NetScout Sys., Inc*., 965 F.3d 1299 (Fed. Cir. 2020). In *Packet Intelligence*, the Federal Circuit held that a method for monitoring a stream of packets (a "connection flow") exchanged over a computer network was not abstract. *Id*. at 1309–10. Affirming this Court's findings in that case, the Federal Circuit described the representative claim as "meet[ing] a challenge unique to computer networks, identifying disjointed connection flows in a network environment." *Id*. at 1309. Here, as in *Packet Intelligence*, the Asserted Claims address a technological problem unique to computer networks. The Federal Circuit also found that the patent in *Packet Intelligence* "solves a technological problem by identifying and refining a conversational flow such that different connection flows can be associated with each other and ultimately with an underlying application or protocol." *Id*. Likewise, the Asserted Claims here provide a technological solution by routing server requests and receipts through non-traditional client devices, and adding in the '614 Patent the additional step of determining whether the client device is available to perform that function.

The Court is not persuaded that the use of general purpose computers transforms the idea into something abstract. "Software can make non-abstract improvements to computer technology just as hardware improvements can, and sometimes the improvements can be accomplished through either route." *Enfish*, 822 F.3d at 1335. The Court here notes that in their claim

10

construction briefing, Teso specifically represented that they would not take the position that they would later assert that client devices and servers are interchangeable general use computers. (*See* Dkt. No. 138 at 11). However, they appear to have taken that position anyway.[1] (*See id.*). The Court finds that the Patents-in-Suit are not abstract because they make use of general-purpose computers, given that the specifications[2] of the Patents-in-Suit describe the functionality as being "provided by software stored within each communication device." (Dkt. No. 1-1 at 83:6–15; Dkt. No. 1-2 at 5:46–48; Dkt. No. 1-3 at 4:48–50). Teso's counsel acknowledged in the hearing that if the claims "concerned a non-abstract software . . . that actually caused a technological improvement . . . putting it on a general purpose computer or using that does not . . . somehow cause it to become abstract." (Dkt. No. 293 at 16:14–18). Teso's counsel also acknowledged that a technological solution could be brought about through the sending and receiving of information through general purpose computers—in other words, that the use of a general purpose computer sending and receiving information was not *per se* abstract. (*Id.* at 32:2–33:6). This reality aside, the Step One analysis leads the Court to conclude that these claims are not abstract but, in fact, bring a new technological solution to an existing technological problem.

### E.  *Alice* Step Two

Having concluded that the Asserted Claims are not abstract, the Court does not reach *Alice* Step Two. However, even if the Court reached the opposite conclusion regarding Step One, the question as to whether the Asserted Claims are well-understood, routine, and conventional would contain questions of fact. *See Berkheimer*, 881 F.3d at 1369. On the face of the pleadings, there are factual disputes between the parties on this issue. Accordingly, a judgment on the pleadings

---

[1] Notably, Magistrate Judge Payne took specific note of Teso's position in the Claim Construction Order. (Dkt. No. 191 at 15).
[2] When determining patent-eligibility, the Court considers the claims as a whole and reads the claims in light of the specification. *Data Engine Techs. LLC. v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018).

would be inappropriate, even if the Court had reached the opposite conclusion as to Step One and found that the Asserted Claims are directed to an abstract concept.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Teso's Motion should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 12th day of February, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE