IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Luminati Networks Ltd., <br><br> Plaintiff, <br><br> v. <br><br> Teso LT, UAB, Oxysales, UAB, and Metacluster LT, UAB, <br><br> Defendants. | Civil Action No. <br> 2:19-cv-00395-JRG <br><br> Lead Case <br><br> FILED UNDER SEAL |

## OXYLABS' MOTIONS IN LIMINE

SIEBMAN, FORREST,
BURG & SMITH LLP

MICHAEL C. SMITH

CHARHON CALLAHAN
ROBSON & GARZA, PLLC

STEVEN CALLAHAN
CRAIG TOLLIVER
GEORGE T. "JORDE" SCOTT
MITCHELL SIBLEY

*Counsel for Teso LT, UAB, Oxysales, UAB,
and Metacluster LT, UAB*

March 8, 2021

## TABLE OF CONTENTS

1.  Any reference to Oxylabs' corporate reorganization or suggestion that the reorganization was undertaken for any improper purpose ................................... 1

2.  Any suggestion that Oxylabs "copied" the Asserted Patents or "stole" Luminati's technology ...................................................................... 1

3.  Any reference to or evidence concerning the website www.darksideofluminati.com or Oxylabs' "Bust the Bully" prior-art campaign ................................................ 2

4.  Any reference to or purported evidence that Oxylabs "hacked" Luminati ........................ 3

5.  Any reference to or evidence concerning Oxylabs contacting former Luminati employees in connection with the *Tesonet* case ..................................... 3

6.  Any reference to or evidence concerning Oxylabs' owners' past or present businesses or investments (other than the Oxylabs entities) .............................. 3

7.  Any comparison of the invalidity burden of proof to any other type of case that applies a "clear and convincing evidence" burden of proof ............................ 4

8.  Any suggestion that Luminati invented "residential" proxies, or that the asserted claims cover "residential" proxy networks or systems with a large number of devices ............... 4

9.  Any reference to or evidence concerning third-party products allegedly infringing the Asserted Patents ......................................................... 5

10. Any reference to or evidence concerning EMK's purchase of Luminati for an "enterprise value" of $200 million or that the purchase was motivated by or valued the Asserted Patents ......................................................... 5

11. Any attempt to "bolster" the U.S. Patent & Trademark Office or the Asserted Patents .... 6

12. Any reference to or evidence concerning Oxylabs not obtaining or producing an opinion of counsel .......................................................... 6

13. Any question or argument designed to make Oxylabs invoke privilege ........................... 6

14. Any testimony from Luminati's experts not disclosed within their expert reports ............ 7

15. Any attempt to introduce into evidence or to refer to any document written in a language other than English, including "machine" translations ..................... 7

16. Any suggestion that Dr. Ugone's reasonable-royalty opinion is improper or "too low" because ███████████████████████████████████████ ████████████████████████ .................................................. 8

17. Any reference to any previous *Daubert* ruling involving Oxylabs' experts ...................... 8

18. Any reference to or evidence concerning this Court's April 8, 2020 ruling in *Tesonet* concerning Oxylabs' press releases relating to the conclusion of the *Tesonet* case .................................................. 9

19.  Any reference to or evidence concerning Oxylabs'
████████████████████████ ...................................................................... 9

20.  Any suggestion that Oxylabs' ████████████████████
█████████████████ or were otherwise improper ................................ 9

21.  Any suggestion or evidence that Luminati's non-patent claims
have caused Luminati any harm or damages ................................................. 10

22.  Any reference to or evidence concerning unasserted Luminati patents .......................... 10

23.  Any testimony or evidence concerning motions filed by Oxylabs that were
denied, or Oxylabs' claims that were dismissed by the Court ......................................... 10

24.  Any attempt by Luminati to contradict the Court's
Claim Construction Opinion and Order (ECF No. 191) or its reasoning ........................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002)................................................................................2

