**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| BRIGHT DATA LTD., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:19-cv-00396-JRG |
| TESO LT, UAB, OXYSALES, UAB, and | § | |
| METACLUSTER LT, UAB | § | Case No. 2:19-cv-00395-JRG |
| | § | |
| | § | |
| CODE200, UAB ET AL., | § | |
| | § | |
| *Defendants*. | § | |

## <u>SUPPLEMENTAL CLAIM CONSTRUCTION ORDER</u>

Before the Court are three motions regarding claim construction issues. The first motion is the Request for Clarification / Objections to Magistrate Judge Payne's Claim Construction Order ("Clarification Request") filed by Plaintiff Bright Data Ltd., formerly Luminati Networks Ltd. ("Plaintiff") in Case No. 2:19-cv-00396-JRG ("*Code200* Action"). **Dkt. No. 102**. Plaintiff's Clarification Request seeks clarification and revision of the Claim Construction Order (*Code200* Action, Dkt. No. 97) as to two construed terms: (1) U.S. Patent No. 10,484,511 (the "'511 Patent") claim 1 regarding "sending . . . the first content identifier to the web server using the selected IP address"; and (2) '511 Patent claim 25 regarding "source address." *Id.* at 4–8.

The second motion is the Motion for Hearing Regarding *O2 Micro* Issue ("Motion for Hearing") filed by Defendants Code200, UAB, Oxysales, UAB, and Metacluster LT, UAB (collectively, "Code200 Defendants") in the *Code200* Action and by Defendants Teso LT, UAB, Oxysales, UAB, and Metacluster LT, UAB (collectively, "Teso Defendants") (collectively, "Defendants") in Case No. 2:19-cv-00395-JRG ("*Teso* Action"). ***Code200* Action, Dkt. No. 234**; ***Teso* Action, Dkt. No. 444**. Defendants' Motion for Hearing asserts that Plaintiff's rebuttal

1

validity expert report takes a position as to the claim scope of "server" that requires the Court's intervention and requests four alleged clarifications that revise the Court's existing claim constructions for the terms "first server" and "second server" in certain patents. *Id.* at 1–2.

On April 20, 2021, the Court granted an unopposed motion for leave to supplement briefing on Plaintiff's Clarification Request. *Code200* Action, Dkt. No. 143. Accordingly, Plaintiff's Clarification Request briefing includes Code200 Defendants' Response (*Code200* Action, Dkt. No. 110), Plaintiff's Reply (*Code200* Action, Dkt. No. 163), and Defendants' Sur-Reply (*Code200* Action, Dkt. No. 179).

## I.      "Source Address"

During claim construction, Plaintiff proposed the term "source address" be construed to have its plain and ordinary meaning while Code200 Defendants sought a finding of indefiniteness. *Code200* Action, Dkt. No. 97 at 23. The Court construed "source address" to mean "address of the web server." *Id.* at 27. Plaintiff seeks to "clarify" that "source address" refers to "the IP address of the sender of a communication" and "not the IP address of the web server." *Code200* Action, Dkt. No. 102 at 6.

Plaintiff argues, as it asserts it did at oral argument, that the plain meaning of "source address" to a POSA is the sender's IP address. *Id.* at 4. Plaintiff notes that the specification never uses "source address" to refer to content and that "[r]ather, the two uses of 'source' cited in the Order ('source program' and 'sources' of content) are not used in the context of addresses." *Id.* at 4–5. Plaintiff then discusses the HTTP protocol and TCP/IP protocol, arguing that the "source address" is the address of the sender as opposed to the "destination address," which Plaintiff asserts is the address of the web server. *Id.* at 5. Plaintiff continues, "[w]hile a web server sometimes is the source of a communication, it is never the source of the claimed step of 'sending [a content

2

request] to the web server' because in that situation the web server is the destination, not the source." *Id.* at 6.

