IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BRIGHT DATA LTD., | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO.  2:19-CV-00395-JRG |
| TESO LT, UAB,  METACLUSTER LT, UAB,  OXYSALES, UAB, | § § § § § | |
| *Defendants*. | § § | |

## ORDER ON PRETRIAL MOTIONS AND MOTIONS *IN LIMINE*

The Court held a Pretrial Conference in the above-captioned matter on Tuesday, August 31, 2021 regarding pending pretrial motions and motions *in limine* ("MILs") filed by Plaintiff Bright Data Ltd. ("Plaintiff" or "Bright Data") and Defendants Teso LT, UAB, Metacluster LT, UAB, and Oxysales, UAB (collectively, "Defendants" or "Oxylabs") (together with Bright Data, the "Parties"). (Dkt. Nos. 244, 242, 277, 237, 276, 241, 269, 240, 236, 239, 425, 371, 364, 362, 363, 464, 467). This Order memorializes the Court's rulings on the aforementioned pretrial motions and MILs as announced from the bench into the record, including additional instructions that were given to the Parties. While this Order summarizes the Court's rulings as announced into the record during the pretrial hearing, this Order in no way limits or constrains such rulings from the bench. Accordingly, it is hereby **ORDERED** as follows:

## PRETRIAL MOTIONS

1. **Bright Data's Motion to Strike Invalidity Opinions of Expert Michael Freedman (Dkt. No. 244)**

   The motion was **DENIED**. (Dkt. No. 469 at 63:11–13).

   The Court was persuaded that Dr. Freedman did not disregard the Court's claim construction and noted that the other matters raised in Bright Data's motion are adequately addressed through cross examination. (*Id.* at 63:8–11).

2. **Bright Data's Motion for Partial Summary Judgment of No Invalidity of '319 and '510 Patent Claims (Dkt. No. 242)**

   The Motion was **DENIED**. (*Id.* at 63:14–17).

   The Court noted that this motion was effectively controlled by the ruling on Bright Data's Motion to Strike Invalidity Opinions of Expert Michael Freedman (Dkt. No. 244). Given that the Court declined to strike Dr. Freedman's invalidity opinions, a fact issue remained regarding the validity of the '319 and '510 Patent claims. (*See id.* at 63:8–14).

3. **Oxylabs' Motion for Summary Judgment of Invalidity (Dkt. No. 277)**

   The Motion was **DENIED**. (*Id.* at 63:18–64:2).

   The Court was persuaded that Dr. Rhyne put forth sufficient opinions to create a genuine issue of material fact regarding the issue of validity. To the extent that Defendants' Motion for Summary Judgment of invalidity was in essence a motion to reconsider the Court's Section 101 ruling, the Court reaffirmed its prior denial of Defendants' Motion for Judgment on the Pleadings Under Fed. R. Civ. P. 12(c) and 35 U.S.C. § 101 (Dkt. No. 210). (*Id.*; *see also* Dkt. No. 303).

4. **Oxylabs' Motion to Strike Expert Opinions of Dr. V. Thomas Rhyne (Dkt. No. 237)**

   The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**.

   For part (A) of the motion requesting the Court to preclude Dr. Rhyne from offering a conclusion on contributory infringement, the motion was **GRANTED**. (Dkt. No. 469 at 82:21–22).

The Court found that Dr. Rhyne's report merely puts forward boilerplate language from Bright Data's infringement contentions and failed to sufficiently opine in a reliable and specific manner to support a conclusion of contributory infringement. (*Id.* at 82:23–83:1). However, the Court noted that Dr. Rhyne may testify regarding whether an allegedly infringing component constitutes a material part of the invention but may not go beyond that limited discussion in his report. (*Id.* at 83:1–4).

For part (B) of the motion requesting the Court to preclude Dr. Rhyne from opining on induced infringement, the Motion was **DENIED**. (*Id.* at 83:9–10). The Court found that Dr. Rhyne's conclusion of induced infringement and his discussion of third parties utilizing Defendants' software was reliably sufficient to support testimony on induced infringement. (*Id.* at 83:8–15; Dkt. No. 237-2 at ¶¶ 3, 111–14, 163).

For part (C) of the motion requesting the Court to strike Dr. Rhyne's opinions based on Oxylabs' copying, the motion was **DENIED**. (Dkt No. 469 at 84:12–13). However, the Court noted that testimony regarding copying shall be limited to secondary considerations of non-obviousness and may not be used to support infringement theories. (*Id.* at 83:14–21); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002) (noting that "[w]hile copying may be relevant to obviousness, it is of no import on the question of whether the claims of an issued patent are infringed").

For part (D) of the motion requesting the Court to preclude Dr. Rhyne from testifying that the patents-in-suit cover residential proxies, the motion was **DENIED**. (Dkt. No. 469 at 83:16–17). However, the Court instructed that Dr. Rhyne is not to opine that the claims of the patents-in-suit are *limited* to residential proxies. The Court further rejected and precluded any testimony as to "client device" and "server" being limited to only "residential devices." (*Id.* at 83:18–84:3).

3

For part (E) of the motion requesting the Court to preclude Dr. Rhyne from testifying regarding secondary considerations of non-obviousness, the motion was **DENIED**. (*Id.* at 84:4–11). The Court found that Dr. Rhyne established a sufficient nexus between the secondary considerations and the claimed invention. (*Id.* at 84:7–11).

For part (F) of the motion requesting the Court to strike Dr. Rhyne's opinion that "a client device is specifically not a server," the motion was **DENIED**. (*Id.* at 64:3–12). The Court found that Dr. Rhyne does not specifically argue that a "client device is specifically not a server" in his report, but rather offered the opinion in his deposition. (*Id.* at 64:5–8; Dkt. No. 281-2 at 69:8–12). Consistent with his report, the Court instructed that Dr. Rhyne was not to testify before the jury that a client device cannot be a server. (Dkt. No. 469 at 64:10–13).

For part (G) of the motion requesting the Court to preclude Dr. Rhyne's opinions based on Bright Data's infringement contentions, the motion was **DENIED**. (*Id.* at 84:22–85:12). The Court noted that while all experts must testify within the four corners of their reports, where a voluminous appendix is attached, but not discussed or analyzed in the body of the report, such cannot be used to open the door to expert testimony about the appendix before the jury. (*Id.* at 85:2–12).

5. **Oxylabs' Motion for Summary Judgment of Non-Infringement (Dkt. No. 276)**

The motion was **DENIED**. (*Id.* at 105:22–23). The Court found that Dr. Rhyne's testimony was sufficient to raise a genuine issue of material fact such that summary judgment was improper. (*Id.* at 105:23–106:3).

6. **Bright Data's Motion to Strike Expert Testimony of Kevin Almeroth, PH.D. (Dkt. No. 241)**

The motion was **DENIED**. (*Id.* at 133:12).

The Court noted that these disputes merely present a situation of dueling experts who have differing opinions. The expert opinions were not sufficiently erroneous or improper to warrant

4

exclusion. The jury, as factfinder, will determine which expert is more persuasive and credible. (*Id.* at 132:4–133:11).

7. **Oxylabs' Motion for Summary Judgment of No Indirect Infringement, Willfulness, or Exceptional Case (Dkt. No. 269)**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**.

Regarding contributory infringement, the motion was **GRANTED** in light of the Court's prior ruling precluding Dr. Rhyne from opining on the necessary elements of contributory infringement. (*Id.* at 133:17–19).

As to the remaining issues, the motion was **DENIED**. For induced infringement, the motion to strike was denied because the motion to strike Dr. Rhyne's opinion on induced infringement was also denied. (*Id.* at 133:20–23). For willfulness, the inquiry is a matter of culpability and is determined by considering the totality of the circumstances. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016); *Gustafson, Inc. v. Intersystem Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990). There remain facts and circumstances yet to be decided by a jury that could support a willfulness finding, thus the Court declines to grant summary judgment declaring no willfulness. (Dkt. No. 469 at 134:1–5). Finally, the Court noted that one factor to consider in the inquiry for an exceptional case under 28 U.S.C. § 285 is the manner the case was litigated through trial. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The Court found that the determination of whether all the conduct, considering the actions of both sides, rises to the level of being truly exceptional is not ripe for review in advance of the trial. (Dkt. No. 469 at 134:9–19). Accordingly, the Court denied the motion for summary judgment on exceptional case status.

8. **Bright Data's Motion for Summary Judgment on Defendants' Counterclaim and Defense of Inequitable Conduct (Dkt. No. 240)**

The motion was **CARRED** until after the jury trial. (*Id.* at 135:17–18).

5

The Court will hear Bright Data's argument, post-verdict, regarding summary judgment of inequitable conduct, to the extent the issue is not mooted by the jury's verdict.

9. **Oxylabs' Motion to Strike Expert Opinions of Stephen L. Becker, Ph.D. (Dkt. No. 236)**

The Motion was **GRANTED-IN-PART** and **DENIED-IN-PART**.

The motion was **DENIED** as to lost profits. (*Id.* at 166:1–2). The Court was not persuaded that the challenges to the lost profits analysis warranted absolute exclusion and instead determined that such are questions of weight that are fairly dealt with through vigorous cross examination.

With respect to the reasonable royalty analysis, the motion was **GRANTED** and the Court struck paragraphs 161, 162, and 184 as well as exhibits SLB-4A and SLB-4B from Dr. Becker's expert report. (*Id.* at 166:9–12). The Court found that Dr. Becker's reasonable royalty is not tied to the statutory mandate of 35 U.S.C. § 284 because it is not tied to the value of the infringing features as used and enjoyed by the accused infringer. However, the Court declined to strike paragraph 172 of Dr. Becker's report, as Oxylabs requested.

10. **Bright Data's Motion to Strike Expert Testimony of Keith Ugone, Ph.D. (Dkt. No. 239)**

The motion was **DENIED**. (*Id.* at 174:21). The Court found that the issues raised are adequately addressed by vigorous cross examination and were not so flawed as to warrant exclusion.

11. **Bright Data's Motion to Strike Deposition Testimony of Colin Shribman (Dkt. No. 425)**

The motion was **CARRIED**. (*Id.* at 176:14–15). The Court determined that the severity of the allegations warranted more than high-level argument or global objections related to the dispute. The Court instructed the Parties to submit their deposition designations and counter-designations along with targeted objections to each by 5:00 P.M. on September 15, 2021. (*Id.* at 176:14–19,

179:8–14, 198:19–23). The Court's ruling as to such deposition designations and counter-designations shall effectively dispose of and control as to this motion to strike.

**12.    Oxylabs' Motion for Leave to Exceed Page Limits for Replies Regarding Non-Infringement and Invalidity Motions for Summary Judgment (Dkt. No. 371)**

Before the pretrial conference, the Parties informed the Court that the motion was no longer opposed. Accordingly, the motion was not argued at the pretrial conference, and the motion is **GRANTED-AS-AGREED**.

## MOTIONS *IN LIMINE*

It is **ORDERED** that the Parties, their witnesses, and counsel shall not raise, discuss, or argue the following before the venire panel or the jury without prior leave of the Court:

**I.    PLAINTIFF'S MOTIONS *IN LIMINE* (Dkt. No. 364)**

Plaintiff's MIL 1    **Any evidence, testimony, or argument concerning Mr. Colin Shribman, his relationship with Mr. Derry Shribman, communications and comments made by either regarding the other, any related litigation concerning Mr. Colin Shribman, and/or anything concerning Mr. Colin Shribman's employment or termination thereof.**

The MIL was **CARRIED**. (Dkt. No. 469 at 181:11–12).

The Court noted that the MIL will rise and fall with (and be disposed of and controlled by) the Court's ruling on deposition designations and counter-designations related to Bright Data's Motion to Strike Deposition Testimony of Colin Shribman (Dkt. No. 425). (Dkt. No. 469 at 182:11–18).

Plaintiff's MIL 5    **Any evidence, testimony, or argument concerning any potential purchase of Defendants or any other IP proxy network provider by Luminati or its majority shareholder EMK Capital, including any past discussions or any anticipated future negotiations.**

The MIL was **GRANTED**. (*Id.* at 190:11–12).

The Court was not persuaded that the Plaintiff's state of mind was relevant to the issue of the Defendants' willfulness. The Court will act as a gatekeeper to oversee the use of this evidence to the extent that the Court is persuaded that its relevance and probative value outweighs its prejudicial effect.

Plaintiff's MIL 7   **Any evidence, testimony, or argument tending to denigrate, disparage, or insult the United States Patent Office or patent system or that the U. S. Patent and Trademark Office is overworked, understaffed, under skilled, prone to error, or regarding the qualifications of PTO examiners other than general testimony regarding the patent examination process.**

The MIL was **GRANTED**. (*Id.* at 193:8–9).

The Court noted that neither party will disparage the PTO.

## II. DEFENDANT'S MOTIONS *IN LIMINE* (Dkt. No. 362)

Defendants' MIL 10   **Any reference to or evidence concerning EMK's purchase of Luminati for an "enterprise value" of $200 million or that the purchase was motivated by or valued the Asserted Patents.**

The MIL was **GRANTED**. (*Id.* at 190:19–20).

Along with Plaintiff's MIL 5, the Court was not persuaded of the relevance of the evidence and will monitor its use in the role of a gatekeeper. (*Id.* at 190:15–18).

Defendants' MIL 11   **Any attempt to "bolster" the U.S. Patent & Trademark Office or the Asserted Patents.**

The MIL was **GRANTED**. (*Id.* at 193:8–9).

The Court noted that neither party will bolster the PTO.

Defendants' MIL 20   **Any suggestion that Oxylabs' discussions with Colin Shribman violated any Israel court order or were otherwise improper.**

The MIL was **CARRIED**. (Dkt. No. 469 at 181:11–12).

The Court noted that the MIL will rise and fall with (and be controlled by) the Court's ruling on deposition designations and counter-designations related to Bright Data's Motion to Strike Deposition Testimony of Colin Shribman (Dkt. No. 425). (Dkt. No. 469 at 182:11–18).

## III. AGREED MOTIONS *IN LIMINE* (Dkt. Nos. 363, 464, 467)

Before the pre-trial conference, the Parties filed their Joint Motion on Stipulated Motions *in Limine* requesting the Court to enter Agreed MILs 1 through 10 and their Second Joint Motion

on Stipulated Motions *in Limine* requesting the Court to enter Agreed MILs 11 through 16. (Dkt. Nos. 363, 464). At the pre-trial conference, Agreed MILs 1 through 16 were **GRANTED-AS-AGREED**. (Dkt. No. 469 at 180:22–24). On September 1, 2021, the Parties filed their Third Joint Motion on Stipulated Motions *in Limine* requesting the Court to enter Agreed MILs 17 through 36. (Dkt. No. 467). Having considered the joint motions, the Court rules that the following MILs are **GRANTED-AS-AGREED**. Without prior leave of the Court the Parties and the Parties' fact and expert witnesses are precluded from mentioning or raising the following matters before the jury:

| | |
|---|---|
| Agreed MIL 1 | **Evidence, testimony, or argument that references or disparages the nationality, race, religion, or political views of any parties or witnesses, including but not limited to being or allegedly being Jews, Jewish, or Russian, and are precluded from disparaging any party or witness because of their location in Israel or Lithuania, or due to his or her native language.** |
| Agreed MIL 2 | **Any evidence, testimony, or argument concerning the use, potential use, hiring, or reliance on private investigators or litigation consulting firms in this case or generally.** |
| Agreed MIL 3 | **Discovery disputes or rulings, or that discovery was provided in response to such disputes or rulings.** |
| Agreed MIL 4 | **Evidence, testimony, or argument regarding pre-judgment interest.** |
| Agreed MIL 5 | **Evidence, testimony, or argument concerning the choice of venue in this case.** |
| Agreed MIL 6 | **Any reference to or evidence concerning post-trial alleged damages.** |
| Agreed MIL 7 | **Disparaging an expert's qualifications in his field of expertise, or asserting or arguing that an expert is unqualified in his field of expertise, or making any reference to Oxylabs' counsel (or Oxylabs' counsel's firms or prior firms) having retained Luminati's experts or directed any of Luminati's experts at trial.** |

| | |
|---|---|
| Agreed MIL 8 | **Any evidence, testimony, or argument regarding any post-grant proceeding regarding any Luminati patent before the U.S. Patent Office or Patent and Trial Appeal Board, including patent inter partes review, post-grant reviews, and reexaminations.** |
| Agreed MIL 9 | **Any evidence, testimony, or argument that Luminati's patents or claims are limited to aspects of preferred embodiment(s) in the specification.** |
| Agreed MIL 10 | **Any evidence, testimony, or argument alleging or referring to equitable issues exclusively reserved for the Court, including but not limited to inequitable conduct, the propriety of an injunction, post-trial damages, laches, indefiniteness, exceptional case status and related attorney's fees, enhanced damages, 35 U.S.C. § 101, or post and pre-trial interest.** |
| Agreed MIL 11 | **Testimony from experts not disclosed within their expert reports.** |
| Agreed MIL 12 | **Any evidence concerning Oxylabs not obtaining or producing an opinion of counsel, unless Oxylabs opens the door as to these matters.** |
| Agreed MIL 13 | **Any reference to any previous Daubert ruling involving any of the Parties' experts.** |
| Agreed MIL 14 | **Any suggestion that the Parties suffered any damages on account of previously asserted but now dismissed non-patent claims.** |
| Agreed MIL 15 | **Any reference to or purported evidence that either Party 'hacked' any other Party.** |
| Agreed MIL 16 | **Any testimony or evidence concerning motions that were denied, or claims that were dismissed by the Court.** |
| Agreed MIL 17 | **Any suggestion that Oxylabs' reorganizations were done for any improper purpose.** |
| Agreed MIL 18 | **Any reference to or evidence concerning the website www.darksideofluminati.com or Oxylabs' "Bust the Bully" prior-art campaign.** |
| Agreed MIL 19 | **Any reference to or evidence concerning Oxylabs contacting former Luminati employees in connection with the *Tesonet* case other than Colin Shribman.** |

| | |
|---|---|
| <u>Agreed MIL 20</u> | **Any reference to or evidence concerning the past or present businesses or investments of Oxylabs' owners (other than the Oxylabs' entities, or Oxylabs' entities to the extent they have had communications with Bright Data, or Oxylabs' entities to the extent such are discussed in an otherwise relevant document).** |
| <u>Agreed MIL 21</u> | **Any comparison of the invalidity burden of proof to any other type of case that applies a "clear and convincing evidence" burden of proof.** |
| <u>Agreed MIL 22</u> | **Any reference to or evidence concerning third-party products allegedly infringing the Asserted Patents other than products of BI Science Ltd. aka BI Science Inc.** |
| <u>Agreed MIL 23</u> | **Any suggestion that Dr. Ugone's reasonable-royalty opinion is improper or "too low" because it is less than (i) the amount Oxylabs has spent in litigation or (ii) what Dr. Ugone's firm has charged Oxylabs.** |
| <u>Agreed MIL 24</u> | **Any reference to or evidence concerning this Court's April 8, 2020 ruling in *Tesonet* concerning Oxylabs' press releases relating to the conclusion of the Tesonet case.** |
| <u>Agreed MIL 25</u> | **Any reference to or evidence concerning Oxylabs' acquisition discussions or communications with BI Science.** |
| <u>Agreed MIL 26</u> | **Any reference to or evidence concerning unasserted Bright Data patents (other than those referenced in Bright Data's notice letters to Oxylabs).** |
| <u>Agreed MIL 27</u> | **Any reference to the Trend Micro report or the *Trend Micro* lawsuit.** |
| <u>Agreed MIL 28</u> | **Any reference to Bright Data tracking Oxylabs' software development kits ("SDKs"), applications incorporating such SDKs, and/or the number of devices serving as proxies in the Accused Instrumentalities.** |
| <u>Agreed MIL 29</u> | **Any reference to Microleaves other than Microleaves as a competitor.** |
| <u>Agreed MIL 30</u> | **Any reference to the Illuminati.** |
| <u>Agreed MIL 31</u> | **Any reference to personal lives of witnesses unrelated to business and the subject matter of the instant case.** |
| <u>Agreed MIL 32</u> | **The *Tesonet* litigation.** |
| <u>Agreed MIL 33</u> | **That a party's presence in the marketplace benefits competition by reducing price or improving performance.** |

| | |
|---|---|
| Agreed MIL 34 | **Any party challenging the terms of the settlement agreement or arbitration award entered in the *Luminati Networks Ltd. v. BI Science Inc.* matter.** |
| Agreed MIL 35 | **Any party's SDK being banned, labeled as malware, or allegedly stealing data.** |
| Agreed MIL 36 | **Any reference to Bright Data's SDK partner Mobdro or negative press stories about Bright Data if they are not discussed as relevant in Dr. Ugone's expert report.** |

If the Parties desire to introduce any evidence or argument or otherwise raise or mention any of the foregoing subjects addressed by the MILs set forth herein and before the jury, they must first approach the bench and obtain a ruling from the Court. The above resolves all remaining motions *in limine* other than those carried by the Court regarding Colin Shribman (Plaintiff's MIL No. 1 and Defendants' MIL No. 20), which MILs will rise and fall and be controlled by the Court's subsequent ruling on specific deposition designations and counter-designations from Mr. Shribman's deposition in this case.

All remaining MILs not covered hereby or otherwise addressed by the Court on the record are **DENIED AS MOOT**.

**DISPUTES AS TO REMAINING PRETRIAL ISSUES**

The Court **ORDERED** the Parties to meet and confer regarding the narrowing of asserted claims and defenses and to submit a joint status report by 5:00 P.M. on September 15, 2021. (Dkt. No. 469 at 198:24–199:8). The Court also **ORDERED** the Parties to submit a revised Joint Pretrial Order by 5:00 P.M. on September 15, 2021. (*Id.* at 199:11–15).

**So ORDERED and SIGNED this 9th day of September, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE