IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BRIGHT DATA LTD., <br><br> *Plaintiff*, <br><br> v. <br><br> TESO LT, UAB, METACLUSTER LT, UAB, OXYSALES, UAB, <br><br> *Defendants*. | § § § § § § § § § § § § § CIVIL ACTION NO. 2:19-CV-00395-JRG |

## ORDER

Before the Court is the Motion to Strike Deposition Testimony of Colin Shribman (the "Motion") filed by Plaintiff Bright Data Ltd. ("Plaintiff" or "Bright Data" or "Luminati"). (Dkt. No. 435). In the Motion, Bright Data asks the Court to strike or bar all of Colin Shribman's deposition testimony. For the reasons discussed below, the Court finds that the Motion should be **GRANTED-IN-PART** and **DENIED-IN-PART**.

I.  BACKGROUND

Colin Shribman is the former Chief Technology Officer of Bright Data and the brother of Bright Data executive Derry Shribman. On September 18, 2020, Defendants Teso LT, UAB, Metacluster LT, UAB, and Oxysales, UAB (collectively, "Defendants" or "Oxylabs") filed a Motion for Issuance of Letter Request for Colin Shribman's Deposition (the "Motion for Letters Rog"). (Dkt. No. 121). The Court granted Defendants' Motion for Letters Rog on October 28, 2020, and requested the assistance of the Israeli court system in securing Colin Shribman's deposition testimony. (Dkt. No. 154 (the "Letter of Request")). Section 7(b) of the Court's Letter of Request describes the purpose of the evidence sought:

> Mr. Shribman possesses knowledge relating to whether the Asserted Patents are infringed, whether the Asserted Patents are invalid, and/or whether, if the Asserted Patents are infringed and not invalid, the amount in damages. Mr. Shribman also possesses knowledge regarding acts of competition against others in the residential proxy marketplace. Defendants anticipate utilizing the requested testimony at a minimum in defense of Luminati's damages claim and in furtherance of Defendants' antitrust counterclaims . . . Defendants anticipate questioning Mr. Shribman on his knowledge concerning Luminati's allegedly embodying product, Luminati's Asserted Patents, the conception and reduction to practice of the inventions claimed in the Asserted Patents, the commercial success of the allegedly embodying products, and Luminati's awareness of Defendants and Defendants' alleged infringement. Defendants also anticipate questioning Mr. Shribman on Luminati's actions vis-à-vis its competitors in the residential proxy marketplace.

(Dkt. No. 121-1 at 7–9). Pursuant to the Court's Letter of Request and an Israeli court's order adopting the same, Mr. Shribman was deposed on May 3–4, 2021. At the outset of the deposition, the parties acknowledged certain "ground rules" for Mr. Shribman's deposition, including "that the witness is going to be examined only on the topics of the letters rogatory, that personal information including for shareholders and officers of Bright Data will not be asked, that the witness will not be asked about subjects that come under attorney-client privilege and are considered confidential under law, between Bright Data and its attorneys." (Dkt. No. 484-1 at 29:4–30:16) (counsel for Bright Data, Mr. Harkins, reading the ground rules into the record). The deposition then proceeded.

Mr. Shribman will not be a live witness at this trial, and the Motion seeks to strike or bar all of Mr. Shribman's deposition testimony from being played at trial. The Court announced its rulings with respect to the specific designations by Defendants and counter-designations by Bright Data into the record during trial. (Dkt. No. 514 at 1). This Order memorializes the Court's announcement in the record.

2

## II.     DISCUSSION

Bright Data argues that Mr. Shribman's testimony should be struck under Federal Rule of Evidence 804 because he refused to be cross examined. Bright Data contends that Mr. Shribman refused to testify regarding communications between himself and Defendants. (Dkt. No. 435 at 6). Bright Data points to Shribman's answer to questions on cross that he "object[s] to answering anything related to [his] lawsuit that is pending." (*Id*.) (citing Dkt. No. 435-1 at 38:3–7). Bright Data argues that Shribman refused to answer more than 100 questions on cross, while responding to less than 40. (*Id*. at 7).

Defendants respond that Bright Data's refusal to abide by the Court's Protective Order silenced Mr. Shribman. Defendants argue that Shribman, as a third party, was permitted to designate deposition testimony as "RESTRICTED—ATTORNEYS' EYES ONLY." (Dkt. No. 442 at 2). However, Bright Data refused to recognize such designations at the deposition. Present at the deposition were Bright Data's counsel prosecuting an Israeli Labor Court lawsuit against Mr. Shribman and Bright Data's general counsel. (*Id*. at 2 n.2). Defendants argue that Bright Data's refusal to remove anyone in the room but outside counsel of record in this case was a violation of ¶¶ 6(a), 6(b), and 10 of the Court's Protective Order. (*Id*. at 3). During the deposition, Mr. Shribman remarked that he was "very uncomfortable" and that the Labor Court counsel was whispering to others during his testimony. (*Id*.) (citing Dkt. No. 442-2 at 36:23–26).

Defendants further argue that Bright Data ignored the Court's Letter Request, the Israeli Court's order, and the parties' agreement on "ground rules." (Dkt. No. 442 at 4). The Letter Request sent by this Court contained a list of topics in Section 7(b), which included issues of infringement, invalidity, damages, acts of competition in the residential proxy market, Luminati's allegedly embodying product, conception and reduction to practice, commercial success, and

Luminati's awareness of Defendants' infringement. (*Id.*) (*see also* Dkt. No. 121-1 at 8–9). The Israeli Court entered an order to this effect and the parties agreed that questioning would be limited to these issues. (*Id.*). Although while on direct examination Defendants briefly touched on the subject of Shribman's termination, counsel for Bright Data objected, and counsel for Defendants moved on. (*Id.*). However, when Bright Data cross-examined Mr. Shribman, it inquired as to many of the questions and topics related to his termination from Luminati and his activities after termination. (*Id.* at 5).

As announced on the record, the Court finds that only a limited, circumscribed portion of the proposed designations and counter-designations are relevant to the remaining issues in this case. A limited set of designations relate to Mr. Shribman's background at Luminati and a related company named "Hola." (Dkt. No. 484-1 at 43:14–44:1, 44:24–45:1). Mr. Shribman testified that in 2007, Hola was working on peer-to-peer and caching technologies. (*Id.* at 46:26–47:9, 47:12–48:1, 48:4–10, 46:12–25). The Court finds that such testimony is relevant to Defendants' written description defense under 35 U.S.C. § 112 and is admissible on that basis. Much of Defendants' designations, however, relate to the issue of whether Bright Data's invention was the result of copying technology from other sources before obtaining the asserted patents. (*See, e.g.*, Dkt. No. 484-1 at 46:26–47:18, 48:2–8, 48:19–49:21, 55:25–56:2, 56:8–10, 57:5–20). Such evidence is not relevant to any live issue in the case, as all non-patent claims and counterclaims have been dismissed. (Dkt. No. 413). Bright Data continues to assert that Defendants willfully infringed its patents, but alleged copying **by Bright Data** is not relevant to the issue of whether the Oxylabs Defendants willfully infringed. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016) (culpability for purposes of willful infringement "is generally measured against ***the knowledge of the actor at the time of the challenged conduct***") (emphasis added). Nor is such

evidence relevant to Defendants' 35 U.S.C. § 102 defense, as Defendants' copying allegations are outside the scope of their remaining asserted prior art references. Further, Defendants have withdrawn their 35 U.S.C. § 103 defense. (Dkt. No. 505 at 27:11–20). Accordingly, such copying evidence lacks probative value and risks confusing the jury and unduly prejudicing Bright Data.

With very limited exceptions, the Court finds that Bright Data's counter-designations are irrelevant and obtained through improper questioning. By and large, these counter-designations relate to the circumstances surrounding Mr. Shribman's termination from Luminati and subsequent litigation against Derry Shribman, Luminati, and Bright Data. (*See, e.g.*, Dkt. No. 484-1 at 87:8–89:12, 97:16–19, 98:27–102:3, 108:7–9, 117:18–21, 119:3–11, 120:8–122:10). At the outset of Mr. Shribman's deposition, Bright Data's counsel stated that the deposition would be limited to the subject matter categories laid out in the Court's Letter of Request and within Mr. Shribman's personal knowledge as an employee of Luminati. (*Id*. at 29:4–30:16). In addition, the same counsel objected when Defendants' counsel asked Mr. Shribman if he knew why he was fired from Luminati. (*Id*. at 60:9–20). Defendants then moved into other topics. (*Id*.). During day two of the deposition, however, Bright Data repeatedly attempted to delve into Mr. Shribman's termination. (*Id*. at 87:15–19). When Defendants' counsel objected to this line of questioning, Bright Data asserted that the door had been opened to questions about Mr. Shribman's bias and credibility. (*Id*. at 95:3–96:27). Bright Data then sought to again inquire into Mr. Shribman's termination from Luminati. (*Id*. at 96:27–97:24). When Mr. Shribman refused to answer, counsel for Bright Data threatened to seek sanctions against him. (*Id*. at 89:20–24).

The record contains numerous indicia that Mr. Shribman was not adequately represented or protected during his deposition. For example, Defendants' counsel expressed concerns with Luminati's general counsel, Mor Avisar, being present during the deposition. (*Id*. at 13:8–26:13).

Bright Data's counsel in this case repeatedly emphasized that Ms. Avisar would remain present throughout the deposition, stating that no personal information would be discussed. (*Id*.). As noted above, Bright Data objected when Defendants asked Mr. Shribman about his termination from Luminati, stating that it was "personal information," and then repeatedly sought to delve into the same on cross examination. (*Id*. at 60:9–20, 87:15–19, 96:27–97:24). Mr. Shribman expressed his intention to designate the transcript as attorneys' eyes only ("AEO") under the Court's Protective Order (*Id*. at 17:21–18:5), which limits disclosure of information designated AEO to:

> (a) outside counsel of record in the Action or Related Proceedings for the Parties; (b) employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action or Related Proceedings; . . . (e) outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation or Related Proceedings . . . (f) independent litigation support services . . . (g) the Court and its personnel, as well as any Court ordered mediator or mediator jointly agreed to by the Parties; (h) the USPTO and its personnel in any Related Proceedings before the USPTO; and (i) the PTAB and its personnel in any Related Proceedings(s) before the PTAB.

(Dkt. No. 70 at ¶¶ 6, 10). Bright Data stated that it believed Mr. Shribman was being "coached" to invoke the AEO designation. (Dkt. No. 484-1 at 39:2–40:19).

In addition, counsel for both parties acknowledged repeatedly that Mr. Shribman was not represented by counsel during the deposition. (*Id*. at 4:15–17, 8:9–14, 11:22–12:15, 40:1–9). Mr. Shribman expressed that he was "very uncomfortable" with the presence of Haya Ehrman—counsel for Luminati in an Israeli action against Mr. Shribman—stating that he did not want his statements in the deposition to be used against him in other ongoing litigation. (*Id*. at 17:24–27, 38:9–39:9, 117:22–118:9). Mr. Shribman stated that Ms. Ehrman was "whispering remarks" during his testimony. (*Id*. at 117:22–118:9). Counsel for both parties failed to seek to resolve these issues in good faith, and, if they remained at an impasse, they failed to seek appropriate guidance

6

and relief from the Court. Such behavior reflects poorly on all parties and counsel and fails to meet the standards of conduct expected by this Court.

Finally, the Court has been made aware that Mr. Shribman has submitted a declaration withdrawing his testimony against Bright Data that was provided during this litigation. Bright Data has argued that this "recantation" renders all of Mr. Shribman's deposition testimony unreliable and inadmissible. Alternatively, Bright Data has sought during trial to introduce the translation of the recantation as an exhibit. The Court notes that Bright Data did not seek to admit Mr. Shribman's statement before trial, including at the pretrial conference held on October 29, 2021. Accordingly, the Court considers Bright Data's offer untimely and holds that Bright Data has waived its ability to seek admission of the same.

### III. CONCLUSION

For the reasons set forth above, the Motion to Strike Deposition Testimony of Colin Shribman (Dkt. No. 435) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The specific designations and counter-designations of the Colin Shribman deposition that were announced into the record are admitted as part of the trial in this case. (Dkt. No. 514 at 1). Relatedly, Plaintiff's Motion *In Limine* No. 1 (Dkt. No. 364) was **DENIED** and Defendants' Motion *In Limine* No. 20 (Dkt. No. 362) was **GRANTED**. (*Id.*).

**So ORDERED and SIGNED this 5th day of November, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE