**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| BRIGHT DATA LTD. | |
| Plaintiff, | |
| v. | Case No.  2:19-CV-00395-JRG |
| TESO LT, UAB, OXYSALES, UAB, and METACLUSTER LT, UAB, | ███████████████████ |
| Defendants. | |

**PLAINTIFF'S MOTION FOR**
**<u>ENHANCED DAMAGES AND EXCEPTIONAL CASE</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    LEGAL STANDARD ......................................................................................... 7

IV.     ARGUMENT ...................................................................................................... 8

   A.   Defendants' Willful and Egregious Infringement (███████████
        ████████████████████████) Warrants Enhanced
        Damages ............................................................................................................ 8

   B.   The Same Considerations (Including Egregiously Willful Infringement and Litigation
        Conduct Under *Read* Factor Three) Justify an Award of Attorney Fees .................................. 14

V.      CONCLUSION ................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, No. CV 07-8108-FMO-SH, 2018

    U.S. Dist. LEXIS 223877 (C.D. Cal. Nov. 4, 2018) ................................................................ 12

*Centripetal Networks, Inc. v. Cisco Sys.*, 492 F. Supp. 3d 495 (E.D. Va. 2020)............... 9, 11, 14

*Chamberlain Grp., Inc. v. Techtronic Indus. Co. Ltd.*, 315 F.Supp. 3d 977 (N.D. Ill. 2018) ...... 11

*Cobalt Boats, LLC v. Brunswick Corp.*, 296 F. Supp. 3d 791 (E.D. Va. 2017) .................... 10, 13

*Crane Sec. Techs., Inc. v. Rolling Optics AB*, 337 F. Supp. 3d 48 (D. Mass. 2018) ..................... 9

*Creative Internet Advert. Corp. v. Yahoo!, Inc.*, 689 F. Supp. 2d 858 (E.D. Tex. 2010) ............ 14

*Eagleview Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40 (D.N.J. 2021) ...................... 13

*Energy Heating, Ltd. Liab. Co. v. Heat On-The-Fly, Ltd. Liab. Co.*, 889 F.3d 1291 (Fed. Cir.

    2018)................................................................................................................................... 15

*Funai Electric Co., Ltd. v. Daewoo Electronics Corp.*, 593 F.Supp.2d 1088 (N.D. Cal. 2009) .. 13

*Genes Indus. v. Custom Blinds & Components, Inc.*, No. SACV 15-0476-AG, 2018 U.S. Dist.

    LEXIS 21879 (C.D. Cal. Jan. 29, 2018) .......................................................................... 13, 15

*Georgetown Rail Equip. Co. v. Holland L.P.*, No. 6:13-CV-366, 2016 U.S. Dist. LEXIS 78365

    (E.D. Tex. June 16, 2016) ..................................................................................... 9, 10, 11, 15

*Golight, Inc. v. Walmart Stores, Inc.*, 355 F.3d 1327 (Fed. Cir. 2004) ....................................... 15

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)....................................................... 7

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010) ............................................... 13

*Jurgens v. CBK, Ltd.*, 80 F.3d 1566 (Fed. Cir. 1996) .................................................................... 7

*Leviton Mfg. Co., Inc. v. Universal Sec. Instruments*, *Inc.*, 606 F.3d 1353 (Fed. Cir. 2010) ....... 15

*Liqwd, Inc. v. L'Oréal USA, Inc.*, No. 17-14-JFB-SRF, 2019 U.S. Dist. LEXIS 215668 (D. Del. Dec. 16, 2019) ................................................................................................. 10

*Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007) .............................. 12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) ........................... 8, 15

*Read Corp. v. Portec Inc.*, 970 F.2d 816 (Fed. Cir. 1992) ............................................................ 7

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198 (Fed. Cir. 1986) ................. 8, 15

*Smith & Nephew, Inc. v. Arthrex, Inc.*, No. 2:07-cv-335-TJW-CE, 2010 U.S. Dist. LEXIS 60356 (E.D. Tex. June 18, 2010) ........................................................................................... 8

*Spectrum Labs., LLC v. Dr. Greens, Inc.*, No. 11cv0638-JAH-KSC, 2019 U.S. Dist. LEXIS 48316 (S.D. Cal. Mar. 22, 2019) ........................................................................... 15

*SRI Int'l, Inc. v. Cisco Sys.*, 14 F.4th 1323 (Fed. Cir. 2021) .................................................. 8, 14

*Stryker Corp. v. Zimmer, Inc.*, No. 1:10-CV-1223, 2017 U.S. Dist. LEXIS 162440 (W.D. Mich. July 12, 2017) .................................................................................................. 12, 15

*Synqor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365 (Fed. Cir. 2013) .......................................... 12

*Tinnus Enters., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704 (E.D. Tex. 2019) .............. passim

*Top Lighting Corp. v. Linco, Inc.*, No. 15-CV-1589-JVS-KK, 2019 U.S. Dist. LEXIS 239303 (C.D. Cal. Aug. 26, 2019) ........................................................................................... 12

*TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400 (D. Del. 2009) ................................... 13

**Statutes**

35 U.S.C. § 284 ............................................................................................................................. 7

35 U.S.C. § 285 ............................................................................................................................. 7

## I.    INTRODUCTION

Defendants willfully infringed Bright Data's patent rights by ██████████████████ ████████████████████████████████████████████████████, and then, when confronted with a jury verdict finding that,[1] began publishing statements to the press flouting the verdict and pledging to "**continue[] to offer its services in an uninterrupted manner**." Ex. 25, https://oxylabs.io/legal-timeline (emphasis in original).  This decision to keep infringing is in line with Defendants' ██████████████████████████████████████████████ ████████████████████████████████████████████████.  This is *exactly* the type of infringer Congress had in mind during its discussion associated with the passage of the Patent Reform Act of 2011:

> It is not uncommon that a manufacturer will find itself in a situation where it feels great pressure to copy a competitor's patented invention.  In a typical scenario, the sales staff report that they are losing sales because the competitor's product has a particular feature. The manufacturer's engineers discover that the feature is protected by a valid patent, and they find that they are unable to produce the same feature without infringing the patent. The company then has two choices.  It can choose to continue to try to reproduce or substitute for the patented feature, and as it does so, continue to lose market share, and in some cases, lose convoyed sales of associated products or services. Or it can choose to infringe the competitor's patent.
>
> ***Treble damages are authorized in order to deter manufacturers from choosing the second option.  Absent the threat of treble damages, many manufacturers would find that their most financially reasonable option is simply to infringe patents***. . . .  Without treble damages, many companies would find it economically rational to infringe valid patents. Section 284's authorization of treble damages is designed to persuade these companies that their best economic option is to respect valid patents.

157 Cong. Rec. 3412, 3427 (2011) (statement of Sen. Kyl) (emphasis added); *Alfred E. Mann Found. For Sci. Research v. Cochlear Corp*., No. CV 07-8108 FMO (SHx), 2018 U.S. Dist. LEXIS 223877 (C.D. Cal. Nov. 4, 2018).  Just as Congress feared, Defendants have made the

---

[1] Ex. 1, Trial Tr. 11/5/21, at 118:5–119:15; Ex. 2, Dkt. No. 516.

"economically rational" decision to disregard Plaintiff's patents and usurp its market share through Defendants' own competing infringing service.  The Court should exercise its discretion to award both enhanced damages and attorney fees to stop such flagrant decisions to ignore jury verdicts and continue infringement unabated.

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████.  Enhanced damages and attorney fees are warranted.

## II.     FACTUAL BACKGROUND

   *A.*   ████████████████████████████████████

Bright Data's asserted patents are continuations from patent applications claiming priority to 2009 and 2013.  Bright Data introduced its own residential proxy service through its HolaVPN service, which used actual residential client devices as proxies.  ████████████████████

███████████████████████████████████████████████████████

███████████████████████████

B. ██████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████   ███████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████   ██

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████   ██████  ██  ████████████████████████   ██

███████████████████████████████████████████████████████

█████████████████████████

C. ███████████████████████████

███████  █████  █████  ████  ██████  █████  ██████  ████  █████  ██



Ex. 13, PTX-104.

Ex. 14, PTX-143; Ex. 15, PTX-166.

D.

*E. Defendants' Assertion of Meritless Counterclaims and Defenses To Divert Resources from Patent Litigation*

In this case, Defendant filed the operative Answer, Third Amended Counterclaims and Third Amended Third-Party Complaint on July 29, 2020 in which they asserted four meritless Sherman Act antitrust counterclaims targeting Plaintiff as well as its parent company EMK Capital

5

and a breach of contract claim.  Dkt. No. 92.  After the dismissal of the claims against EMK Capital (Dkt 196), Bright Data was forced to dedicate substantial effort during discovery to the counterclaims, yet Defendants did not even bother to obtain an antitrust expert, as required under the law (*see* Dkt. No. 235), leading to voluntary dismissal of all counterclaims with prejudice.  Dkt. No. 413.  Because of Defendants' dilution of the proceedings with non-patent issues, much of the discovery efforts and exhibit disputes had no bearing on the evidence actually presented to the jury at trial.

Even after dismissal of the non-patent claims,



.  *See, e.g.*, Dkt. Nos. 364, 384, 392, 406, 415, 427, 435, 442; Ex. 18, May 3, 2021 Depo. of Colin Shribman, at 46:26–49:21 (

.

*F.  Defendants' Surprised Bright Data With Last Minute Changes To Their Counterclaims and Defenses On the Eve of Trial And Asserted New Arguments That They Expressly Waived At the August 31, 2021 Pretrial*

Defendants maintained numerous obviousness defenses through summary judgment briefing and up until the Friday before trial, at which point they revealed that no obviousness case would be presented the jury mere hours before the final pretrial conference.  Ex. 19, Oct. 29, 2021 Email from Steven Callahan.

.  *See, e.g.*, Ex. 20, Ugone Report, at

Table 19–20, ¶¶ 123–125. ████████████████████████████████████

████████████████████████████████   Ex. 21, Oct. 31, 2021 Email from Steven

Callahan.  Substantial effort and money was wasted as a result.

    *G.  The Jury Returned a Verdict Finding that Defendants Willfully Infringed*

    The jury was correctly instructed on the law regarding willful infringement. Ex. 1, Trial

Tr. 11/5/21, at 40:18-41:13. After less than three hours of deliberation, the jury found that

Defendants indeed willfully infringed Bright Data's patent rights.  Ex. 2, Dkt. No. 516.  The jury

assessed lost profits damages of $7,474,876.  *Id.* at 7.

## III.   LEGAL STANDARD

    ***Enhanced Damages***

    Upon a finding of willful infringement, "the court may increase the damages up to three

times the amount found or assessed" by the jury.  35 U.S.C. § 284; *see also Halo Elecs., Inc. v.*

*Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).  Courts often analyze the nine non-exclusive

"*Read* Factors" to evaluate enhancement.  *Read Corp. v. Portec Inc.*, 970 F.2d 816, 826–27 (Fed.

Cir. 1992). In assessing "liability for increased damages, 'bad faith' properly refers to an

infringer's failure to meet his affirmative duty to use due care in avoiding infringement of another's

patent rights." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1571 (Fed. Cir. 1996).   "An award need not

rest on any particular factor, and not all relevant factors need to weigh in favor of an enhanced

award."  *Tinnus Enters., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 714 (E.D. Tex. 2019).

The decision to increase damages is within the court's discretion.  *Id* at 713.

    ***Exceptional Case***

    "The court in exceptional cases may award reasonable attorney fees to the prevailing

party."  35 U.S.C. § 285.  An exceptional case "is simply one that stands out from others with

respect to the substantive strength of a party's litigating position . . . or the unreasonable manner

in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, n.6 (2014) (reciting non-exclusive factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence.").  "As a general rule, attorneys fees under section 285 may be justified by any valid basis for awarding increased damages under section 284." *Jurgens*, 80 F.3d at 1573 n. 4.

"District Courts have tended to award attorney fees when willful infringement has been proven, and [the Federal Circuit] has uniformly upheld such awards." *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 200 (Fed. Cir. 1986).  Even *in the absence of willfulness*, an exceptional case finding and award of attorney fees is warranted where a party "create[s] a substantial amount of work [that is] needlessly repetitive or irrelevant or frivolous." *SRI Int'l, Inc. v. Cisco Sys.*, 14 F.4th 1323, 1332 (Fed. Cir. 2021) (emphasizing that the defendant "maintain[ed] nineteen invalidity theories until the eve of trial but ultimately present[ed] only two at trial").  The Federal Circuit reviews exceptional case determinations for abuse of discretion. *Id.* at 1327.

## IV.   ARGUMENT

### A.   Defendants' Willful and Egregious Infringement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Warrants Enhanced Damages

*Read Factor 1:  "Whether the Infringer Deliberately Copied the Ideas"*



. *See, e.g.*, Ex. 6, PTX-296A ▮▮▮▮▮▮

*Tinnus*, 369 F. Supp. 3d at

714–16 ("The evidence presented at trial showed that Telebrands worked with an outside consultant, Mr. Rogai, to develop a copy of Plaintiffs' Bunch O Balloons product . . . ."); *see also Georgetown Rail Equip. Co. v. Holland L.P.*, No. 6:13-CV-366, 2016 U.S. Dist. LEXIS 78365, at *55 (E.D. Tex. June 16, 2016) ("An infringer can copy another person's patented invention even though the infringer directs another to build the copy.").

██████████████████████████████████████████████████

██████████████████████████████████████████████ This type of conduct supports enhancement. *See, e.g.*, *id.* at *55 ("Georgetown disclosed to Holland the details of its Aurora system.  The only detail that was not shared was Georgetown's source code used to process the collected data."); *Centripetal Networks, Inc. v. Cisco Sys.*, 492 F. Supp. 3d 495, 604 (E.D. Va. 2020) ("Cisco through its course of conduct, continually gathered information from Centripetal as if it intended to buy the technology from Centripetal"); *id.* at 602 ("The fact that Cisco released products with Centripetal's functionality within a year of these meetings goes beyond mere coincidence.  Therefore, the fact that Cisco's system mirrors the functionality of the Centripetal patents is ***compelling evidence that damages should be enhanced for copying***.") (emphasis added); *Crane Sec. Techs., Inc. v. Rolling Optics AB*, 337 F. Supp. 3d 48, 57 (D. Mass. 2018).  Thus, this factor weighs in favor of enhancement.

> ***Read Factor 2:  "Whether the infringer . . . Investigated the Scope of the Patent and Formed a Good-Faith Belief That It Was Invalid or That It Was Not Infringed"***

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████.[2]

---

[2] Defendants waived reliance on opinions of counsel in 2020 and presented no evidence of any investigation leading to a good-faith belief that copying was legally permitted.  Dkt. No. 65; P.R.

Defendants also did not present any evidence at all that they conducted a review of any of the patents-in-suit, yet they continued to infringe the patents throughout the litigation. This factor further supports enhancement.

> ***Read Factor 9:  "Whether Defendants Attempted to Conceal Their Misconduct."***



Thus, this factor militates strongly in favor of enhancement.  *See, e.g.*, *Tinnus*, 369 F. Supp. 3d at 724 ("Telebrands was not forthright in its development of its Easy Einstein product as a design-around."); *Liqwd, Inc. v. L'Oréal USA, Inc.*, No. 17-14-JFB-SRF, 2019 U.S. Dist. LEXIS 215668, at *21 (D. Del. Dec. 16, 2019) (noting how the defendants "concealed their misconduct in gathering information from the plaintiffs so as to create the infringing products," and thus, weighing the Ninth Factor in favor of enhanced damages);

---

3-7.  As a matter of law, Defendants cannot maintain privilege as a shield, and nonetheless rely on an opinion of counsel as a sword to defeat enhanced damages.  *See, Cobalt Boats, LLC v. Brunswick Corp.*, 296 F. Supp. 3d 791, 802 (E.D. Va. 2017).   Furthermore, Defendants' conclusory, two-page response to Plaintiff's demand letter, dated June 20, 2018, ███████████████ ████████████████████  *See, e.g.*, *Georgetown Rail*, 2016 U.S. Dist. LEXIS 78365, at *56–57.

3 ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████  Ex. 24, Pl. Depo. Ex. 15.

*Centripetal*, 492 F. Supp. 3d at 603.

### Read Factor 5:  "Closeness of the Case" for Willfulness

"The 'closeness of the case' in [*Read*] refers to the issue of whether the *infringement was willful or not, see, Read*, 970 F.2d at 827," rather than nebulous assessment of the strength of every claim and defense in the entire case.  *Izzo*, 2019 U.S. Dist. LEXIS 145678, at *19 (emphasis in original).  For the reasons discussed in Factor One, *supra*, the question of willfulness is not close.  Also, the jury's quick and unequivocal verdict confirms that the issue of willful infringement was not close.  *See, e.g.*, *Tinnus*, 369 F. Supp. 3d at 723 ("[T]he jury deliberated for just two-and-a-half hours before finding that Defendants infringed the patents-in-suit, that the patents-in-suit were valid and that Defendants' infringement was willful."); *Georgetown*, 2016 U.S. Dist. LEXIS 78365, at *61; *Eagleview*, 522 F. Supp. 3d at 52 ("After a two-week trial, the jury reached a verdict in about two hours.  Plaintiff won every significant issue at trial as well.  Other courts have assessed enhanced damages, in part, because of how quickly the jury reached their verdict.") (citing *Chamberlain Grp., Inc. v. Techtronic Indus. Co. Ltd.*, 315 F.Supp.3d 977, 1014 (N.D. Ill. 2018)).  This factor weighs in favor of enhanced damages.

### Read Factor 6:  "Duration of Defendants' Misconduct"

The "misconduct" at issue for *Read* Factor Six is not merely the damages period for infringement, but also the entire time-period in which the defendant was copying and preparing to infringe despite knowledge of patent rights.  *See, e.g.*, *Georgetown Rail*, 2016 U.S. Dist. LEXIS 78365, at *62 ("All throughout this time, Holland was contracting with Rail Vision UK to develop an infringing system.  Therefore, Holland's misconduct lasted at least three years."); *Tinnus*, 369 F. Supp. 3d at 723 ("Although the period of infringement is nine months, the parties' history leading up to this point is relevant and significant.").  Regardless, the jury found two-years of infringement by Defendants, which favors enhanced damages.  *See, e.g.*, *Top Lighting Corp. v.*

11

*Linco, Inc.*, No. 15-CV-1589-JVS-KK, 2019 U.S. Dist. LEXIS 239303, at *15 (C.D. Cal. Aug. 26, 2019) ("Since Top Lighting's infringing conduct continued for over a year after it received the take-down notices, . . . this factor weighs in favor of trebling damages.").

### Read Factor 7:  *"Remedial Action by the Defendant"*

Even *after the jury verdict*, Defendants have blatantly and publicly refused to take any remedial action whatsoever.   Ex. 25, https://oxylabs.io/legal-timeline, ("**Oxylabs is legally entitled to continue providing the accused services**. . . .  **Oxylabs continues to offer its services in an uninterrupted manner**.") (emphasis in original).  Such post-verdict intransigence weighs heavily in favor of enhanced damages.  *See, e.g.*, *Synqor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1385 (Fed. Cir. 2013) (affirming enhancement based on the defendant "continuing, and even increasing, sales in the face of an infringement verdict"); *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 611 (D. Del. 2007) ("That Defendants failed to take remedial action and continued to infringe until after the liability trial also supports an enhanced award."); *Stryker Corp. v. Zimmer, Inc.*, No. 1:10-CV-1223, 2017 U.S. Dist. LEXIS 162440, at *14-15 (W.D. Mich. July 12, 2017) ("Even after the jury returned its verdict, Zimmer continued to manufacture and sell the infringing products. . . . 'opt[ing] to worry about the potential legal consequences later.'").

### Read Factor 8:  *"Defendant's Motivation for Harm"*

"Here, it is undisputed that [the Parties] are direct competitors in a relatively small market for [Residential Proxies]; infringement by a direct competitor in such a market militates in favor of enhanced damages" under *Read* Factor Eight.  *Alfred E. Mann Found.*, 2018 U.S. Dist. LEXIS 223877, at *103; *see also Stryker Corp. v. Zimmer, Inc.*, No. 1:10-CV-1223, 2017 U.S. Dist. LEXIS 162440, at *15 (W.D. Mich. July 12, 2017) ("The eighth factor favored enhancement because Zimmer and Stryker were the only two major competitors[.]"; *see also, e.g.*, *Eagleview*,

522 F. Supp. 3d at 54 ("Given Defendants' arguments that it was under no obligation to change its infringing behavior until the permanent injunction issued, the Court finds that Defendants 'preferred taking the risk of infringement,' in a small market, and thus, [the Eighth *Read*] factor favors enhancement."); *Funai Electric Co., Ltd. v. Daewoo Electronics Corp.*, 593 F.Supp.2d 1088, 1116-17 (N.D. Cal. 2009) ("[W]here, as here, the infringer engages in infringing conduct to gain an edge over the patentee in a competitive market, this factor favors an award of enhanced damages."); *Genes Indus. v. Custom Blinds & Components, Inc.*, No. SACV 15-0476-AG, 2018 U.S. Dist. LEXIS 21879, at *17–18 (C.D. Cal. Jan. 29, 2018) ("It is undisputed that the parties are direct competitors in a relatively small market. . . . '[I]nfringement by a direct competitor in such a market militates in favor of enhanced damages.'") (quoting *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 412 (D. Del. 2009)). *Cobalt*, 296 F. Supp. 3d at 804.

### Read Factor 3:  "The Infringer's Behavior as a Party to the Litigation"

Under 35 U.S.C. §§ 284, 285, "[t]ypically, 'litigation misconduct' refers to bringing vexatious or unjustified suits, discovery abuses, failure to obey orders of the court, or acts that unnecessarily prolong litigation." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010).  As set forth above (*supra* at 5–7), Defendants went to great lengths to focus this case upon any issue (particularly irrelevant and inflammatory issues) other than patent infringement, while simultaneously ignoring the basic legal requirements for their counterclaims, such as the need for an expert to prove antitrust damages (at the close of expert discovery had not provided any expert to support non-patent claims, only then dismissing them).  *See, e.g.*, Dkt. No. 313; *see also Eagleview Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 60 (D.N.J. 2021) ("The various e-mails in DTX-160 have no relevance to a claim or defense in the case and would have unfairly prejudiced the jury against EagleView.  These e-mails may have embarrassed, shamed, or humiliated EagleView, all while providing no probative value.  But this appears to have been

Defendants' strategy.").  Defendants also unsuccessfully moved to stay (Dkt.157) the case based on three separate *inter parte* review petitions filed by related company Code200 UAB,[4] each of which was ultimately denied, causing Bright Data to incur unnecessary expenses.  Ex. 26. Defendants withdrew several defenses to infringement and damages only on the eve of trial.  *See, e.g.*, *Tinnus*, 369 F. Supp. 3d at 720 ("[T]he circumstances were such that the belated disposal of issues led to a significant waste of resources."); *SRI Int'l*, 14 F.4th at 1332.  Defendants also waited until the eve of trial to drop obviousness invalidity claims in a surprise attempt to bar Bright Data from presenting evidence of copying to the jury to conceal Defendants' willfulness. This evidence further supports enhancement.

*Read Factor 4:  "Defendants' Size and Financial Condition"*



*Id.* at SLB-1B; Ex. 28, DX-641, at 7, 48; *Creative Internet Advert. Corp. v. Yahoo!, Inc.*, 689 F. Supp. 2d 858, 866 (E.D. Tex. 2010) (high profit margin favors enhancement); *Centripetal*, 492 F. Supp. 3d at 603 (same).  This factor supports enhanced damages.

**B.    The Same Considerations (Including Egregiously Willful Infringement and Litigation Conduct Under *Read* Factor Three) Justify an Award of Attorney Fees**

---

[4] Code200 is a related company sharing the same ownership and control as Defendants with Defendants named as real-parties in interest.

"Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less [] a high one." *Octane Fitness*, 572 U.S. at 557.  "The jury's 'subjective willfulness' finding was sufficient for an 'exceptional' case finding under the rigid *Brooks* framework, and is certainly sufficient for such a finding under the more flexible, totality-of-the-circumstances standard enunciated by *Octane Fitness*." *Stryker*, 2017 U.S. Dist. LEXIS 162440, at *17 (citing *Golight, Inc. v. Walmart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004)).  The "fact alone" that Defendants "willfully infringed" "is a 'compelling' indication that this is an exceptional case." *Georgetown Rail*, 2016 U.S. Dist. LEXIS 78365, at *70; *see also, e.g.*, *Spectrum Labs., LLC v. Dr. Greens, Inc.*, No. 11cv0638-JAH-KSC, 2019 U.S. Dist. LEXIS 48316, at *8 (S.D. Cal. Mar. 22, 2019) (citing *Leviton Mfg. Co., Inc. v. Universal Sec. Instruments*, *Inc.*, 606 F.3d 1353, 1358 (Fed. Cir. 2010); *Genes*, 2018 U.S. Dist. LEXIS 21879, at *19.

While district courts must articulate a basis for finding exceptionality, "[i]t is equally necessary for the trial court to explain why [there] is not an exceptional case in the face of [an] express finding of willful infringement." *S.C. Johnson*, 781 F.2d at 200; *see also, e.g.*, *Energy Heating, Ltd. Liab. Co. v. Heat On-The-Fly, Ltd. Liab. Co.*, 889 F.3d 1291, 1307–08 (Fed. Cir. 2018); *Jurgens*, 80 F.3d at 1573. Defendants' litigation conduct, while not necessary to an award of fees, also supports exceptional case status.  *Stryker*, 2017 U.S. Dist. LEXIS 162440, at *17; *Georgetown Rail*, 2016 U.S. Dist. LEXIS 78365, at *70.  In light of the highly egregious infringement, and the overall of conduct of Defendants—including their determination to completely ignore the jury's verdict and continue infringing—there is no substantial justification to deny attorney fees that could override the jury's finding of willful infringement.

## V.     CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests the Motion should be granted.

Dated:  December 10, 2021

By: */s/ Ronald Wielkopolski*

Ronald Wielkopolski

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Mark Mann
Blake Thompson
Mann | Tindel | Thompson
300 West Main
Henderson, TX 75652
Office 903-657-8540
mark@themannfirm.com
blake@themannfirm.com

Korula T. Cherian
Robert Harkins
CA State Bar No. 179525
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94704
(510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

Thomas Dunham
Ronald Wielkopolski
Colby A. Davis
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
(202) 838-1560
tomd@ruyakcherian.com
ronw@ruyakcherian.com
colbyd@ruyakcherian.com

*Attorneys for Plaintiff*
*Bright Data Ltd.*

16

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 10th day of December, 2021, with a copy of this document via electronic mail.

*/s/ Ronald Wielkopolski*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that the counsels for the parties have complied with Local Rule CV-7(h). A telephonic meet and confer was held on November 30, 2021 including Bob Harkins for Plaintiff and Steven Callahan for Defendants.  Defendants oppose the motion.

*/s/ Ronald Wielkopolski*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is being filed under seal pursuant to the protective order that was entered in this case.

*/s/ Ronald Wielkopolski*