IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BRIGHT DATA LTD., | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:19-CV-00395-JRG |
| | § | |
| TESO LT, UAB,  METACLUSTER LT, | § | |
| UAB,  OXYSALES, UAB, | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Before the Court is Plaintiff Bright Data Ltd.'s ("Bright Data") Motion for a Preliminary

and Permanent Injunction Against Infringement (the "Motion") (Dkt. No. 529). Having considered

the Motion, the related briefing, and the applicable law, the Court is of the opinion that the Motion

should be **DENIED**.

### I.        BACKGROUND

On December 6, 2019, Bright Data filed its complaint against Defendants Teso LT, UAB,

Metacluster LT, UAB, and Oxysales, UAB (collectively, "Oxylabs") asserting infringement of

U.S. Patent Nos. 10,257,319 (the "'319 Patent"), 10,484,510 (the "'510 Patent"), and 10,469,614

(the "'614 Patent") (collectively, the "Asserted Patents") in addition to other causes of action. (Dkt.

No. 1). After discovery and subsequent case narrowing, the parties filed *Daubert* and dispositive

motions for consideration at the pre-trial conference. (*See generally* Dkt. No. 469).

As a part of the pre-trial conference, Bright Data asserted two damages models regarding

the cost of Oxylabs's alleged infringement. (*Id.* at 136:11–20). First, Bright Data asserted that it

was entitled to recover lost profits from Oxylabs. (*Id.*). Alternatively, Bright Data asserted that it

was entitled to recover a reasonable royalty for Oxylabs's infringement. (*Id.*). In support of such

damages, it was noted that Bright Data's expert, Dr. Stephen Becker, opined that "a reasonable

royalty for [Oxylabs's] use of the [Asserted Patents] is a per-unit running royalty of $2.46 per GB

of traffic" on Oxylabs's accused services. (Dkt. No. 236-1 at ¶ 186). However, after hearing

argument on Oxylabs's Motion to Strike Expert Opinions of Stephen L. Becker, Ph.D. (Dkt. No.

236) (the "Motion to Strike"), the Court found that certain portions of the reasonable royalty

analysis were not sufficiently tied to the statutory mandate of 35 U.S.C. § 284 because Dr. Becker

failed to apportion the value added by the Asserted Patents to Oxylabs's accused services. (Dkt.

No. 469 at 145:22–149:22, 157:4–164:5, 166:9–167:9). As a result, the Court granted-in-part

Oxylabs's Motion to Strike and struck paragraphs 161, 162, and 184 as well as exhibits SLB-4A

and SLB-4B from Dr. Becker's report. (Dkt. No. 476 at 6). At no time during the initial pre-trial

conference held on August 31, 2021 or the final pre-trial conference held on October 29, 2021 did

Bright Data ask for (or even raise the possibility of) injunctive relief. (*See generally* Dkt. Nos. 469,

505).

The case proceeded to trial before a jury beginning on November 1, 2021. As a

consequence of the Court's ruling on Oxylabs's Motion to Strike, Bright Data elected to proceed

at trial only on its lost profits theory asserting that it was entitled to $9,343,595.00 in lost profits.

(Dkt. No. 529-11 at 4). At the conclusion of the trial, the jury returned a verdict finding that

Oxylabs infringed at least one claim of the Asserted Patents, that none of the Asserted Patents were

invalid, and that Oxylabs's infringement was willful. (Dkt. No. 516). The jury also awarded Bright

Data $7,474,876.00 in lost profits as compensation for such infringement. (*Id.*).

After trial and the return of the verdict, Bright Data then filed the instant Motion requesting:

(1) that the Court enter a preliminary injunction enjoining Oxylabs from offering its accused

services until the Court entered its Final Judgement, and (2) that the Court enter a permanent injunction enjoining Oxylabs from "offering in the United States the Residential Proxies, Residential 'exit nodes,' or Residential 'Minions' adjudged to have infringed the Asserted Patents" in this case. (Dkt. No. 529-19 at 1). Following the trial, the Court ordered Bright Data and Oxylabs—as well as other defendants in co-pending suits brought by Bright Data—to mediate their disputes. (Dkt. No. 528). On December 12, 2021, the Court stayed all deadlines in the case—including briefing on the instant Motion—to allow the parties to focus their efforts on the mediation scheduled for January 6, 2022. (Dkt. No. 543).

The parties were unable to resolve their disputes at the January 6th mediation, and the Court lifted the stay as to the instant Motion for injunctive relief. (Dkt. No. 567 at 2). Briefing on the Motion was complete on January 14, 2022, and the Court scheduled a hearing regarding the same for February 4, 2022. (*Id.*). At the hearing, the Court heard oral argument from both Bright Data and Oxylabs addressing the Motion. (*See generally* Dkt. No. 574).

## II.    LEGAL STANDARD

The Patent Act provides that in cases of patent infringement a Court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To obtain injunctive relief, the patentee must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The patentee must prove that it meets all four

3

equitable factors, and it must do so on the merits of its particular case. *Nichia Corp. v. Everlight Americas, Inc.*, 855 F.3d 1328, 1340 (Fed. Cir. 2017).

### III.      DISCUSSION

"[T]he issues of irreparable harm and adequacy of remedies at law are inextricably intertwined" and, as such, are often discussed together.[1] *ActiveVideo Networks, Inc. v. Verizon Comms. Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012). Here, the briefing and the arguments at the hearing before the Court often addressed these factors in unison. (*See* Dkt. No. 569 at 4 n.4; *see also* Dkt. No. 574 at 26:3–13, 30:14–24). Accordingly, the Court discusses these two factors together.

#### 1.   Irreparable Injury and Inadequacy of Remedies at Law

The parties do not dispute that they compete in the same Internet Protocol proxy network (IPPN) marketplace. (Dkt. No. 529-8 at 4; Dkt. No. 529-9 at 41:6–12; *compare* Dkt. No. 529 at 5, *with* Dkt. No. 569 at 12). Bright Data argues that its injuries are irreparable because any loss of market share, brand recognition, and goodwill are too difficult to calculate given Oxylabs's status as a competitor. (Dkt. No. 529 at 4, 6–7) (citing *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 13 (Fed. Cir. 2012); *TEK Glob., S.R.L. v. Sealant Sys. Int'l*, 920 F.3d 777, 793 (Fed. Cir. 2019) (noting that "head-to-head competition and lost market share tend to evidence irreparable harm")). Further, Bright Data asserts that the competition between the parties also indicates that monetary damages are inadequate. (*Id.* at 11) (citing *Retractable Techs. Inc. v. Occupational & Med. Innovations, LTD*, 2010 U.S. Dist. Lexis 82069, at *13 (E.D. Tex. Aug. 11, 2010)). In light of Oxylabs's statements that it continues offering its accused services, Bright Data

---

[1] Such entwinement is intuitive—the ability to adequately measure a certain injury in terms of monetary damages undermines a conclusion that such harm is irreparable. *See also Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 712 F. Supp. 2d 1285, 1287 (M. D. Fla. 2010) ("In many cases, and in this one, the issues of irreparable injury and the adequacy of monetary damages necessarily overlap.") (citation omitted).

asserts than an injunction is the only adequate remedy to address its harm and that enforcing a

monetary judgment against a foreign Lithuanian defendant would be "difficult, if not impossible."

(*Id.* at 1, 5–6, 12; Dkt. No. 529-4).

Oxylabs responds that Bright Data's overly simple rationale would open the door to a

permanent injunction in every case involving competitors and return the Court to the "general rule

that courts [should] issue permanent injunctions against patent infringement absent exceptional

circumstances" previously rejected by the Supreme Court in *eBay*. (Dkt. No. 569 at 1). Oxylabs

argues that Bright Data has not met its burden to show irreparable injury or inadequacy of monetary

relief because Bright Data only points to harms that are commonly quantified in terms of monetary

damages—such as loss of market share, loss of sales, and lost profits. (*Id.* at 11–12) (citing

*Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*, 2007 WL 2669338, at *14 (D.N.J. Sept. 6,

2007) ("Both loss of market share and price erosion are economic harms that are compensable by

money damages."), *aff'd*, 280 Fed. App'x 996 (Fed. Cir. 2008) (per curiam)). Next, Oxylabs argues

that Bright Data's own conduct—such as its purported willingness to license the Asserted Patents

across the industry[2]—establishes that licensing fees and other forms of monetary relief are

adequate compensation for any infringement of the Asserted Patents. (*Id.* at 9–10) (citing *Nichia*

*Corp.*, 855 F.3d at 1343; *Johnson & Johnson*, 712 F. Supp. at 1289–90). Finally, Oxylabs argues

that Bright Data has not proven any inability to successfully pursue and enforce a monetary

judgment against it in Lithuania—other than its unsupported assertion that because Oxylabs is

based in Lithuania monetary damages are difficult or impossible to collect. (*Id.* at 10–11).

---

[2] *See, e,g,*, Dkt. No. 569-4 at 2 ("[Bright Data] is willing to discuss licensing of the above patents on reasonable terms."), 3–4 ("The [previous] letter informed you of some of [Bright Data's] patents and offered a license on reasonable terms. . . . "[Bright Data] is willing to discuss licensing of the above patents (regarding past and future products) on reasonable terms.").

Having considered the parties' arguments and weighing the various factors before it, the Court finds that Bright Data has not met its burden to show irreparable harm or inadequacy of monetary relief, particularly in light of its own representations. The Court agrees that Oxylabs's role as a competitor in the IPPN marketplace can counsel, under the proper circumstances, in favor of finding irreparable harm. *Presidio*, 702 F.3d at 1363. This Court notes that it has previously acknowledged the value of the statutory right to exclude, particularly in the context of a competitor suit. *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 2014 WL 8708239, at *10–11 (E.D. Tex. Mar. 31, 2014). However, here, several unique factors, present in this case, weigh against Bright Data's reliance on Oxylabs's status as a competitor and distinguish this case from *Golden Hour*.

First, the Court finds that Bright Data's direct representations to third parties and its expert damages report counsel against a finding of irreparable injury and inadequacy of future monetary relief. Although Bright Data now claims that its harm is irreparable, its damages expert, Dr. Stephen Becker, previously purported within his report to calculate the amount of monetary relief adequate to compensate it for Oxylabs's infringement. Specifically, Dr. Becker's report notes that the parties would agree to a running royalty in the context of a hypothetical negotiation. (Dkt. No. 236-1 at ¶ 170). Through the Becker report, Bright Data previously asserted that "a reasonably royalty for [Oxylabs's] use of the [Asserted Patents] is a per-unit running royalty of $2.46 per GB of traffic." (*Id.* at ¶ 186). Further, the Becker report notes that both the "lost profit and reasonable royalty damages opinions quantify the financial harm to [Bright Data] that Defendants' infringement has caused" and estimates an approximate reasonable royalty damage calculation "were the infringement to continue unabated for the life of the patents." (*Id.* at ¶ 197). In light of Bright Data's assertions through its retained expert that a running royalty and monetary relief could fairly and fully compensate it for future infringement, the Court finds that Bright Data has not met

its burden to establish that remedies at law—*i.e.*, monetary damages—are inadequate to compensate it for Oxylabs's infringement or that its harm is irreparable.[3]

Next, the Court finds that Bright Data's prior conduct related to licensing weighs against a grant of injunctive relief. While the Court notes that "[a] plaintiff's past willingness to license its patent is not sufficient *per se* to establish lack of irreparable harm if a new infringer were licensed," a patentee's past conduct regarding licensing can weigh against a finding of irreparable harm. *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008); *see Nichia Corp.*, 855 F.3d at 1343. Further, "adverse equitable considerations" may counsel against a grant of permanent injunctive relief. *See Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1315 (Fed. Cir. 2012). Here, the Court finds that Bright Data's past licensing practices weigh against granting a permanent injunction on both grounds.

Bright Data has initiated discussions about licensing its technology to an extensive swathe of other entities engaged in the IPPN industry. (*See generally* Dkt. No. 569-4). Such attempts include "discussing licensing" of its patents and "other pending patent applications" with Oxylabs's predecessor entities. (*Id.* at 2). Beyond mere discussions, Bright Data's own notice letter states that Bright Data previously "offered a license on reasonable terms" to Oxylabs. (*Id.* at 3; *see also* PTX-0009). Bright Data further disseminated letters to other entities in the IPPN field—such as MicroLeaves, StormProxies, GeoSurf, Privatix.io, FoxyProxy, Penguin Proxy, and IP Ninja—seeking to "discuss[] licensing of [its] patents (regarding past and *future* products) on

---

[3] The Court further finds that—had certain portions of Dr. Becker's reasonable royalty opinion survived the scrutiny of *Daubert* practice—Bright Data would have likely sought a running royalty for Oxylabs's infringement at trial. Even after paragraphs 161, 162, and 184 as well as exhibits SLB-4A and SLB-4B were struck, Bright Data attempted to maintain its reasonable royalty model and asserted that it was "entitled to make a case for [a] reasonable royalty" at trial based on the remaining opinions in Dr. Becker's report—which included the ultimate opinion that a per-unit running royalty of $2.46 per GB of traffic was warranted. (*Compare* Dkt. No. 505 at 30:23–31:17, *with* Dkt. No. 236-1 at ¶ 186). Noting that Bright Data was responsible for formulating its reasonable royalty model, the Court finds it improper to now allow a plaintiff to pivot to post-verdict injunctive relief and away from the earlier strategic choice to pursue monetary damages in the form of lost profits and/or a running royalty.

reasonable terms." (Dkt. No. 569-4 at 5, 7–15) (emphasis added). Bright Data's voluntary efforts to engage licensees indicates that it believes its injury can be fairly remedied through monetary relief in the form of a reasonable royalty or other monetary payments under a license. Accordingly, Bright Data's own paper trail weighs against its later representations that it "did not want to license its technology" and against a finding of irreparable harm and inadequacy of monetary relief. (*See* Dkt. No. 574 at 6:5–6).

Under the particular facts of this case, granting an injunction would run directly counter to Bright Data's pre-trial position on licensing. In fact, Bright Data relied on its notice letters discussed above (and its offers of a license) to help secure a finding of willful infringement from the jury. (*See* Trial Tr. (11/1/21) at 145:1–13, 207:18–211:17, 218:20–219:8; Trial Tr. (11/3/21) at 109:11–110:14). While Bright Data used such letters at trial seeking a willful infringement finding (and the possibility of enhanced damages), Bright Data now argues post-trial that it "did not want to license its patents" to Oxylabs and always intended to maintain exclusivity in the market. (Dkt. No. 574 at 8:2–10). Bright Data used its willingness to license as a sword at trial, but now seeks to use as a shield its post-trial claims of unwillingness to license—as part of its efforts to now obtain injunctive relief. The Court is persuaded that it should hold Bright Data to its original position on licensing and finds those positions inconsistent with a late-breaking grasp for injunctive relief. (Dkt. No. 569-4 at 3; PTX-0009).

Finally, the Court notes that the facts and circumstances of this case materially differ from those in *Golden Hour*, where this Court granted injunctive relief. Notably, the defendant in *Golden Hour* was involved in a co-pending bankruptcy proceeding and expressly stated that an on-going royalty rate would "risk putting it out of business." 2014 WL 8708239, at *11. Accordingly, the Court in *Golden Hour* had "serious doubts about [the defendant's] ability to fulfill" a monetary

obligation compensating the plaintiff for infringement. This Court specifically noted that "an infringer's inability to pay a judgment … may demonstrate the inadequacy of damage[s]." *Id.* (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 735 F.3d 1352, 1369 (Fed. Cir. 2013)). Here, the Court has no such doubts regarding Oxylabs's ability to satisfy a monetary judgment in Bright Data's favor. In fact, Bright Data acknowledged that "[it's] not putting Oxylabs out of business here" given that Oxylabs provides other non-infringing revenue-generating services like static IP and data center proxies. (*See* Trial Tr. (11/5/21) at 103:10–11). Further, Bright Data's own conduct regarding licensing separates its conduct from that of the *Golden Hour* plaintiff's, which "never licensed [its patent] to anyone." 2014 WL 8708239, at *10. Weighing the equitable factors on the whole, the Court finds that Bright Data has not met its burden to show irreparable injury or inadequacy of monetary damages to justify the grant of a preliminary or permanent injunction.

### 2.  Other Factors

As noted above, the patentee bears the burden to prove that it meets all four equitable factors. *Nichia Corp.*, 855 F.3d at 1340. Having found that Bright Data has not met its burden as to the first two factors, the Court finds no utility in weighing the remaining two *eBay* factors.

### IV.      CONCLUSION

For the reasons stated above, the Court finds that Bright Data has not met its burden to show that it has suffered an irreparable injury or to establish "how money damages could not adequately compensate [it] for 'lost market share'" and other economic damages. *Praxair, Inc. v. ATMI, Inc.*, 479 F. Supp. 2d 440, 444 (D. Del. 2007). Accordingly, the Motion is **DENIED**.

**So ORDERED and SIGNED this 10th day of February, 2022.**

RODNEY   GILSTRAP
UNITED STATES DISTRICT JUDGE