*Island Intellectual Prop. LLC v. Deutsche Bank AG*,
    09-CV-2675, 2012 WL 526722 (S.D.N.Y. Feb. 14, 2012)......................................8

*Mahurkar v. C.R. Bard, Inc.*,
    79 F.3d 1572 (Fed. Cir. 1996)................................................................................8

*Meridian Mfg., Inc. v. C & B Mfg., Inc.*,
    340 F. Supp. 3d 808 (N.D. Iowa 2018)..................................................................8

*Ohio Willow Wood Co. v. Alps S., LLC*,
    735 F.3d 1333 (Fed. Cir. 2013)..............................................................................2

*Paice LLC v. Toyota Motor Corp.*,
    609 F. Supp. 2d 620 (E.D. Tex. 2009)..................................................................14

*Smartflash LLC v. Apple Inc*,
    13-CV-447, 2015 WL 11089593 (E.D. Tex. Jan. 29, 2015)..................................14

*SSL Services, LLC v. Citrix Sys., Inc.*,
    940 F. Supp. 2d 480 (E.D. Tex. 2013)..................................................................14

*Sunoco Partners v. Powder Springs*,
    17-CV-1390 (D. Del. June 9, 2020)........................................................................8

*United States v. Rivera-Rosario*,
    300 F.3d 1 (1st Cir. 2002)......................................................................................7

*Watts v. XL Sys., Inc.*,
    232 F.3d 877 (Fed. Cir. 2000)................................................................................5

**STATUTES**

35 U.S.C. § 298.............................................................................................................6

48 U.S.C. § 864.............................................................................................................7

Oxylabs files these Motions in Limine, and respectfully requests that the Court preclude Luminati, its attorneys, and its witnesses from referencing or introducing any evidence relating to the following subjects before the jury or prospective jurors, unless and until Luminati approaches the bench and obtains a ruling that the matter is permissible. Each of the subjects listed below is irrelevant to the issues involved in this case (*see* Fed. R. Evid. 401-402), or otherwise not admissible. Further, any probative value of the matters is far outweighed by their prejudicial effect (*see* Fed. R. Evid. 403).

**1.      Any reference to Oxylabs' corporate reorganization or suggestion that the reorganization was undertaken for any improper purpose**

In 2018, Oxylabs underwent a corporate reorganization whereby UAB Tesonet changed its name to UAB Teso LT (the entity that offers the accused residential proxy product) and "spun off" the accused Real Time Crawler product into a new entity named UAB Metacluster LT. Luminati filed this case in December 2019, and asserts infringement of three patents ("Asserted Patents") that issued in April 2019 ('319 patent and '510 patent) and November 2019 ('614 patent). The reorganization is not relevant to any issue in this case. Nevertheless, in the past, Luminati has intimated that the reorganization was done for some improper purpose, or because of the past lawsuit styled *Luminati v. Tesonet*, 2:18-cv-00299-JRG (E.D. Tex.) ("*Tesonet*")—neither of which is true. Regardless, the Oxylabs entities that sell the accused products are parties to this case, and there is thus no reason to reference the reorganization, and certainly no reason to suggest that it took place for an improper purpose.

**2.      Any suggestion that Oxylabs "copied" the Asserted Patents or "stole" Luminati's technology**

The Asserted Patents issued well after Oxylabs introduced the accused products, and there is no evidence that Oxylabs copied the Asserted Patents or otherwise "stole" Luminati's technology. Luminati's "copying" allegations are irrelevant for several reasons. First, copying is

1

irrelevant to the infringement inquiry. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002). Second, Luminati's allegations are irrelevant to secondary considerations of non-obviousness because no nexus exists between any alleged copying and the asserted claims of the Asserted Patents. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013) (requiring "nexus between the secondary indicia and the patented inventions" to exist, including regarding copying). Third, the allegations are irrelevant to willfulness, because the Court should grant Oxylabs' summary judgment motion as to no willfulness (ECF No. 269) and there is no nexus between the limitations of the asserted claims and the alleged copying (e.g., such that there is no intent to infringe based on any alleged "copying"). Fourth, allegations of copying are extremely prejudicial as the primary purpose is to create an impermissible inference that the asserted claims are tied to unclaimed features of Luminati's residential proxy product. As such, the Court should bar Luminati from suggesting that Oxylabs "copied" the Asserted Patents or otherwise "stole" Luminati's technology.

3.     **Any reference to or evidence concerning the website www.darksideofluminati.com or Oxylabs' "Bust the Bully" prior-art campaign**

As explained in Oxylabs' Motion for Summary Judgment on Luminati's Non-Patent Claims (ECF No. 267), the Court should dismiss Luminati's claims premised on the "darksideofluminati" website (a website raising certain questions concerning Luminati and its owner, EMK) and Oxylabs' "Bust the Bully" prior-art campaign (a campaign referring to Luminati as a "bully" and offering compensation for prior art concerning patents not asserted in the current case). If this Court dismisses these claims, these subjects will be of no relevance to any issue in this case, and the only reason for Luminati to reference the subjects would be to attempt to prejudice Oxylabs before the jury.

4.      **Any reference to or purported evidence that Oxylabs "hacked" Luminati**

Luminati has a Computer Fraud and Abuse Act and Defend Trade Secret Act claim premised on its mistaken belief that Oxylabs "hacked" Luminati's computer system. As explained in Oxylabs' Motion for Summary Judgment on Luminati's Non-Patent Claims (ECF No. 267), the Court should dismiss Luminati's claims premised on such alleged "hacking" because Oxylabs did not "hack" Luminati's system or otherwise improperly obtain any Luminati confidential information. If the Court dismisses these claims, the Court should preclude Luminati from suggesting to the jury that Oxylabs "hacked" Luminati or otherwise improperly acquired any of Luminati's confidential information.

5.      **Any reference to or evidence concerning Oxylabs contacting former Luminati employees in connection with the *Tesonet* case**

As part of its defense to the past *Tesonet* case, Oxylabs contacted a number of former Luminati employees in an attempt to seek information helpful to Oxylabs. The relevant e-mails noted ███████████████████████████████████████████████████████. Luminati has suggested that these communications were improper. While the communications were proper, there is no doubt that the communications—which were largely unreturned or included responses not of any substance—are irrelevant to any issue in this case. Given this, the Court should preclude Luminati from referencing or introducing evidence concerning Oxylabs' communications with former Luminati employees.

6.      **Any reference to or evidence concerning Oxylabs' owners' past or present businesses or investments (other than the Oxylabs entities)**

Oxylabs'███████████████████████████████. ███████████ own and have owned other businesses and/or investments. Other than entities that operate under the "Oxylabs" brand (Code200, Oxysales, Teso, Metacluster, and Coretech), such other businesses and investments are irrelevant to issues in this case, and the Court should preclude Luminati from offering

3

any evidence regarding the same.

**7.      Any comparison of the invalidity burden of proof to any other type of case that ap-
plies a "clear and convincing evidence" burden of proof**

The Court will instruct the jury on the burdens of proof, including the clear-and-

convincing burden of proof that applies to invalidity. The Court should not allow Luminati to

attempt to improperly prejudice Oxylabs by arguing that invalidating a patent is akin to having

someone civilly committed, taking away one's children, etc. Accordingly, the Court should pro-

hibit Luminati from referring to any other type of case that applies a clear-and-convincing bur-

den of proof.

**8.      Any suggestion that Luminati invented "residential" proxies, or that the asserted
claims cover "residential" proxy networks or systems with a large number of
devices**

Luminati has argued that it allegedly invented a "residential" proxy network using "resi-

dential" IP addresses that, in contrast to using "data center" or commercial IP addresses, allows

for the implementation of "millions" of IP addresses that "belong to real people." *See, e.g.*, Op.

Cl. Construction Br. at 4; *Tesonet*, ECF No. 195 at 2-4. Luminati has never been able to explain

how this alleged "residential" proxy network is tethered to its patent claims. That is because a

"residential" network is not in the claims. To begin with, the patents never once use the word

"residential." And, in any event, it is the asserted claims that control the infringement inquiry.

The asserted claims do not require a "residential" network with millions of proxies. Indeed, the

claims do not say anything about whether the proxies are residential or commercial, whether the

proxies are owned by "real people" or businesses, or contain any other similar limitations. The

Court should thus preclude Luminati from falsely suggesting to the jury that its claims cover all

"residential" proxy networks or all proxy networks that use large numbers of proxies, because

any such suggestion would mislead the jury regarding the scope of Luminati's claims.[1]

**9.      Any reference to or evidence concerning third-party products allegedly infringing the Asserted Patents**

Luminati's employees apparently believe that any entity offering "residential" proxies in the marketplace infringes Luminati's patents. But Luminati has no evidence in this case that any third-party product ("residential" or not) infringes. For example, Luminati's technical expert did not disclose an opinion that any third-party product infringes, nor has Luminati otherwise compared its asserted claims to any third-party product, despite an Oxylabs interrogatory calling for this information. *See* Ex. 1 ███████████████████████████████████████ ████████████████████████████ The infringement inquiry, of course, requires (i) the Court to construe the claims and (ii) a comparison of the properly construed claims to the accused device. *See, e.g.*, *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000). Because Luminati's fact witnesses are not competent to testify on infringement, and Luminati's technical expert disclosed no opinion regarding third-party infringement, the Court should preclude Luminati from arguing or offering any evidence that any third-party product infringes.

**10.     Any reference to or evidence concerning EMK's purchase of Luminati for an "enterprise value" of $200 million or that the purchase was motivated by or valued the Asserted Patents**

Luminati is majority owned by a private-equity firm called EMK Capital. EMK acquired Luminati in 2017. The relevant press release states that the acquisition was "for an enterprise value of $200m." The Court should exclude any purported valuation of Luminati or the Asserted Patents for several reasons. First, there is no evidence as to what value (if any) EMK placed on any of Luminati's patents, much less the Asserted Patents. Second, the damages inquiry does not depend on a company's valuation, and Luminati's damages expert does not contend otherwise.

---

[1]   The Court should also not allow Luminati to use similar language to describe the scope of its claims, including by making any reference to its alleged invention of a "new network."

Third, none of the Asserted Patents existed in 2017. Fourth, two of the three Asserted Patents were not originally owned by Luminati ██████████████████████████████ ██████████████████████████████ ). For these reasons, any valuation of Luminati or the Asserted Patents based on EMK's purchase of Luminati is irrelevant, and would only serve to prejudice Oxylabs.

**11.     Any attempt to "bolster" the U.S. Patent & Trademark Office or the Asserted Patents**

The Court should preclude Luminati from attempting to "bolster" the U.S. Patent & Trademark Office or the patent examiner who examined the Asserted Patents. This would include, for example, any suggestion or testimony that the Asserted Patents were subject to a "rigorous" examination, are "long," disclosed a "large" amount of prior art, or have "large" file histories. There is no evidence that the Asserted Patents underwent a "rigorous" examination (in fact, the evidence suggests the opposite), and any such argument would not only be irrelevant, but also unduly prejudicial to Oxylabs.

**12.     Any reference to or evidence concerning Oxylabs not obtaining or producing an opinion of counsel**

Oxylabs has not disclosed an opinion of counsel in this case. Whether Oxylabs did or did not obtain an opinion of counsel is of no relevance to any issue in this case and, in fact, cannot be referenced or argued pursuant to statute. *See* 35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent.").

**13.     Any question or argument designed to make Oxylabs invoke privilege**

The Court should preclude Luminati from asking any question or making any argument

designed to make Oxylabs invoke privilege. Invoking privilege before the jury would likely cause the jury to assume that Oxylabs was hiding something, and would do nothing other than prejudice Oxylabs' case.

**14.     Any testimony from Luminati's experts not disclosed within their expert reports**

Rule 26(a)(2)(B) required Luminati's experts to provide a written report that contained "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them[.]" Accordingly, the Court should preclude Luminati's experts from testifying as to any opinion, fact, or data not properly disclosed in their expert reports.

**15.     Any attempt to introduce into evidence or to refer to any document written in a language other than English, including "machine" translations**

Many of the documents Oxylabs produced in this case were written in Lithuanian. Of course, US courts conduct proceedings in English,[2] and it is unlikely that any juror could read or understand Lithuanian in any event. As such, the Court should not allow Luminati to introduce or comment on any documents written in Lithuanian. If Luminati obtained a properly certified translation of a foreign-language document, the document might be admissible. But Luminati has listed on its exhibit list numerous "machine" translations—none of which is admissible. The "machine" translations were provided in the *Tesonet* case pursuant to the parties' agreement to provide one another with "machine" (i.e., computer-generated) translations of foreign-language documents. Such "machine" translations are not terribly good (and, in fact, in certain instances constitute complete mistranslations), and in any event, are neither translations made by an interpreter nor not certified translations. *See* Fed. R. Evid. 604 ("An interpreter must be qualified and

---

[2]     *United States v. Rivera-Rosario*, 300 F.3d 1, 5 (1st Cir. 2002) ("It is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English."); 48 U.S.C. § 864.

must give an oath or affirmation to make a true translation."). Accordingly, they are not admissible.

**16.    Any suggestion that Dr. Ugone's reasonable-royalty opinion is improper or "too low" because** ███████████████████████████████████████████████

███████████████████████████

Luminati moved to strike Dr. Ugone's reasonable-royalty opinion and argued that his opinion was improper because the amount he proffered as a reasonable royalty was ████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████. But such amounts have no relevance to the reasonable-royalty inquiry.[3] As such, the Court should preclude Luminati from making this improper argument to the jury.

**17.    Any reference to any previous *Daubert* ruling involving Oxylabs' experts**

In Dr. Ugone's deposition, Luminati questioned him concerning two instances wherein courts precluded certain of his opinions: the *Contour* and *Sunoco* cases where courts took issue with certain of Dr. Ugone's opinions offered on behalf of patent holders in cases involving video cameras and butane, respectively.[4] The rulings also appear on Luminati's trial exhibit list (at PTX-412; PTX-413). The courts' rulings in these cases have no relevance to Dr. Ugone's opinions in the instant case, and introduction of such rulings would serve only to unduly prejudice

---

[3]    *See, e.g., Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1581 (Fed. Cir. 1996) (precluding "additional damages or a 'kicker' on top of a reasonable royalty because of heavy litigation or other expenses"); *Meridian Mfg., Inc. v. C & B Mfg., Inc.*, 340 F. Supp. 3d 808, 847 (N.D. Iowa 2018) ("[L]itigation costs are irrelevant to the reasonable royalty consideration. The hypothetical reasonable calculation must occur before the litigation because litigation can 'skew the results' of the negotiation."); *Island Intellectual Prop. LLC v. Deutsche Bank AG*, 09-CV-2675, 2012 WL 526722, at *11 (S.D.N.Y. Feb. 14, 2012) ("[P]laintiffs are precluded from asserting that a reasonable royalty should include plaintiffs' litigation expenses or from providing any evidence in furtherance of such a theory.").

[4]    *Contour Ip Holding, LLC*, 17-CV-04738, 2021 WL 75666 (N.D. Cal. Jan. 8, 2021) and *Sunoco Partners v. Powder Springs*, 17-CV-1390 (D. Del. June 9, 2020) (ECF No. 547).

Oxylabs, waste time, and confuse the jury.

18.     **Any reference to or evidence concerning this Court's April 8, 2020 ruling in *Tesonet* concerning Oxylabs' press releases relating to the conclusion of the *Tesonet* case**

In *Tesonet*, the Court found fault with Oxylabs' March 2020 press releases concerning the resolution of the *Tesonet* case (*see Tesonet*, ECF No. 351) and required Oxylabs to take certain steps including the issuance of a subsequent press release (*id.*)—which Oxylabs did (*see Tesonet*, ECF No. 354 at 3-5). Oxylabs' March 2020 press releases and the Court's related Order have no relevance to the issues in the instant case and reference to such subjects before the jury would serve only to unduly prejudice Oxylabs.

19.     **Any reference to or evidence concerning Oxylabs'** ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮



About a year ago, Oxylabs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮. ECF No. 202, Luminati's Mot. to De-Designate Dep. Testimony at

2-4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—it does not involve

Oxylabs, and it certainly does not involve any issue that the jury would consider in this case. As

such, the Court should preclude Luminati from referencing ▮▮▮▮▮▮▮▮ or sug-

gesting to the jury that anything untoward occurred with respect to such discussions.

20.     **Any suggestion that Oxylabs'** ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮ **or were otherwise improper**

Over a year ago, Oxylabs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮. ECF No. 203, Luminati's Mot. to De-Designate Dep. Testimony at 2.

Luminati suggests ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 3. Here again, Oxylabs submits that this is

an issue between Luminati ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ have no

relevance to the instant case. Accordingly, the Court should preclude Luminati from arguing to

the jury that Oxylabs' ██████████████████████████████████████████████████████

██████████████████████████████████████████.

21.     **Any suggestion or evidence that Luminati's non-patent claims have caused Luminati any harm or damages**

Regarding Luminati's non-patent claims, Luminati's damages expert did not disclose a

damages opinion, Luminati disclosed no damages in its mandatory disclosures, Luminati's inter-

rogatory responses did not disclose any damages, and Luminati's Rule 30(b)(6) witness ████████

█████████████████████████. *See* Oxylabs' Mot. for Summary Judgment on Luminati's

Non-Patent Claims, ECF No. 267 at 2-3, 4 n.8, 7 n.13, 8 n.16. The Court should thus preclude

Luminati from offering any suggestion or evidence that it suffered damages or harm concerning

Luminati's non-patent claims (to the extent that such claims survive summary judgment). *See*

Fed. R. Civ. P. 37(b)(2)(A)(ii), (c)(1).

22.     **Any reference to or evidence concerning unasserted Luminati patents**

Luminati asserts three patents in this case. Other than the patent-at-issue in the *Tesonet*

case, the Court should not allow Luminati to introduce evidence regarding Luminati's unasserted

patents, including those patents asserted against Oxylabs in the co-pending *Code200* case (where

the accused products are data center proxies). *See Luminati v. Code200*, 2:19-cv-00396-JRG

(E.D. Tex.), ECF No. 26, Am. Compl. Whether Luminati owns many patents is not relevant to

any issue in this case, and evidence concerning the number of patents held by Luminati would

only serve to improperly prejudice the jury against Oxylabs.

23.     **Any testimony or evidence concerning motions filed by Oxylabs that were denied, or Oxylabs' claims that were dismissed by the Court**

The Court denied Oxylabs' *Alice* motion for judgment on the pleadings and dismissed

Oxylabs' conspiracy antitrust claim after finding that Luminati could not conspire with its related

entities because the entities did not have separate decisionmakers. ECF No. 196, 303. The Court should not allow Luminati to reference these rulings (or any other rulings adverse to Oxylabs) as such rulings will not have any relevance to any issues that the jury will decide.

**24.    Any attempt by Luminati to contradict the Court's Claim Construction Opinion and Order (ECF No. 191) or its reasoning**

The Court's claim construction opinion governs the meaning of the construed claim terms and the Court should not permit Luminati to make any argument or offer any evidence that contradicts the Court's claim constructions or reasoning.[5] For example, the Court **rejected** Luminati's claim construction argument that "client device" meant a "consumer computer" and further **rejected** Luminati's argument that "a client device is specifically <u>not</u> a server[.]" ECF No. 191 at 11 (emphasis added). The Court specifically contemplated that a "client device" could "act as a server" (*id.* at 12) and ultimately construed "client device" (with respect to the '319 and '510 patents) as a "communication device that is operating in the role of a client" (*id.*) and (with respect to the '614 patent) as a "device operating in the role of a client by requesting services, functionalities, or resources from the server" (*id.* at 15).[6]

Similarly, in the co-pending *Code200* case (involving a common specification), the Court's Claim Construction Order "reiterate[d] and adopt[ed] the reasoning and ruling" of the Claim Construction Order in this case as to "client device." *Code200*, ECF No. 97 at 13. The

---

[5]    Oxylabs notes that, in the co-pending *Code200* case, the Court's claim construction order states that "the parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning." *See Luminati v. Code200*, 2:19-cv-00396-JRG (E.D. Tex.), ECF No. 97 at 37. Oxylabs respectfully requests that the Court adopt this same provision in the instant case.

[6]    The Court also noted that "**[c]lient**, peer, agent, and **server** are <u>roles</u> a device can perform" (ECF No. at 14 (emphases added))—which again constitutes a rejection of Luminati's position that a "client device" could not be a "server." Additionally, the Court construed "second server" as a "server that is not the client device" (*id.*) and "first server" as a "server that is not the client device" (*id.* at 16)—if a "client device" could not be a server (as Luminati continues to maintain), then these constructions would not have been necessary.

Court **rejected** Luminati's argument that a "client device" is a "consumer computer, such as a laptop, desktop, or smartphone" and "distinct from the 'servers' of the patents, which may encompass devices such as server farms and data centers." *Id.* at 11. The Court noted that Luminati had argued that "[t]here is a distinction between a client device acting as a server and a server" and ultimately **rejected** this argument stating that "the client device is defined **by the <u>role</u>** of the communication device as a client **rather than by the components** of the device and **regardless of any additional role the device may serve, including as a server**." *Id.* at 12, 13 (emphases added).

Despite all of this, Luminati and its expert (Dr. Rhyne) still argue that a "client device" is "specifically not a server." *See* Oxylabs' Mot. for Summary Judgment of Invalidity, ECF No. 277 at 2 (citing Dr. Rhyne's testimony). The Court should preclude such testimony and argument, as it is the direct opposite of the Court's claim construction.

12

Dated: March 8, 2021        Respectfully submitted,

MICHAEL C. SMITH
  Texas State Bar No. 18650410
  michaelsmith@siebman.com
**SIEBMAN, FORREST,**
**BURG & SMITH LLP**
113 East Austin Street
Marshall, Texas 75671
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CRAIG TOLLIVER
  Texas State Bar No. 24028049
  ctolliver@ccrglaw.com
GEORGE T. "JORDE" SCOTT
  Texas State Bar No. 24061276
  jscott@ccrglaw.com
MITCHELL SIBLEY
  Texas State Bar No. 24073097
  msibley@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Teso LT, UAB, Oxysales, UAB,*
*and Metacluster LT, UAB*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that he met and conferred with Luminati's counsel, Robert Harkins, Esq. and Ronald Wielkopolski, Esq., on March 8, 2021, and that Luminati is opposed to the relief requested in the foregoing motion.

STEVEN CALLAHAN

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on March 8, 2021. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). The foregoing document has also been served on Luminati's counsel, Sunny Cherian, Esq., by e-mail on March 8, 2021.

STEVEN CALLAHAN

## CERTIFICATE OF AUTHORIZATION TO SEAL

The undersigned certifies that the foregoing pleading is filed under seal pursuant to the Court's Protective Order.

STEVEN CALLAHAN

14