Code200 Defendants respond that this is not a clarification request, but rather a request that the Court change the construction to the opposite of what it found so that "source" refers to the IP address of the "sender" of a communication rather than the IP address of the source of the content, i.e., the web server. *Code200* Action, Dkt. No. 110 at 1. Code200 Defendants are correct.

Code200 Defendants argue that Plaintiff asserts that it argued to the Court that "source address" must be "the sender's IP address," but that the Court's Claim Construction Order demonstrated that Plaintiff argued at claim construction that "source address" has a "plain and ordinary meaning" and that "source address" refers to an "IP address associated with a source." *Id.* at 2 (citing Dkt. No. 97 at 23). The Claim Construction Order identified Plaintiff's proposed construction of "source address" as "plain and ordinary meaning," and stated, "Plaintiff submits: The 'source address' refers to an 'IP address associated with a source.'" *Code200* Action, Dkt. No. 97 at 23 (citing *Code200* Action, Dkt. No. 86 at 26–27 ("In Dr. Rhyne's opinion: '[A] POSA would understand the source address as referring to an IP address associated with a source . . .'") (quoting *Code200* Action, Dkt. No. 86-3)).

With respect to Plaintiff's note that the specification never uses "source address" to refer to content, Code200 Defendants respond that the phrase "source address" is never used in the patent written description. *See Code200* Action, Dkt. No. 110 at 2. Code200 Defendants continue, arguing that Plaintiff's argument regarding HTTP and TCP/IP misses that the specification does not ever point to HTTP or TCP/IP for a definition of "source address." *Id.* Code200 Defendants argue that Plaintiff has no basis to contest the Court's explanation as to why "source address" is limited to the address of the source of content. *Code200* Action, Dkt. No. 110 at 3.

As Code200 Defendants pointed out, Plaintiff's argument that the specification never uses "source address" to refer to content falls flat because the specification never uses the term "source address" at all. *See Code200* Action, Dkt. No. 110 (citing *Code200* Action, Dkt. No. 88 at 17 (citing *Code200* Action, Dkt. No. 88-1 at ¶¶ 78–84)); *see also Code200* Action, Dkt. No. 86-1 at 1–29. Accordingly, what must be understood is what a "source" is.

The Court's Claim Construction Order previously explained that the '511 Patent's specification "suggests that 'source' is used to refer to a *content* source rather than a *communication* source." *Code200* Action, Dkt. No. 97 at 25 (emphasis added). As the Court previously stated, "ultimately, when read in the context of the entire specification, including the complete claim set and the description of the invention, the scope of 'source address' is reasonably limited to *the address of the source of content, which in Claim 1 is the web server.*" *Id.* at 26 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005); *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016)) (emphasis added).

Plaintiff requested additional briefing on their Clarification Request.  That briefing pointed to Dr. Freedman's December 31, 2020[1] declaration in which Dr. Freeman opined that a POSA would not understand what "source address" means in the context of claim 25 of the '511 Patent but then testified in his March 22, 2021 deposition that "source address" is a term of art that refers to the "sender address" rather than a "destination address." *Code200* Action, Dkt. No. 163 at 2–4. Plaintiff argues "[t]he above conflicting testimony is material to the Court's Claim Construction Order as the Court cited Code200 Defendants' argument that the 'source address' could refer to the 'source of content' . . . ." *Id.* at 4 (citing *Code200* Action, Dkt. No. 97 at 24–27).

---

[1] Plaintiffs state that "[h]ere, Dr. Freedman provided a December 31, 2021 declaration . . . ." Dkt. No. 163 at 2. The Court interprets this as a typographical error for December 31, 2020.

Code200 Defendants respond that while Plaintiff quotes Dr. Freedman's opinion in paragraphs 80-81 that "source address" could refer to the source of content, Plaintiff omits paragraph 82, where "Dr. Freedman opined that 'source address' could alternatively refer to the source of the request (i.e., sender) rather than the source of content." *Code200* Action, Dkt. No. 179 at 3 (citations omitted). Paragraph 82 of Dr. Freedman's declaration indeed provides, "[a]lternatively, the patentees could be using 'source' to refer to the source of the content request that is sent to the web server . . . ." *Code200* Action, Dkt. No. 163-2 at ¶ 82.

This is additional evidence that "source address" may be used in the art to denote a sending address. However, that the source address may be a sending address was never in dispute, and the new evidence does not restrict "source address" to sending address in the art such that it could mean only sending address in the patent. Ultimately, Plaintiff provides no new information and merely rehashes arguments already resolved and explained by the Claim Construction Order. Accordingly, the Court denies Plaintiff's request to revise the construction of "source address."

As the Court previously found, "ultimately, when read in the context of the entire specification, including the complete claim set and the description of the invention, the scope of 'source address' is reasonably limited to the address of the source of content, which in Claim 1 is the web server." *Id.* at 26 (internal citations omitted). The Court retains its previous construction that "source address" means "address of the web server." *See Code200* Action, Dkt. No. 97 at 27.

**II.      "Sending . . ."**

Plaintiff seeks clarification and revision of the construction of the '511 Patent claim 1 term "sending . . . the first content identifier to the web server using the selected IP address." *Code200* Action, Dkt. No. 102 at 6. The Court construed this term to mean "sending . . . the first content

identifier to the web server using the selected IP address as either the address of the first server or of the web server." *Code200* Action, Dkt. No. 97 at 19.

Plaintiff asserts two problems with this construction: (1) the phrase "or of the web server" should be deleted because the "source address" would never be the web server because the communication is sent "to the web server" and (2) the Order appears to inadvertently omit intermediaries from IP addresses that can be used for sending. *Code200* Action, Dkt. No. 102 at 7. Plaintiff's objection "requests that the Court clarify that the construction does not exclude intermediaries such as the 'client device' of claims 2–5." *Id.* at 8.

With respect to Plaintiff's argument that the phrase "or of the web server" should be deleted because the "source address" would never be the web server, neither the claims nor the description of the invention exclude the address of the "web server" as the selected IP address. As Code200 Defendants note, Plaintiff points to the "incorrect construction" of "source address" as allegedly causing the Court to insert "or of the web server" in the construction. *See Code200* Action, Dkt. No. 110 at 4; *see also Code200* Action, Dkt. No. 102 at 7. Plaintiff's argument carries over error from its rejected "source address" argument. Because the "source address" is the address of the web server, then the "selected IP address" of claim 1 may be used as the address of the web server.

The Court's construction is specific to '511 Patent claim 1. While the Court did state, "the role played by the IP address used in the sending step, read in light of the entire specification, is reasonably limited to using the IP address as a sending address or a receiving address (including intermediaries)," the Court's statement read the claim in light of the entire specification. *See Code200* Action, Dkt. No. 97 at 17–19. After making this statement, the Court recited Claims 1 through 4 and 25 of the '511 Patent and stated, "Claims 2 through 5 are directed to using a client device as an intermediary between the first server and the web server." *Id.* at 18. The Court

6

continued, "In contrast, Claim 25 uses the selected IP address as an address of a "source" rather than of an intermediary." *Id.*

The Court did not "inadvertently omit intermediaries from IP addresses that can be used for sending" as Plaintiff's Clarification Request suggests. *See Code200* Action, Dkt. No. 102 at 7. The Court purposefully did not include the language "including intermediaries" because although '511 Patent Claims 2–5 are directed to using a client device as an intermediary, Claim 1 and Claim 25 are not, and in fact Claim 25 uses the selected IP address as an address of a "source" rather than of an intermediary. *See Code200* Action, Dkt. No. 97 at 17–18.

The Court clarifies that the Court's construction does not exclude intermediaries specifically with respect to '511 Patent Claims 2–5. Unlike '511 Patent Claims 1 and 25, "Claims 2 through 5 are directed to using a client device as an intermediary between the first server and the web server." *See Id.* at 18. However, in light of Plaintiff's Clarification Request and in the interest of avoiding jury confusion, the Court amends the construction of "sending . . . the first content identifier to the web server using the selected IP address" to "sending . . . the first content identifier to the web server using the selected IP address as either a sending address or a receiving address." The Court emphasizes that this amendment does not change the scope of the term in any way, but merely seeks to avoid jury confusion.

## III.    "Server" Terms[2]

Defendants' Motion for Hearing requests a "clarification" of the Court's constructions of "first server" and "second server" and a hearing to address this issue in advance of pretrial

---

[2] Citations in this section are to the *Code200* Action unless identified otherwise. The motions in the *Code200* Action and *Teso* Action are nearly identical except the *Teso* Action also urges resolution of another motion. That motion will not be addressed in this order.

conferences. Dkt. No. 234 at 1–2. The table below indicates the terms at issue, the relevant patents

for those terms, their current constructions, and the requested "clarifications:"

| Term | Construction | Requested Clarification |
|---|---|---|
| "first server"<br>'614 Patent<br>*Teso* | "server that is not the client device" | "a device that is operating in the role of a server by offering information resources, services, and/or applications and that is not the client device" |
| "first server"<br>'511 Patent<br>*Code200* | "server that is not the client device or the web server" | "a device that is operating in the role of a server and that is not the first client device or the web server" |
| "second server"<br>'319/510 Patents<br>*Teso* | "server that is not the client device" | "a device that is operating in the role of a server and that is not the first client device" |
| "second server"<br>'968 Patent<br>*Code200* | "server that is not the client device or the first web server" | "a device that is operating in the role of a server and that is not the requesting client device or the first web server" |

Defendants' Motion for Hearing merely states that "it became apparent for the first time

based on Bright Data's rebuttal validity expert report that Bright Data takes a position as to the

claim scope of "server" that requires the Court's intervention to resolve the parties' dispute

pursuant to *O2 Micro* . . . ." *Id.* at 1.

Plaintiff argues that "while framed as a Motion for Hearing Regarding O2 Micro Issue

('Motion'), Defendants are clearly and improperly requesting new claim constructions on the eve

of trial that were already rejected or waived during claim construction." Dkt. No. 242 at 4.

Plaintiffs note that Defendants did not make these objections in their December 22, 2020

Objections to the Court's Claim Construction Order in *Bright Data Ltd. v. Teso lt UAB et al.*, 2:19-

cv-00395-JRG ("*Teso* Action") or in their February 22, 2021 Objections to this Court's Claim

Construction Order in the *Code200* Action. *Code200*, Dkt. No. 242 at 4 (citing *Teso* Action, Dkt.

No. 200; *Code200* Action, Dkt. No. 103).

Plaintiff contends that Defendants are seeking broad constructions that treat client devices

and servers interchangeably in contradiction of Defendants' denial that they were making such an

8

argument as noted by the Court in its construction of "client device" for the '614 Patent. *Id.* (citing *Teso* Action, Dkt. No. 191 at 15 ("[Defendants] deny that they will claim client devices and servers are interchangeable general use computers.").

Plaintiff filed their response on July 6, 2021. Defendants' reply deadline was July 13, 2021. Defendants did not file a reply.

The Court's Claim Construction Order in the *Code200* Action stated, "[t]he issue in dispute appears to be whether one component can simultaneously serve as more than one of: the client device, the first server/second server, and the web server. It cannot." Dkt. No. 97 at 13. The Court found the recited operation of the claims suggests a distinction among these components and that claim 1 of the '511 Patent "plainly is directed to a 'first server' acting as an intermediary between the 'client device' and 'second server.'" *Id.* at 15. Defendants' requested clarifications for the *Code200* Action server terms do not challenge this but rather ask the Court to define the "server" in these terms as "a device that is operating in the role of a server" and replace "the client device" with "the requesting client device." Dkt. No. 234 at 2. Defendants' requested clarifications for the *Teso* Action "second server" term likewise asks the Court to define the "server" as "a device that is operating in the role of a server" and replace "the client device" with "the first client device." *Id.* Finally, Defendants' requested clarifications for the *Teso* Action "first server" asks the Court to define the "server" as "a device that is operating in the role of a server by offering information resources, services, and/or applications." *Id.*

Plaintiff points to the Court's construction of "client device" for the '614 Patent as accepting Defendants' denial that they will claim client devices and servers are interchangeable general use computers. Dkt. No. 242 at 4 (citing *Teso* Action, Dkt. No. 191 at 15). With respect to

this same "client device" term, the Court's Claim Construction Order "reiterates and adopts the reasoning and ruling of that order." Dkt. No. 97 at 13 (citing *Teso* Action, Dkt. No. 191 at 10–12).

The language "a device that is operating in the role of" is language Defendants urged in the construction of "client device" in the *Teso* Action, language originating in the construction previously adopted by the Court in another case. *Teso* Action, Dkt. No. 191 at 11 (citing Dkt. No. 138 at 5–6; *Id.* at 6 n.4). The Court's Claim Construction Order in the *Teso* Action states that "[Plaintiff's] second argument—that a client device is specifically not a server—is not supported by the specification." *Id.* The Court found "[t]he patents do not include servers as a type of 'communication device,' but that is not sufficient to construe 'client device' as unable to act as a server in all cases." *Id.* at 12.

Plaintiff's argument that Defendant seeks to treat client devices and servers interchangeably, citing to the Court's statement that "[Defendants] deny that they will claim client devices and servers are interchangeable general user computers" is an oversimplification of the issue. It is not that Defendants seek to "reduc[e] the recited server ↔ client device ↔ web server architecture . . . and the recited client device ↔ server ↔ web server architecture . . . as an indistinguishable computer ↔ computer ↔ computer architecture" as Plaintiffs argue. *See* Dkt. No. 242 at 4. Rather, a component can be *configured* to operate in different roles—so long as it does not "simultaneously serve as more than one of: the client device, the first server/second server, and the web server." *See* Dkt. No. 97 at 13.

The Court's Claim Construction Order in the *Code200* Action stated, "[t]he issue in dispute appears to be whether one component can simultaneously serve as more than one of: the client device, the first server/second server, and the web server. It cannot." Dkt. No. 97 at 13. Consistent with this, the Court construed in the *Teso* Action "client device" in the '614 Patent as "device

operating in the role of a client by requesting services, functionalities, or resources from the server." *Teso* Action, Dkt. No. 191 at 15.

The Court's Claim Construction Order in the *Teso* Action discussed this issue in detail with respect to whether the second server must be a distinct device from the client device and the web server. *Teso* Action, Dkt. No. 191 at 13–14. The Court stated that "[n]othing in the intrinsic record suggests one device cannot perform both the role of a web server and a second server. To construe the claim in such a way would improperly import a limitation into the claim language." *Id.* at 14.

Defendants' Motion for Hearing requests clarifications for the server terms but presents them as new constructions. The Court finds that the clarifications Defendants seek are not inconsistent with the Court's previous findings about the nature of the client device, web server, first server and second server. Said previous findings have already been stated with respect to the constructions as they stand. Accordingly, the Court clarifies that Defendants' understanding of the scope of the constructions, as represented by the requested clarifications in Defendants' Motion for Hearing, is correct. The Court is not changing the construction of "first server" and "second server," as this understanding is already embedded in those terms' construction. Further, the Court is not now changing the scope of the terms in any way, but merely providing a clarification of the scope of the terms as they stand.

## IV.    CONCLUSION

The Court **DENIES** Plaintiffs' request to modify the Claim Construction Order with respect to "source address" and **GRANTS** Plaintiffs' request to modify the Claim Construction Order with respect to "sending . . . the first content identifier to the web server using the selected IP address," which the Court now clarifies means "sending . . . the first content identifier to the

web server using the selected IP address as either a sending address or a receiving address." The Court also clarifies the scope of the "first server" and "second server" terms as discussed above.

**SIGNED this 6th day of August, 2021.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE